1

2

3

4

5

6

The Honorable John C. Coughenour

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10

11

12

13

14

15

| | |
|---|---|
| REBECCA COUSINEAU, individually on her own behalf and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| MICROSOFT CORPORATION, a Delaware corporation, | ) ) ) |
| Defendant. | ) ) |

No. 11-cv-01438-JCC

MICROSOFT'S MOTION TO
DISMISS AMENDED
COMPLAINT

***Note on Motion Calendar:***
January 20, 2012

**Oral Argument Requested**

16

17

18

19

20

21

22

23

24

25

26

27

# TABLE OF CONTENTS

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ............................................... 1

II.   STATEMENT OF FACTS ............................................................................................ 2

    A.    Windows Phone 7 Location Services ........................................................... 2

    B.    Cousineau's Allegations ................................................................................ 4

III.  ARGUMENT ............................................................................................................... 5

    A.    Cousineau Does Not Allege Injury-in-Fact to Support Article III Standing ................. 6

    B.    Cousineau Does Not Allege the Elements of an SCA Claim. ....................... 8

        1.    Cousineau Does Not Allege Microsoft Accessed a "Facility". ................. 9

        2.    Cousineau Does Not Allege Microsoft Accessed an "Electronic Communication" While in "Electronic Storage." ....................... 10

        3.    The SCA's Provider-Consent Provision Authorizes Microsoft's Actions. .............. 12

    C.    Cousineau Does Not Allege the Elements of a WTA Claim. ....................... 14

        1.    Cousineau Does Not Allege Contemporaneous Acquisition. ................... 15

        2.    Microsoft Did Not Acquire the "Contents" of Any Communication. ....... 16

        3.    The WTA's Consent Provisions Authorize Microsoft's Actions. ............. 17

    D.    The Facts Cousineau Alleges Negate Her Washington Privacy Act Claim. ................. 17

    E.    Cousineau Fails to Plead Facts Plausibly Showing Essential CPA Elements. ............. 19

    F.    Cousineau Fails to Allege Facts Sufficient to Show Unjust Enrichment. ................... 22

        1.    Cousineau Fails to Allege She Conferred a Benefit on Microsoft. ........... 22

        2.    Microsoft Does Not Unjustly Enrich Itself When It Retains Revenue Derived from Third-Party Windows Phone Sales. ................ 23

IV.   CONCLUSION ......................................................................................................... 24

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**FEDERAL CASES**

*Alvarado v. Microsoft Corp.*,
    2010 WL 715455 (W.D. Wash. Feb. 22 2010) ....................................................20

*Ashcroft v. Iqbal*,
    129 S. Ct. 1937 (2009) ...........................................................................................6

*Babbitt v. United Farm Workers Nat'l Union*,
    442 U.S. 289 (1979) ...............................................................................................6

*Bailey v. Bailey*,
    2008 WL 324156 (E.D. Mich. Feb. 6, 2008) .......................................................10

*Balistreri v. Pacifica Police Dep't*,
    901 F.2d 696 (9th Cir. 1990) ..................................................................................6

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) .....................................................................................5, 6, 21

*Bohach v. City of Reno*,
    932 F. Supp. 1232 (D. Nev. 1996) .......................................................................14

*Browning v. Yahoo!, Inc.*,
    2004 U.S. Dist. LEXIS 22873 (N.D. Cal. Nov. 4 2004) .........................................3

*Bunnell v. Motion Picture Ass'n of Am.*,
    567 F. Supp. 2d 1148 (C.D. Cal. 2007) .........................................................15, 18

*Chance v. Avenue A, Inc.*,
    165 F. Supp. 2d 1153 (W.D. Wash. 2001) ...............................................9, 14, 17

*Columbia Pictures, Inc. v. Bunnell*,
    245 F.R.D. 443 (C.D. Cal. 2007)...........................................................................15

*Cornerstone Consultants, Inc. v. Production Input Solutions, LLC*,
    2011 U.S. Dist. LEXIS 55009 (D. Iowa May 19, 2011) .......................................13

*Crispin v. Christian Audigier, Inc.*,
    717 F. Supp. 2d 965 (C.D. Cal. 2010)...................................................................13

*Crowley v. Cybersource Corp.*,
    166 F. Supp. 2d 1263 (N.D. Cal. 2001).................................................................10

*Edwards v. First American Corp.*,
    610 F.3d 514 (9th Cir. 2010), *cert. granted*, 131 S.Ct. 3022 (2011).....................8

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

*First Time Videos, LLC v. Does 1–500*,
   2011 WL 3498227 (N.D. Ill. Aug. 9, 2011) .......................................................... 16

*Fraser v. Nationwide Mutual Insurance Co.*,
   135 F. Supp. 2d 623 (E.D. Pa. 2001), *aff'd in part, vacated in part on other
   grounds*, 352 F.3d 107 (3d Cir. 2004) ................................................................. 11

*Fraser v. Nationwide Mutual Insurance Co.*,
   352 F.3d 107 (3rd Cir. 2004) ........................................................................ 13, 14

*Gladstone Realtors v. Village of Bellwood*,
   441 U.S. 91 (1979) ...................................................................................... 6, 7

*Hilderman v. Enea TekSci, Inc.*,
   551 F. Supp. 2d 1183 (S.D. Cal. 2008) ........................................................... 10, 11

*Holomaxx Tech. Corp. v. Microsoft Corp.*,
   2011 WL 3740813 (N.D. Aug. 23, Cal. 2011) ........................................................ 15

*In re Application of the U.S. for an Order Directing a Provider of Elec. Commc'n
   Serv. to Disclose Records to the Gov't*,
   620 F.3d 304 (3d Cir. 2010) ............................................................................. 16

*In re Application of the U.S. for an Order: (1) Authorizing the Installation and Use of
   a Pen Register and Trap and Trace Device, and (2) Authorizing Release of
   Subscriber and Other Info.*,
   622 F. Supp. 2d 411 (S.D. Tex. 2007) ................................................................ 16

*In re Application of the United States For An Order Authorizing the Use of Two Pen
   Register and Trap and Trace Devices*,
   632 F. Supp. 2d 202 (E.D.N.Y. 2008) ................................................................ 16

*In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.*,
   701 F. Supp. 2d 356 (E.D.N.Y. 2010) ................................................................ 21

*In re DoubleClick, Inc., Privacy Litig.*,
   154 F. Supp. 2d 497 (S.D.N.Y. 2001) .......................................................... passim

*In re Facebook Privacy Litigation*,
   791 F. Supp. 2d 705 (N.D. Cal. 2011) .................................................................. 8

*In re Google Inc. St. View Electronic Communications Litigation*,
   2011 U.S. Dist. LEXIS 71572 (N.D. Cal. June 29, 2011) ........................................... 18

*In re iPhone Application Litigation*,
   2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) .................................................... 7, 19

*In re JetBlue Airways Corp. Privacy Litigation*,
   379 F. Supp. 2d 299 (E.D.N.Y. 2005) ........................................................ 8, 19, 23

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

*In re Neurontin Marketing Litigation*,
   618 F. Supp. 2d 96 (D. Mass. 2009)...........................................................21

*In re Stac Elecs. Securities Litigation*,
   89 F.3d 1399 (9th Cir. 1996)........................................................................3

*In re Toys R Us Privacy Litigation*,
   2001 WL 34517252 (N.D. Cal. Oct. 9, 2001) ..........................................11

*In re § 2703(d) Order*,
   787 F. Supp. 2d 430, 436 (E.D. Va. 2011) ...............................................17

*International Norcent Tech. v. Koninklijke Phillips Elec. Inc.*,
   2007 U.S. Dist. LEXIS 89946 (C.D. Cal. Oct. 29, 2007) ...........................4

*Knievel v. ESPN*,
   393 F.3d 1068 (9th Cir. 2005) ......................................................................3

*Konop v. Hawaiian Airlines, Inc.*,
   302 F.3d 868 (9th Cir. 2002)...................................................................8, 15

*La Court v. Specific Media, Inc.*,
   2011 WL 2473399 (C.D. Cal. April 28, 2011)........................................7, 19

*Low v. LinkedIn*,
   2011 WL 5509848 (N.D. Cal. Nov. 11, 2011) ........................................7, 19

*Minnick v. Clearwire US, LLC*,
   683 F. Supp. 2d 1179 (W.D. Wash. 2010) ...............................................20

*Power Tools & Supply, Inc. v. Cooper Power Tools, Inc.*,
   543 F. Supp. 2d 749 (E.D. Mich. 2008) ...................................................23

*Prohias v. Pfizer, Inc.*,
   485 F. Supp. 2d 1329 (S.D. Fla. 2007).....................................................21

*Raines v. Byrd*,
   521 U.S. 811 (1997) ......................................................................................7

*Reichert v. Elizabethtown Coll.*,
   2011 WL3438318 (E.D. Pa. Aug. 5, 2011) ...............................................14

*Steckman v. Hart Brewing, Inc.*,
   143 F.3d 1293 (9th Cir. 1998) ......................................................................6

*Steel Co. v. Citizens for a Better Environment*,
   523 U.S. 83 (1998) ........................................................................................6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

*Summers* v. *Earth Island Institute*,
  129 S. Ct. 1142 (2009) ........................................................................6

*Theofel v. Farey-Jones*,
  359 F.3d 1066 (9th Cir. 2004) ........................................................10, 11

*Valentine v. Nebuad, Inc.*,
  2011 U.S. Dist. LEXIS 39899 (N.D. Cal. Apr. 4, 2011) .......................18

*Vermont Agency of Natural Res.* v. *United States ex rel. Stevens*,
  529 U.S. 765 (2000) ...........................................................................6

*Vivendi SA v. T-Mobile USA, Inc.*,
  586 F.3d 689 (9th Cir. 2009) .............................................................21

*Williams v. The Purdue Pharma Co.*,
  297 F. Supp. 2d 171 (D.D.C. 2003) ...................................................21

**STATE CASES**

*A&M Supply Co. v. Microsoft Corp.*,
  2008 WL 540883 (Mich. App. 2008) ..................................................22

*Bailie Commc'n, Ltd. v. Trend Bus. Sys., Inc.*,
  61 Wn. App. 151 (1991) ....................................................................22

*Belle Isle Grill Corp. v. City of Detroit*,
  666 N.W. 2d 271 (Mich. Ct. App. 1993) ............................................22

*Brader v. Minute Muffler Installation, Ltd.*,
  81 Wn. App. 532 (1996) ....................................................................22

*Crane & Crane, Inc. v. C&D Elec., Inc.*,
  37 Wn. App. 560 (1984) ....................................................................20

*Hangman Ridge Training Stables, v. Safeco Title Ins. Co.*,
  105 Wn.2d 778 (1986) ..................................................................19, 20

*Lynch v. Deaconess Med. Ctr.*,
  113 Wn.2d 162 (1989) .......................................................................23

*Nguyen v. Doak Homes, Inc.*,
  140 Wn. App. 726 (2007) ...................................................................20

*Oliveira v. Amoco Oil Co.*,
  776 N.E. 2d 151 (Ill. 2002) ................................................................21

*Robinson v. Avis Rent A Car System*,
  106 Wn. App. 104 (2001) ...................................................................20

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

*State v. Riley*,
    121 Wn.2d 22 (1993) ............................................................................. 18

*State v. Smith*,
    85 Wn.2d 840 (1975) ............................................................................. 19

*State v. Williams*,
    94 Wn.2d 531 (1980) ............................................................................. 18

*State v. Wojtyna*,
    70 Wn. App. 689 (1993) ........................................................................ 18

**FEDERAL STATUTES**

18 U.S.C. § 2510(4) ..................................................................................... 15, 16

18 U.S.C. § 2510(8) ............................................................................................. 16

18 U.S.C. § 2510(12) ........................................................................................... 12

18 U.S.C. § 2510(15) ........................................................................................... 12

18 U.S.C. § 2510(17) ........................................................................................... 11

18 U.S.C. § 2511(1)(a) .................................................................................. 14, 16

18 U.S.C. § 2511(1)(d) .................................................................................. 14, 16

18 U.S.C. § 2511(2)(d) .................................................................................. 15, 17

18 U.S.C. § 2701 ............................................................................................. 9, 10

18 U.S.C. § 2701(a) ................................................................................... 9, 13, 15

18 U.S.C. § 2701(a)(1) .................................................................................. 10, 11

18 U.S.C. § 2701(a)(2) ......................................................................................... 11

18 U.S.C. § 2701(c) ............................................................................................. 14

18 U.S.C. § 2701(c)(1) ....................................................................... 9, 12, 13, 14

18 U.S.C. § 2703(c)(1) .................................................................................. 16, 17

**STATE STATUTES**

RCW 9.73.030 ..................................................................................................... 18

RCW 9.73.030(1) ................................................................................................. 18

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

RCW 9.73.030(1)(a) ...........................................................................................18, 19

RCW 9.73.030(1)(b) ...............................................................................................19

RCW 9.73.060 ....................................................................................................18, 19

RCW 19.86.090 .......................................................................................................19

**RULES**

Fed. R. Civ. P. 12(b)(6) ............................................................................................5

**CONSTITUTIONAL PROVISIONS**

U.S. CONST. art. III ...................................................................................1, 6, 7, 8

**OTHER AUTHORITIES**

Orin S. Kerr, *A User's Guide to the Stored Communications Act, and A Legislator's Guide to Amending It,* 72 Geo. Wash. L. Rev. 1208, 1215 & n. 46 (2004) ...........................10

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Rebecca Cousineau bought a "smart phone" running Microsoft's Windows Phone 7 operating system ("OS"), which offers "location services" to allow users to take advantage of location-specific features.  Sometime after buying the phone, Cousineau found it activated location services in one situation that surprised her, i.e., if (a) she enabled location services through the phone's master switch but *then* (b) opened the phone's Camera application and (c) hit "Cancel" when the application asked:  "Allow Camera to use your location?"  In those circumstances, Cousineau says her phone's software caused it to transmit location information—mainly the location of cell phone towers and WiFi access points—to Microsoft without her knowledge.

Even though Cousineau fails to allege *any* injury arising from the transmission of this data (and she admits Microsoft deployed a software upgrade in September 2011 to eliminate the issue), she sues for statutory damages of $1,000 for herself and each member of a proposed class allegedly numbering in the hundreds of thousands.  *See* Amended Class Action Complaint ("Complaint" or "Comp.") [Dkt. 19] ¶¶ 7, 25, 48, 56.  Cousineau alleges Microsoft violated (a) the federal Stored Communications Act ("SCA"); (b) the federal Wiretap Act ("WTA"); (c) the Washington Privacy Act ("WPA"); and (d) the Washington Consumer Protection Act ("CPA").  She also claims Microsoft was unjustly enriched by receipt of her location information.

Microsoft asks the Court to dismiss the Complaint, both because Cousineau lacks standing and because she states no plausible claim against Microsoft under any legal theory:

*First*, Cousineau has not alleged Microsoft's receipt of location data harmed her in any way.  Cousineau therefore lacks Article III standing to pursue her claims in federal court.

*Second*, Cousineau states no SCA claim.  The SCA prohibits unauthorized access only to a "*facility* though which an electronic communication service is provided," a term that does not reach Cousineau's phone.  And even if her phone were a "facility," the Complaint fails to allege Microsoft obtained a communication while in "electronic storage," as the SCA requires.  Finally, Cousineau alleges Microsoft provides her an electronic communications service ("ECS"), i.e.,

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

location services.  Under the SCA, an entity providing an ECS, such as Microsoft, does not violate the SCA if it accesses a facility associated with that service, as Cousineau alleges.

*Third*, to state a WTA claim for "interception," a plaintiff must allege the defendant intercepted a communication during transmission.  Because Cousineau alleges Microsoft accessed data from a ***stored*** file on her Windows Phone 7, Microsoft "intercepted" nothing.  Further, the WTA defines "intercept" as the "acquisition of the ***contents*** of any wire, electronic or oral communication," and the location data allegedly sent to Microsoft comprise records or other data, not "contents."  Finally, even if Cousineau properly alleged interception, the WTA does not prohibit a person from intercepting a communication to which that person is a party—and Cousineau alleges Microsoft was the only intended recipient of her purported communication.

*Fourth*, Cousineau's allegations negate her claim under the WPA because the transmission of location data is not a "communication" and, in any event, did not occur between "individuals." Nor does Cousineau allege Microsoft intercepted a "conversation."  Finally, Cousineau alleges no injury to her business, person, or reputation resulting from any interception of a "communication" or "conversation," as the WPA requires for her to state a claim.

*Fifth*, Cousineau fails to state a claim under the CPA because she alleges no facts even suggesting injury to her business or property or, to the extent she alleges injury, a causal link between an injury and Microsoft's receipt of location data for cell towers and WiFi access points.

*Sixth*, Cousineau conferred no unjust benefit on Microsoft.  Cousineau's phone runs Windows Phone 7 software that, as far as the Complaint shows, flawlessly performs smart phone functions.  No plausible unjust enrichment claim arises from the fact that the Camera application, until September 2011, unexpectedly transmitted location data *if* the user enabled location services but clicked "Cancel" when the Camera application asked whether to "use your location."

## II.   STATEMENT OF FACTS

### A.   Windows Phone 7 Location Services

Cousineau's Complaint revolves around "location services" Microsoft provides for users of its Windows Phone 7 OS.  In a letter to members of Congress, attached to Cousineau's initial

MICROSOFT'S MOTION TO DISMISS
(No. 11-cv-01438-JCC) — 2

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1   Complaint, Microsoft explained that modern "smart phones" provide "feature-rich location

2   services" allowing phones to deliver location-specific experiences.  Comp. [Dkt. 19], Ex. A [Dkt.

3   1-1] at 1.[1]  For example, when a Windows Phone 7 user takes a picture using the phone's Camera

4   application, the user can select an option that will "add a location tag to your pictures so you can

5   see where your pictures were taken."  Comp. ¶ 4.  The user might also use location services in the

6   Search application to find "local movie options and directions to the nearest coffee shop," Comp.,

7   Ex. A [Dkt. 1-1] at 1, or take advantage of the "Find My Phone" feature, which allows a user to

8   find a lost phone based on its transmission of the "last known location of the phone."  *Id.* at 8.

9       But the Windows Phone 7 software allows users to ***disable*** location services by selecting

10  "location" in the phone's Settings menu, Lemson Decl., Ex. A, which presents this screen:

11

12  

13

14

15

16

17

18

19

20

21  *See* Lemson Decl., Ex. B.[2]  In this screen shot, the user has turned location services "Off," with the

22  result that, as the screen says, "[a]pplications can't access your current location."  *Id.  See also id.*

23  ――――――――――――――

    [1] Cousineau refers to the letter to Congress as Exhibit A to both her initial and amended Complaints—but her lawyers
24  failed to attach it to the amended pleading.  *See* Comp. ¶ 6.  Accordingly, Exhibit A to the Amended Complaint
    appears only at Docket 1-1; Exhibit B to the Amended Complaint (mislabeled as Exhibit A) appears at Docket 19-1.

25  [2] Because Cousineau's Complaint relies on screen shots from the Windows Phone 7 OS, Compl. [Dkt. 19] ¶ 4 & Ex.
    B [Dkt. 19-1] at 7-9, Microsoft likewise may rely on screen shots from the same system.  *See In re Stac Elecs. Sec.
    Litig.*, 89 F.3d 1399, 1403 n.4 (9th Cir. 1996).  Under the incorporation-by-reference doctrine, the Court may consider
26  the full content of the Windows Phone 7 OS, as well as the Privacy Statement to which it links, as shown in the screen
    shot embedded in the Complaint, ¶ 4.  *See Browning v. Yahoo!, Inc.*, 2004 U.S. Dist. LEXIS 22873, at *4 n.1 (N.D.
    Cal. Nov. 4 2004) (considering defendants' Website statements, including information beyond citations in complaint,
27  based on incorporation-by-reference doctrine); *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) ("The rationale
    of the 'incorporation by reference' doctrine applies with equal force to internet pages as it does to printed material.");

MICROSOFT'S MOTION TO DISMISS                              Davis Wright Tremaine LLP
(No. 11-cv-01438-JCC) — 3                                        LAW OFFICES
                                                           Suite 2200 · 1201 Third Avenue
                                                          Seattle, Washington 98101-3045
                                                         (206) 622-3150 · Fax: (206) 757-7700

1    at ¶ 4 & Exs. C, D at 6.  On the other hand, if the user leaves location services "On" within the

2    Settings menu, Windows Phone 7 still gives the user the ability to control location services with

3    respect to applications that use those services.  *See id.*; Comp., Ex. A [Dkt. 1-1] at 4-5.

4         **B.        Cousineau's Allegations**

5         Cousineau alleges one situation in which the Windows Phone 7's actual behavior departed

6    from her expectations.  A report attached as Exhibit B to the Complaint explains:

7              When using the default Camera application on the Windows Phone 7 software
               for the first time, as well as after a full reset of all configuration settings, the
8              software asks the following:

9              "Allow the camera to use your location?  Sharing this information will add a
               location tag to your pictures so you can see where your pictures were taken.
10             This information also helps us provide you with improved location services.  We
               won't use the information to identify or contact you.  Privacy Statement."  The
               user is given the option to "allow" or "cancel."

11             While this prompt is displayed, the phone is already sending information
12             regarding the user's location consistently, and is slightly unexpected behavior.
               [¶]  If the user hits "allow", the phone continues to the camera application and
13             continues to send location info, as expected.  [¶]  ***However, if the user hits
               "cancel", the phone continues to the camera application, however will
14             intermittently send location information to a domain owned by Microsoft
               Corporation***.

15   Comp., Ex. B [Dkt. 19-1] at 2 (emphasis added).  The report shows the screen from which the

16   author, Samy Kamkar, selected the Camera application, which displays a partial list of links to

17   nine applications other than Camera.  *Id.* at 6.  But Kamkar identifies no other Windows Phone 7

18   application that transmits location information contrary to the user's instructions—nor does he

19   suggest the Windows Phone 7 transmitted information if the user turned off location services in

20   the Settings menu, as described above.  *Id.*  In other words, the anomalous behavior Kamkar

21   identifies occurred when "using the default Camera application" and ***only*** (a) when the user

22   ***allowed*** location services in the Settings menu but (b) selected "Cancel" when asked:  "Allow the

23   camera to use your location?", which in turn would "add a location tag to your pictures."

24         Cousineau apparently left her phone's location services switch "turned on" in the Settings

25   menu.  *See* Lemson Decl., Exs. A, B.  Nevertheless, based on the behavior Kamkar identifies in

26

27   *International Norcent Tech. v. Koninklijke Phillips Elec. Inc.*, 2007 U.S. Dist. LEXIS 89946 (C.D. Cal. Nov. 29,
     2007) ("Website content is 'documentary' for the purposes of the incorporation by reference doctrine").

the Camera application, Cousineau accuses Microsoft of "siphon[ing] geographic location information" from users. Comp. ¶ 1.  Cousineau alleges nothing to suggest Microsoft wants or uses her personal information (or any other user's personal information); instead, she says Microsoft wants to collect information "to build a digital map, comprised of cell tower and wireless network ('WiFi') access point information," *id.* ¶ 14, so it can "[i]n the future" make money from advertising targeted to specific locations.  *Id.* ¶ 15.  She claims Microsoft designed the Windows Phone 7 OS to collect, record in a "stored file," and transmit location data to Microsoft when the Camera requests location information.  *Id.* ¶¶ 16, 17, 32, 46.  Cousineau alleges Microsoft, until September 2011, received four types of transmitted data when she used her Camera:  GPS data, including longitude and latitude of the device; the phone's device ID; information about nearby cell towers; and Media Access Control ("MAC") numbers and signal strength of nearby WiFi access points.  *Id.* ¶¶ 14, 24; Comp. Ex. B at 4-5.

As a result of this behavior within the Camera when the user left the master location services switch "turned on," but later hit "Cancel" for location services within the Camera application, Cousineau claims Microsoft violated the SCA by supposedly accessing stored location data without (or in excess of) authorization.  Comp. ¶¶ 46, 47.  Cousineau claims Microsoft violated the WTA on the theory it intercepted "electronic communications to, from, and within [the class members'] mobile devices without consent," *id.* ¶ 53, even though Kamkar's report says the phone ***sent*** the supposedly "intercepted" communication ***to Microsoft***.  Comp. Ex. B at 2.  She alleges Microsoft also violated the WTA by using data it collected about cell towers and WiFi access points.  *Id.* ¶ 54.  In addition, Cousineau, a ***Michigan*** resident, alleges violations of the ***Washington*** CPA and Privacy Act, as well as a common law unjust enrichment claim.  *Id.* ¶¶ 60, 61, 74, 75, 81, 82.  Microsoft asks the Court to dismiss all claims.

## III.   ARGUMENT

Rule 12(b)(6) exists to weed out undeserving complaints ***before*** parties engage in expensive discovery, particularly in putative class actions likely to generate significant discovery costs.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007).  "Factual allegations must be enough

MICROSOFT'S MOTION TO DISMISS
(No. 11-cv-01438-JCC) — 5

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

to raise a right to relief above the speculative level . . . [and cross the] line between possibility and plausibility of entitlement to relief." *Id.* at 555-57 (quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009). Further, the Court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998). Here, the Court should dismiss the Complaint because it does not allege "enough facts to state a[ny] claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Further, "[d]ismissal can be based on the lack of a cognizable legal theory," as well as "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

A.      **Cousineau Does Not Allege Injury-in-Fact to Support Article III Standing.**

To establish the "irreducible constitutional minimum of standing," a plaintiff must allege and prove three distinct elements: (1) injury in fact; (2) causation; and (3) redressability. *Steel Co.* v. *Citizens for a Better Env't*, 523 U.S. 83, 102-04 (1998) (quotations omitted). "[I]injury in fact" refers to "a harm that is both 'concrete' and 'actual or imminent, not conjectural or hypothetical.'" *Vermont Agency of Natural Res.* v. *United States ex rel. Stevens*, 529 U.S. 765, 771 (2000) (quoting *Whitmore* v. *Arkansas*, 495 U.S. 149, 155 (1990)). Article III therefore requires a plaintiff to allege a "distinct and palpable" injury, *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 100 (1979) (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)), that is "certainly impending," if not already suffered, *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979).

Although Congress has the power to create causes of action to redress injuries, Congress *lacks* the power to eliminate Article III's injury requirement. Thus, "the requirement of injury in fact is a hard floor of Article III jurisdiction that cannot be removed by statute." *Summers* v. *Earth Island Institute*, 129 S. Ct. 1142, 1151 (2009). "It is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not

MICROSOFT'S MOTION TO DISMISS
(No. 11-cv-01438-JCC) — 6

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1  otherwise have standing." *Raines* v. *Byrd*, 521 U.S. 811, 820 n.3 (1997).  "In no event … may

2  Congress abrogate the Art. III minima:  A plaintiff must always have suffered a distinct and

3  palpable injury to himself that is likely to be redressed if the requested relief is granted."

4  *Gladstone Realtors*, 441 U.S. at 100 (quotations and internal marks omitted).

5      Nothing in Cousineau's Complaint suggests she suffered a "distinct and palpable" injury

6  simply because Microsoft allegedly (a) accessed location information through the Camera

7  application (the basis for her SCA claim) or (b) intercepted the communication of location

8  information sent from the Camera application (the basis for her WTA and WPA claims).  In

9  support of her SCA claim Cousineau alleges Microsoft benefited from access to location files on

10  her phone, Compl. ¶¶ 46, 47, but says nothing about any concrete ***injury*** to her interests—instead

11  asserting vaguely that she "suffered injuries."  *Id.* ¶ 48.  Similarly, for her WTA and WPA claims,

12  Cousineau alleges only that she "suffered harm," without elaboration.  *Id.* ¶¶ 56, 62.  (Microsoft

13  discusses below Cousineau's failure to allege injury under the CPA.)  In short, Cousineau alleges

14  no facts plausibly suggesting Microsoft's mere receipt of location information harmed her in a

15  concrete and particularized way sufficient to confer standing.

16      Three recent decisions by courts in the Ninth Circuit have dismissed claims similar to

17  Cousineau's based on the failure to allege concrete injury-in-fact.  In *La Court v. Specific Media,*

18  *Inc.*, 2011 WL 2473399 (C.D. Cal. April 28, 2011), plaintiffs challenged the defendant's alleged

19  use of persistent tracking cookies, claiming injury by being deprived of the economic value of

20  their personal information.  *Id.* at *4.  After holding the plaintiffs "haven't offered a coherent and

21  factually supported theory of what [their actual or imminent] injury might be," *id.* at *6, the court

22  dismissed.  *Id.* at *8.  Similarly, in *In re iPhone Application Litigation*, 2011 WL 4403963, at **3-

23  7, 15 (N.D. Cal. Sept. 20, 2011), the court granted a motion to dismiss because plaintiffs did not

24  allege standing based on vague assertions of injury due to the alleged collection of personal data.

25  Most recently, in *Low v. LinkedIn*, 2011 WL 5509848, at **5-6, 14-15 (N.D. Cal. Nov. 11, 2011),

26

27

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1   the court dismissed SCA and state law claims for lack of standing, rejecting plaintiff's allegations

2   of emotional and economic harm arising from an alleged disclosure of personal information.[3]

3          The Ninth Circuit's decision in *Edwards v. First American Corp.*, 610 F.3d 514, 517 (9th

4   Cir. 2010), *cert. granted*, 131 S.Ct. 3022 (2011), does not stand for a contrary proposition.  In

5   *Edwards*, the Ninth Circuit held a plaintiff adequately pled standing when she alleged the two

6   elements of her claim that First American charged her a fee in violation of the Real Estate

7   Settlement Procedures Act ("RESPA")—i.e., payment by one covered business to another of a

8   kickback or split of a loan fee, and plaintiff's payment of a fee to one of the businesses—even

9   though the alleged kickback did not *increase* the fee plaintiff paid.  610 F.3d at 517-18.  The Ninth

10  Circuit found standing, but only because Edwards alleged the elements of her statutory claim,

11  including her *payment of a fee* under circumstances RESPA prohibited.[4]  *Id*.  By contrast,

12  Cousineau has not alleged *any* financial detriment associated merely with the alleged access to or

13  interception of location information; further, as discussed below, Cousineau has *not* alleged other

14  elements of her claims.  Thus, *Edwards* does not control.

15         Cousineau lacks Article III standing based on her failure to allege actual injury from her

16  phone's transmission of data in the Camera application.

17         **B.     Cousineau Does Not Allege the Elements of an SCA Claim.**

18         Congress passed the SCA with the intention of "aim[ing] at computer hackers."  *Konop v.*

19  *Hawaiian Airlines, Inc.*, 302 F.3d 868, 890 (9th Cir. 2002) (citing *In re DoubleClick,* 154 F. Supp.

20  2d at 507; *Sherman & Co. v. Salton Maxim Housewares, Inc.,* 94 F. Supp. 2d 817, 820 (E.D.

---

[3] Other courts have found similar allegations of injury inadequate.  *See, e.g., In re JetBlue Airways Corp. Privacy Litig.*, 379 F. Supp. 2d 299, 327 (E.D.N.Y. 2005) (finding "no support for the proposition that an individual['s] …personal information has or had any compensable value in the economy at large"); *In re DoubleClick, Inc., Privacy Litig.*, 154 F. Supp. 2d 497, 525 (S.D.N.Y. 2001) (granting motion to dismiss claim against online advertiser accused of using "cookies" to collect data for lack of damages because while "demographic information is valued highly … the value of its collection has never been considered an economic loss").

[4] The court in *In re Facebook Privacy Litigation*, 791 F. Supp. 2d 705 (N.D. Cal. 2011), misapplied *Edwards*.  In *Facebook*, the court denied Facebook's motion to dismiss a WTA claim for lack of standing because plaintiffs asserted Facebook invaded statutory rights—but the court *also* held plaintiffs failed to state a WTA claim because they consented to interception of their communications.  *Id*. at 711-13.  Given the *Facebook* plaintiffs' failure to allege the elements of their statutory WTA claim, they lacked standing under *Edwards*, and the court should have dismissed on that basis.  In any event, the Supreme Court granted certiorari in *Edwards* to consider whether the Ninth Circuit went too far in finding standing to pursue a statutory claim in the absence of an allegation that plaintiff paid more as a result of the alleged violation.  The Court will hear argument on November 28, 2011.

Mich. 2000)).  The SCA "aims to prevent hackers from obtaining, altering or destroying certain stored electronic communications."  *DoubleClick,* 154 F. Supp. 2d at 507 (citing *Sherman & Co.,* 94 F. Supp. 2d at 820).  Here, Cousineau invokes Section 2701 of the SCA, which makes it an offense to (1) access "without authorization ***a facility*** through which an electronic communication service is provided," or (2) exceed "an authorization to access ***that facility***" and, as a result of the illegal access to the facility, obtain "access to a wire or electronic communication ***while it is in electronic storage*** in such system."  18 U.S.C. § 2701(a) (emphasis added).  Specifically, Cousineau alleges Microsoft accessed her phone, which she labels a "facility," without authorization and then obtained access to an "electronic communication" apparently consisting of location data, while the data was momentarily in "storage" on the phone.

Cousineau states no claim under these provisions.  ***First***, because the SCA prohibits access only to a "***facility*** through which an electronic communications service is provided," it does not cover personal computing devices such as mobile phones.  ***Second***, Cousineau fails to allege Microsoft accessed electronic communications while in "electronic storage," as the SCA defines that term.  ***Third***, the SCA does ***not*** limit access to a facility (or its stored communications) "authorized by the person or entity providing a wire or electronic communication service."  18 U.S.C. § 2701(c)(1).  Because Cousineau alleges Microsoft provides her an "electronic communication service," i.e., location services, Section 2701(c)(1) bars her SCA claim.

### 1.     Cousineau Does Not Allege Microsoft Accessed a "Facility".

Ten years ago, this Court considered whether personal computers ("PCs") fell within the SCA's definition of a "facility."  "Viewing [the parties'] factual dispute in the light most favorable to the nonmovant, as is required on summary judgment," the Court accepted a PC might qualify as a "facility."  *Chance v. Avenue A, Inc.*, 165 F. Supp. 2d 1153, 1161 (W.D. Wash. 2001).  But the Court acknowledged treating a PC as a "facility" amounted to a "strained interpretation of a 'facility through which an electronic communication service is provided.'"  *Id.*

Since then, courts and commentators have agreed with this Court that only a "strained interpretation" of the SCA could reach personal computing devices.  One court called it

"questionable whether the laptop computer qualifies as a 'facility through which an electronic communication service is provided.'" *Hilderman v. Enea TekSci, Inc*., 551 F. Supp. 2d 1183, 1204-05 (S.D. Cal. 2008).  Another held SCA "protection does not extend to emails and messages stored only on Plaintiff's personal computer."  *Bailey v. Bailey*, 2008 WL 324156, at *6 (E.D. Mich. Feb. 6, 2008).  And the Ninth Circuit expressly declined to hold that the SCA protects communications on PCs.  *See Theofel v. Farey-Jones*, 359 F.3d 1066, 1077 n.4 (9th Cir. 2004) (construing complaint to allege access to communications on third-party servers).  No court has held that "facility" encompasses a handheld mobile device, such as a smart phone.[5]

The statutory language leads to the conclusion that Cousineau's phone falls outside the statute's reach:  the SCA protects only a "facility through which an electronic communication service is ***provided***," 18 U.S.C. § 2701(a)(1) (emphasis added), not any device (or even any "facility") through which a user of the service accesses and uses the service.  Microsoft ***provides*** location services through its own facilities, such as servers and transmitters; Cousineau makes ***use*** of the services through her phone, running Windows Phone 7.  *See Crowley v. Cybersource Corp*., 166 F. Supp. 2d 1263, 1271 (N.D. Cal. 2001) (labeling as "destined to failure" plaintiff's argument "that computers of users of electronic communication service, as opposed to providers of electronic communication service, are considered facilities through which such service is provided").  Because Cousineau's mobile phone is not a "facility through which an electronic communication service is provided" under the SCA, she fails to state a claim under the SCA.

> **2.**   **Cousineau Does Not Allege Microsoft Accessed an "Electronic Communication" While in "Electronic Storage."**

Section 2701 of the SCA also requires Cousineau to allege Microsoft "obtain[ed] … [an] electronic communication while it [was] in electronic storage."  Congress defined "electronic storage" to include only "(A) any ***temporary, intermediate*** storage of a wire or electronic communication ***incidental to the electronic transmission*** thereof; and (B) any storage of such

---

[5] Indeed, the leading academic commentator on the SCA labeled "quite plainly incorrect" the proposition that the statute reaches an individual PC.  Orin S. Kerr, *A User's Guide to the Stored Communications Act, and A Legislator's Guide to Amending It*, 72 Geo. Wash. L. Rev. 1208, 1215 & n.46 (2004) ("the home computer of an end user is not protected by the SCA").

communication by an electronic communication service for purposes of backup protection of such communication." 18 U.S.C. § 2510(17) (emphasis added).  Cousineau invokes subsection (A) of this definition, alleging Microsoft programmed the Windows Phone 7 OS to "temporarily store the location information … of its users."  Comp. ¶ 46.  She alleges Microsoft violated Section 2701(a)(1) by periodically accessing unspecified "consumers' communications," *id.*, and violated Section 2701(a)(2) by "exceed[ing] the authorization of consumers to access consumers' communications," again without specifying what those "communications" might be.  *Id.* ¶ 47.

As made clear in the definition's references to "temporary" and "intermediate" storage, the SCA "only protects electronic communications stored 'for a limited time' in the 'middle' of a transmission, *i.e.* when an electronic communication service ***temporarily stores a communication while waiting to deliver it.***"  *DoubleClick*, 154 F. Supp. 2d at 512 (emphasis added).  Put another way, "the definition [of electronic storage] … covers a message that is stored in intermediate storage temporarily, ***after the message is sent by the sender***, but before it is retrieved by the intended recipient."  *Fraser v. Nationwide Mut. Ins. Co.*, 135 F. Supp. 2d 623, 636 (E.D. Pa. 2001) (emphasis added), *aff'd in part, vacated in part on other grounds*, 352 F.3d 107 (3d Cir. 2004). As the Ninth Circuit noted in *Theofel* (citing *DoubleClick* and *Fraser*), "[s]everal courts have held that subsection (A) covers e-mail messages stored on an ISP's [or related] server ***pending delivery*** to the recipient."  359 F.3d at 1075 (emphasis added).  For that reason, courts have held data stored on the recipient's PC (assuming PCs are "facilities") are not in "temporary, intermediate storage … incidental to … electronic transmission" under the SCA.  *Hilderman*, 551 F. Supp. 2d at 1204-05 (emails stored on PC after receipt not in "temporary, intermediate storage"); *In re Toys R Us Privacy Litig.*, 2001 WL 34517252, at **2-4 (N.D. Cal. Oct. 9, 2001) (cookies on PCs not in "temporary, intermediate storage").

Here, Cousineau alleges storage of "location information" on the phone—but does ***not*** allege the storage is "intermediate" or "incidental" to any transmission of that information.  Comp. ¶ 46.  Separately, Cousineau alleges Microsoft's Windows Phone 7 OS allows it to "retrieve[] and transmit[] this information to its servers."  *Id.* ¶ 33.  But that allegation, even taken in the light

MICROSOFT'S MOTION TO DISMISS
(No. 11-cv-01438-JCC) — 11

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1  most favorable to Cousineau, shows Microsoft causes the communication of stored data to

2  occur—*not* that it "accesses" the communication in "intermediate storage" after transmission but

3  pending receipt by the intended recipient.  Thus, as pled, Cousineau's claim fails to allege access

4  to any communications while held in "electronic storage," as the SCA defines that term.

**3.      The SCA's Provider-Consent Provision Authorizes Microsoft's Actions.**

6          Finally, the SCA's prohibition against unauthorized access (or access in excess of

7  authorization) "does not apply with respect to conduct authorized … by the person or entity

8  providing a wire or electronic communication service."  18 U.S.C. § 2701(c)(1).  Cousineau

9  alleges (indeed, rests her case on the premise) that Microsoft provides "location services."

10  Because the location services Cousineau describes constitute "an electronic communication

11  service," this provision bars her SCA claim—even assuming Cousineau surmounts the "facility"

12  and "electronic storage" pleading hurdles.

13          Section 2510(12) defines "electronic communication" to include "*any* transfer of … data[]

14  or intelligence of any nature transmitted in whole or in part by a … radio … system."  (Emphasis

15  added.)  Cousineau alleges the Windows Phone 7 OS received, stored, and periodically transferred

16  to Microsoft four types of location "data" when she used the Camera application.  Comp. ¶¶ 6, 23,

17  24.  Cousineau admits transmission of that data to Microsoft falls within the definition of

18  "electronic communication" in Section 2510(12).  *See id.* ¶ 42.  Section 2510(15) in turn defines

19  "electronic communication service" ("ECS") to mean "any service which provides to users thereof

20  the ability to send or receive … electronic communications," including data.  Because Microsoft

21  enables Windows Phone 7 users to send and receive the data described above, according to

22  Cousineau's allegations, it provides an ECS to users.[6]  (Microsoft's characterization of the

23  location services as a "service" in its letter to Congress reinforces this conclusion.  *See* Comp., Ex.

24  A [Dkt. 1-1].)  Thus, even accepting Cousineau's "facilities" and "electronic storage" allegations,

25  Microsoft cannot be liable under the SCA for accessing facilities used to provide its own ECS.

---

26  [6] Cell phone companies that provide service for devices running the Windows Phone 7 OS *also* provide an ECS to
27  users.  But nothing in the definition of ECS limits a user to only *one* electronic service provider.  To the contrary, an
ECS is "*any* service which provides to users thereof the ability to send or receive electronic communications."  18
U.S.C. § 2510(15) (emphasis added).

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200  ·  1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1    Courts have applied the provider-consent exception in similar circumstances.  In

2   *Cornerstone Consultants, Inc. v. Production Input Solutions, LLC*, 2011 U.S. Dist. LEXIS 55009

3   (D. Iowa May 19, 2011), for example, the court granted a motion to dismiss SCA claims against a

4   company that provided email services.  *Id*. at **59, 64-65.  The court rejected plaintiff's argument

5   that defendant could provide an ECS only if it provided Internet access.  Instead, the court held the

6   plain meaning of "***any*** service which provides users thereof the ability to send or receive wire or

7   electronic communication services" under Section 2510(15) included an email service.  *Id*.

8   at **59-60.  The court also rejected the plaintiff's claims that the email provider exceeded its

9   authorized access by accessing emails stored on the provider's servers:

10           [T]he question is not whether access to particular *emails* was authorized or in
            excess of authorization, but whether access to "a *facility* through which an
11           electronic communication service is provided" was unauthorized or was in
            excess of authorization.  The plaintiffs have cited absolutely no portions of the
12           Complaint reasonably suggesting that the defendants' access to *the facility*, the
            Exchange server, was in excess of authorization …

13  *Id*. at *64 (citations omitted).  As in *Cornerstone*, nothing in Cousineau's Complaint alleges

14  Microsoft lacked authority to access the so-called ***facility***, i.e., Cousineau's Windows Phone itself.

15  To the contrary, the Complaint shows Cousineau's phone transmitted location information ***only***

16  because she left the master location services switch "turned on."  *See* Lemson Decl., Exs. A, B, C.

17           Other cases show the strength of Section 2701(c)(1)'s provider-consent provision. For

18  example, in *Crispin v. Christian Audigier, Inc.*, 717 F. Supp. 2d 965, 969, 980, 982 (C.D. Cal.

19  2010), the district court held the private messaging features of Facebook and MySpace fit the

20  definition of an ECS.  Similarly, in *Fraser v. Nationwide Mutual Ins. Co.*, 352 F.3d 107 (3rd Cir.

21  2004), a terminated insurance agent brought an SCA claim against his former employer, claiming

22  the employer violated Section 2701(a) by searching his emails on the employer's email server.  *Id*.

23  at 109-110.  The Third Circuit affirmed summary judgment for the employer, holding

24  "§ 2701(c)(1) excepts from Title II seizures of e-mail authorized 'by the person or entity providing

25  a wire or electronic communication service.'"  *Id*. at 114.  The court "read § 2701(c) literally to

26  ***except from Title II's protection all searches by communications service providers***. … [B]ecause

27

MICROSOFT'S MOTION TO DISMISS
(No. 11-cv-01438-JCC) — 13

Fraser's e-mail was stored on Nationwide's system (which Nationwide administered), its search of that e-mail falls within § 2701(c)'s exception to Title II." *Id.* at 114-15 (emphasis added). *See also Reichert v. Elizabethtown Coll.*, 2011 WL3438318, at *5 (E.D. Pa. Aug. 5, 2011) (dismissing SCA claim over college's search of emails on college's email system); *Bohach v. City of Reno*, 932 F. Supp. 1232, 1236 (D. Nev. 1996) (police department could retrieve data on its computer system without violating SCA because it "is the provider of the 'service'" and "service providers [may] do as they wish when it comes to accessing communications in electronic storage").

In sum, the Complaint shows Microsoft qualifies as an ECS provider by virtue of its role providing location services. SCA Section 2701(c)(1) exempts Microsoft from liability for accessing any alleged "facilities" through which it provides those services. As a result, if Cousineau's phone qualifies as a facility, the provider-consent exception bars her claim.[7]

### C.    Cousineau Does Not Allege the Elements of a WTA Claim.

Aside from alleging Microsoft accessed stored communications, Cousineau makes the factually and legally incompatible claim it intercepted those communications during transmission. She alleges Microsoft violated the WTA, which subjects to suit any person who "(a) intentionally *intercepts* … any wire … or electronic communication" or "(d) intentionally uses … the contents of any wire … or electronic communication, ***knowing or having reason to know that the information was obtained through the interception*** of a wire … or electronic communication in violation of this subsection." 18 U.S.C. §§ 2511(1)(a), (d) (emphasis added).

Cousineau states no WTA claim. For one thing, a plaintiff cannot state a WTA claim by asserting, as Cousineau does, that a defendant accessed communications while in ***storage***; instead, the WTA applies only to communications intercepted contemporaneous with ***transmission***. Further, the WTA defines "intercept[ion]" as the "acquisition of the ***contents*** of any wire, electronic or oral communication," and under settled law, the location data allegedly sent to Microsoft are not "contents." 18 U.S.C. § 2510(4) (emphasis added). Even if Cousineau properly

---

[7] This Court in *Chance* applied a similar consent exception in granting summary judgment to a company that used cookies and "web bugs" to monitor communications between Internet users' computers and Websites they visited. 165 F. Supp. 2d at 1161. The Court relied on *DoubleClick*, which dismissed a similar SCA claim, holding Websites visited by Internet-users could authorize DoubleClick to access the users' PCs. 154 F. Supp. 2d at 509-10.

MICROSOFT'S MOTION TO DISMISS
(No. 11-cv-01438-JCC) — 14

alleged an "interception," Microsoft, as the intended recipient of the communication, **consented** to the "interception"; Section 2511(2)(d) of the WTA therefore protects it from liability.

### 1.    Cousineau Does Not Allege Contemporaneous Acquisition.

Cousineau cannot assert both WTA and SCA claims because the same conduct cannot violate both statutes.  The SCA applies to communications "in electronic storage," while the WTA governs only communications in transmission.  An electronic communication **cannot** simultaneously be both in transmission and in electronic storage.  *See Konop*, 302 F.3d at 877-78. "[A]n electronic communication may either be intercepted and actionable under the Wiretap Act or acquired while in electronic storage and actionable under the SCA, but not both."  *Columbia Pictures, Inc. v. Bunnell*, 245 F.R.D. 443, 450 (C.D. Cal. 2007) (citing *Konop*).

In *Konop*, the Ninth Circuit held Congress intended the term "intercept," as defined by Section 2510(4), to apply only to communications acquired **contemporaneous with** transmission. 302 F.3d at 878.  *See also Bunnell v. Motion Picture Ass'n of Am.*, 567 F. Supp. 2d 1148, 1152, 1154 (C.D. Cal. 2007) (if defendant acquired emails while in electronic storage—even for only millisecond—plaintiffs' "claim under the Wiretap Act necessarily fails"); *Holomaxx Tech. Corp. v. Microsoft Corp.*, 2011 WL 3740813, at *3 (N.D. Cal. Aug. 23, 2011) (same) (citing *Konop*). Here, Cousineau alleges that, when using the Camera application, her phone collected and stored the locations of cell towers and Wi-Fi access points, the strength of access-point signals, and sometimes GPS latitude and longitude coordinates, which Microsoft periodically retrieved from storage and then sent to its servers.  Comp. ¶¶ 33, 46, 47.  But retrieving that data from a file after storage on the phone does **not** constitute "interception" of a communication under the WTA, as *Konop* makes clear.

Cousineau alleges Microsoft violated the WTA by intercepting and using the contents of her electronic communications.  But because she alleges the OS **stored** those communications in a file on the Windows Phone **before** Microsoft accessed them, Compl. ¶¶ 46, 47, she states no claim for "interception" under the WTA.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

### 2.   Microsoft Did Not Acquire the "Contents" of Any Communication.

Cousineau's WTA claim also fails because it does not allege Microsoft acquired the contents of any communication.  Under Section 2510(4), "intercept" means the "acquisition of *the contents* of any … electronic … communication." (Emphasis added.)  Cousineau's WTA claim under Section 2511(1)(a) requires the "intentional interception" of an electronic communication, while her claim Microsoft violated Section 2511(1)(d) requires Microsoft to use the "contents" of the communication knowing (or having reason to know) it was "intercepted."  Thus, unless Cousineau alleges Microsoft acquired "contents," she states no claim under Sections 2511(1)(a) or (d).  But Microsoft did *not* acquire "contents" on the facts Cousineau alleges here:  under Section 2510(8), "contents" "includes any information concerning the *substance, purport, or meaning* of that communication," a definition that does *not* reach location data.

Although no case has determined whether location data amounts to "contents" in the context of a WTA claim, courts have considered the issue under the SCA—which shares the same definition of "contents" in Section 2510(8).  Under the SCA, the government has litigated the meaning of "contents" in the context of a provision allowing the government to require a cell phone service provider to disclose "a record or other information pertaining to a subscriber . . . (*not including the contents* of communications)."  18 U.S.C. § 2703(c)(1) (emphasis added).  Under this statute, courts uniformly hold cell site location information ("CSLI"), i.e., the very information Cousineau alleges Microsoft intercepted and used, does *not* constitute "contents."  For example, in *In re Application of the United States For An Order Authorizing the Use of Two Pen Register and Trap and Trace Devices*, 632 F. Supp. 2d 202 (E.D.N.Y. 2008), the court held CSLI met the definition of a "record or other information" under Section 2703(c)(1), but was *not* "contents of communications."  *Id.* at 207 & n.8.  Other courts likewise hold CSLI to be "record[s] or information" rather than "contents of communications."[8]  Similarly, the court in *First Time Videos, LLC v. Does 1–500*, 2011 WL 3498227, at *4 (N.D. Ill. Aug. 9, 2011), held WiFi access

---

[8] *See, e.g.*, *In re Application of the U.S. for an Order Directing a Provider of Elec. Commc'n Serv. to Disclose Records to the Gov't*, 620 F.3d 304, 307-08 (3d Cir. 2010) (historical CSLI); *In re Application of the U.S. for an Order: (1) Authorizing the Installation and Use of a Pen Register and Trap and Trace Device, and (2) Authorizing Release of Subscriber and Other Info.*, 622 F. Supp. 2d 411, 417-18 (S.D. Tex. 2007) (prospective CSLI).

MICROSOFT'S MOTION TO DISMISS
(No. 11-cv-01438-JCC) — 16

point MAC addresses are records, *not* contents.  *See also In re § 2703(d) Order*, 787 F. Supp. 2d 430, 436 (E.D. Va. 2011) ("telephone or instrument number or other subscriber number or identity" are "non-content records under § 2703(c)(1)").

Because location data do not meet the definition of "contents" as a matter of law, the Court should dismiss Cousineau's WTA claim.

### 3.     The WTA's Consent Provisions Authorize Microsoft's Actions.

Even if the WTA applied, Cousineau alleges (and her expert confirms) her phone "sen[t] location information to a domain owned by Microsoft."  Comp., ¶¶ 16, 30, Ex. B at 2.  *See also id.* ¶¶ 17, 24, 33 (referring to data transmission to Microsoft servers).  Section 2511(2)(d) of the WTA authorizes Microsoft to "intercept" electronic communications from Cousineau's Windows Phone to Microsoft's servers because it is "one of the parties to the communication[s]."

The *DoubleClick* court applied this provision to dismiss a WTA interception claim against DoubleClick, finding Websites with which Internet users communicated had consented to DoubleClick's interception of the communications.  154 F. Supp. 2d at 514-15.  Similarly, in *Chance*, this Court held Section 2511(2)(d)'s user consent provision barred WTA claims:

> The exception requires a party to the communication to consent to the interception and that the interception be without any criminal or tortious purpose. … One-party consent is sufficient to negate liability under the consent prong of the Wiretap Act's exception.

165 F. Supp. 2d at 1162 (citations omitted).  As a party to the alleged communication, Microsoft cannot be liable under the WTA for allegedly intercepting it.

### D.     The Facts Cousineau Alleges Negate Her Washington Privacy Act Claim.

Cousineau asserts a claim for alleged violations of the WPA.  The WPA makes it "unlawful for any individual … [or] corporation … to intercept, or record any"

> (a) *Private communication* transmitted by telephone … or other device between two or more *individuals* … without first obtaining the consent of all the participants in the communication;

> (b) *Private conversation* … without first obtaining the consent of all the persons engaged in the conversation.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

RCW 9.73.030(1) (emphasis added).  The WPA affords a civil remedy to "any … person claiming that a violation of this statute has injured his or her business, his or her person, or his or her reputation" and entitles "[a] person so injured … to actual damages, … or liquidated damages computed at the rate of one hundred dollars a day for each day of violation," as well as fees and costs.  RCW 9.73.060.  Cousineau's allegations negate her WPA claim in four ways:[9]

*First*, the WPA does not protect all private information; rather, it protects only private *communications* and *conversations*.  The Washington Supreme Court has given "communication" its ordinary meaning of "an exchange of information" *between* people, recognizing that disclosures of communications "may affect other persons and can involve multiple invasions of privacy."  *State v. Riley*, 121 Wn.2d 22, 34 (1993).  *See also State v. Wojtyna*, 70 Wn. App. 689, 695 (1993) (phone number sent by pager not a "communication").  Here, Cousineau does not allege Microsoft intercepted or recorded any information she sought to exchange with anyone— other than Microsoft itself.  RCW 9.73.030(1) does not apply at all.

*Second*, Cousineau fails to allege violations of RCW 9.73.030(1)(a) because, even if her location information satisfied the definition of a "communication," it did not occur between "two or more *individuals*."  Cousineau's WPA claim alleges Microsoft "intercepted and/or recorded … private communications from mobile devices, as described more fully herein."  Comp. ¶ 60.  But the only "communications" described in the Complaint involve transmissions "to Microsoft," *id*. ¶ 17, or "its servers," *id*. ¶ 33, and the statute distinguishes between "individuals" and "corporations."  *See* RCW 9.73.030 (referring separately to "individuals" and "corporations").  Cousineau alleges Microsoft is "a corporation."  Comp. ¶ 11.  Because the WPA by its terms does not protect the privacy of a "communication" between an individual and *a corporation*, Cousineau alleges no plausible violation of RCW 9.73.030(1)(a).

---

[9] Courts in this circuit have divided over whether the WTA preempts state statutory privacy claims, such as the one Cousineau asserts here.  *Compare In re Google Inc. St. View Elec. Commc'ns. Litig.*, 2011 U.S. Dist. LEXIS 71572, **47-49 (N.D. Cal. June 29, 2011) (WTA preempts California Invasion of Privacy Act) *and Bunnell*, 567 F. Supp. 2d at 1154-55  (same) *with Valentine v. Nebuad, Inc.*, 2011 U.S. Dist. LEXIS 39899, at **16-20 (N.D. Cal. Apr. 4 2011) (WTA does not preempt CIPA or California Computer Crime Law).  The Washington Supreme Court has held that federal law does not preempt the WPA, *State v. Williams*, 94 Wn.2d 531, 539 (1980), but its decision does not control on issues concerning the federal Supremacy Clause.  Given Cousineau's clear failure to allege a WPA claim, however, the Court need not reach the constitutional issue.

MICROSOFT'S MOTION TO DISMISS
(No. 11-cv-01438-JCC) — 18

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

***Third***, Cousineau fails to allege a violation of RCW 9.73.030(1)(b) because she has not alleged interception of a "conversation."  The Washington Supreme Court has said "conversation" as used in RCW 9.73.030(1)(b) has its "ordinary connotation of oral exchange, discourse or discussion."  *State v. Smith*, 85 Wn.2d 840, 846 (1975) (sounds of "gunfire, running, shouting and … screams" did not amount to "conversation").  No reasonable construction of the word "conversation" reaches the transmission of location data.

***Fourth***, Cousineau alleges no injury to her "business," "person" or "reputation," as the statute requires for her to assert a civil claim for damages, including liquidated damages.  *See* RCW 9.73.060.  Cousineau vaguely alleges she "suffered harm" as a result of the supposed WPA violation, *id.* ¶ 62, but fails even to hint at facts suggesting Microsoft's receipt of location data adversely affected her business, person, or reputation.

### E.  Cousineau Fails to Plead Facts Plausibly Showing Essential CPA Elements.

The CPA affords a right of action only to a "person who is injured in his or her business or property ***by a violation***" of the statutory prohibition against unfair or deceptive practices, who may sue to recover "***actual damages***."  RCW 19.86.090 (emphasis added).  Private plaintiffs therefore must allege "a causal link … between the unfair or deceptive acts and [an] injury."  *Hangman Ridge Training Stables, v. Safeco Title Ins. Co*., 105 Wn.2d 778, 780, 792-93 (1986).

Courts in other jurisdictions routinely reject the theory that mere transmission of personal data causes injury sufficient to support a state consumer protection claim.  *See Low,* 2011 WL 5509848, at **1, 15 (disclosure of personally identifiable browsing histories to advertisers and marketers did not allege injury); *La Court* , 2011 WL 2473399, at **3, 12 (asserted use of tracking cookies did not allege injury); *iPhone Application Litig.*, 2011 WL 4403963, at **3-5, 15 (rejecting allegations of injury based on deprivation of economic value of personal data); *JetBlue Airways Corp. Privacy Litig.*, 379 F. Supp. 2d at 327 ("no support for the proposition that an individual['s] . . . personal information has or had any compensable value in the economy at large"); *DoubleClick*, 154 F. Supp. at 525 (although "demographic information is valued highly … the value of its collection has never been considered an economic loss").  Thus, to state a CPA

MICROSOFT'S MOTION TO DISMISS
(No. 11-cv-01438-JCC) — 19

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

claim, Cousineau must allege injury beyond the mere transmission of her data—and she must allege Microsoft's conduct **caused** that injury.  "The causation requirement is met where the defendant 'induced' the plaintiff to act or refrain from acting."  *Robinson v. Avis Rent A Car System*, 106 Wn. App.  104, 113 (2001); *Crane & Crane, Inc. v. C&D Elec., Inc.*, 37 Wn. App. 560, 563 (1984) (no causation where misleading statements did not lead to hiring defendant).

Cousineau offers two CPA injury theories: (a) the anomalous behavior in the Camera application (which Microsoft fixed in a software update in September 2011, Comp. ¶ 7) supposedly diminished her phone's value; and (b) transmission of location data through the Camera allegedly **could** diminish the value of a user's data plan.  Neither suffices.[10]

### Cousineau Alleges No Facts Plausibly Suggesting Her Phone's Diminished Value.

Cousineau alleges she would not have purchased her Windows Phone 7 had she known it "was a covert tracking device that intermittently transmitted [her] geolocation to Microsoft." Comp. ¶ 74.  (This overstated allegation obscures the undisputed facts that Cousineau (a) first declined to allow location tagging in the Camera only **after** she bought the phone and (b) always had the ability to turn off location services entirely.)  Cousineau knows the fact she might have bought a different phone does not suggest she suffered injury to "her business or property" as a result of Microsoft's alleged conduct.  Cousineau therefore tries to allege injury and causation by asserting the Windows Phone 7 OS's transmission of location data to Microsoft's servers while she used the Camera application "causes a diminution in the value of the cellular phone."  *Id.*

For that allegation to have the plausibility *Twombly* requires, Cousineau would need to allege the initial failure to disclose the Camera's idiosyncratic behavior caused artificial **inflation** of Windows Phone prices, which **fell** when the truth became known.[11]  Cousineau alleges nothing

---

[10] Cousineau also fails to allege unfair or deceptive conduct—but this motion does not rely on that shortcoming.  As to unfairness, Cousineau does not allege an unfair trade practice established by the Legislature, and "*Hangman Ridge …* requires that the conduct be per se unfair, not merely labeled unfair by the Plaintiff." *Alvarado v. Microsoft Corp.*, 2010 WL 715455, at *3 (W.D. Wash. Feb. 22 2010); *Minnick v. Clearwire US, LLC*, 683 F. Supp. 2d 1179, 1186 (W.D. Wash. 2010).  As to deceptive conduct, an act or practice has a capacity to deceive only if it "misleads or misrepresents something of material importance." *Nguyen v. Doak Homes, Inc.*, 140 Wn. App. 726, 734 (2007).  Here, despite the "spin" by Cousineau's lawyers, no one could plausibly believe reasonable buyers of a phone running Windows Phone 7 would find it material that they might have to turn off the master location services switch in the Settings menu (which Cousineau does **not** allege she did) to avoid transmitting location data while using the Camera.

[11] Courts around the country have held as a matter of law that price inflation claims do **not** allege injury or causation under consumer protection laws.  *See, e.g.*, *In re Neurontin Mktg. Litig.*, 618 F. Supp. 2d 96, 111-12 (D. Mass. 2009)

MICROSOFT'S MOTION TO DISMISS
(No. 11-cv-01438-JCC) — 20

of the sort.  Cousineau amended her pleading after the publicity associated with her initial filing and more than a month after Microsoft's Website disclosed the anomaly within the Windows Phone 7 OS and explained (again) how to disable location services.  *See* Comp. ¶ 7 & n.1, ¶ 27. Nevertheless, Cousineau does ***not*** allege prices of Windows Phone 7's dropped; that demand fell; that she had difficulty selling her phone; or anything else that might lend an aroma of plausibility to the allegation of damage through diminished value—much less a causal ***link*** between the phone's transmission of location data in narrow circumstances and the alleged loss of value.

### *Cousineau Pleads No Facts Plausibly Suggesting Diminished Value of Her Data Plan*.

Cousineau also alleges "on information and belief" that transmitting location data to Microsoft's servers causes a "diminution in the users' data plans," on the theory Microsoft "forced [u]sers to pay to transmit the data to its servers."  Comp. ¶ 75.  But Cousineau fails to allege ***she*** suffered a "diminution" in her own data plan because of the limited transmission of data while in the Camera application with location services "turned on."  (Indeed, she does not even allege how often she created the specific set of circumstances necessary to lead to the unexpected transmission of data.)  To make her claim plausible, Cousineau at least must plead (a) her data plan did ***not*** allow her to use unlimited data and (b) the unwanted transmission of location data in the Camera application caused her to exceed the amount of data available under her plan. Cousineau alleges neither.  Her allegation "on information and belief" about injury possibly suffered by ***others*** amounts to speculation; it does not allege her personal CPA injury.  *See Vivendi SA v. T-Mobile USA, Inc.*, 586 F.3d 689, 694 (9th Cir. 2009) (rejecting allegations "on information and belief" absent allegations of facts supporting information or belief) (citing *Iqbal*).

The Court should dismiss Cousineau's CPA claim based on her failure to allege facts plausibly suggesting she suffered injury because of Microsoft's alleged conduct.

---

("no court has ever adopted a 'fraud on the market' type theory outside the securities fraud context"); *In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.*, 701 F. Supp. 2d 356, 380 (E.D.N.Y. 2010) ("CFA plaintiffs have fallen short … where they alleged a price inflation theory, which New Jersey courts have found insufficient to show the requisite ascertainable loss or causation."); *Prohias v. Pfizer, Inc.*, 485 F. Supp. 2d 1329, 1336 (S.D. Fla. 2007) (rejecting price inflation theory); *Oliveira v. Amoco Oil Co.*, 776 N.E. 2d 151, 164 (Ill. 2002); *Williams v. The Purdue Pharma Co.*, 297 F. Supp. 2d 171, 177-78 (D.D.C. 2003).  Because Cousineau alleges no facts sufficient to assert such a cause of action, the Court need not decide whether Washington would recognize it.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200  ·  1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150  ·  Fax: (206) 757-7700

**F.    Cousineau Fails to Allege Facts Sufficient to Show Unjust Enrichment.**

Cousineau's unjust enrichment claim has three elements:  (1) "A benefit conferred on the defendant by the plaintiff"; (2) "an appreciation or knowledge by the defendant of the benefit"; and (3) "the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value."  *Bailie Commc'n, Ltd. v. Trend Bus. Sys., Inc.*, 61 Wn. App. 151, 159-60 (1991).[12]  The Court should dismiss this claim for either of two reasons: (a) Cousineau does not allege she conferred a benefit on Microsoft, and (b) nothing suggests Microsoft unjustly retains money it receives from manufacturers for licensing the Windows Phone 7 OS.

**1.    Cousineau Fails to Allege She Conferred a Benefit on Microsoft.**

Cousineau admits she paid nothing to Microsoft.  Comp. ¶ 80.  Instead, she alleges she bought her phone from a third party, her phone had the Windows Phone 7 OS preinstalled, and as a result, the third party ***must*** have paid Microsoft in part with money from consumers (though not from her personally).  *Id.*  But "[a] party is entitled to restitution only to the extent that he or she has conferred a benefit to the other party through performance or reliance."  *Brader v. Minute Muffler Installation, Ltd.,* 81 Wn. App. 532, 537 (1996).  *See A&M Supply Co. v. Microsoft Corp.*, 2008 WL 540883, at *2 (Mich. App. Feb. 28 2008) (no unjust enrichment claim by purchasers of software licenses because "there was no direct receipt of any benefit by [Microsoft] here from the persons seeking class certification").  Based on the Complaint's allegations, Microsoft received a benefit from phone manufacturers, not Cousineau; that Cousineau bought a phone made by one of those manufacturers gives her no unjust enrichment claim against Microsoft, as a matter of law.

Cousineau offers an alternative theory that the collection of location data Microsoft obtains from ***all*** users—including data collected with users' express consent—"***will*** be used in mobile marketing campaigns."  Comp. ¶ 82 (emphasis added).  But even this does not allege ***Cousineau*** conferred any benefit that Microsoft can return through restitution.  That Cousineau happened to

---

[12] Cousineau lives in Michigan; Michigan law does not differ materially from Washington law as to unjust enrichment.  *Belle Isle Grill Corp. v. City of Detroit*, 666 N.W. 2d 271, 280 (Mich. Ct. App. 1993).

MICROSOFT'S MOTION TO DISMISS
(No. 11-cv-01438-JCC) — 22

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1   stand near a particular cell tower or WiFi site while using her phone's Camera has no

2   "compensable value in the economy at large." *JetBlue Airways*, 379 F. Supp. 2d at 327.

3      **2.**  **Microsoft Does Not Unjustly Enrich Itself When It Retains Revenue**
    **Derived from Third-Party Windows Phone Sales.**

4      Cousineau also alleges no facts suggesting it would be unjust for Microsoft to retain

5   whatever it received in payments for licensing the Windows Phone 7 OS.  "[T]he mere fact that a

6   person benefits another is not sufficient to require the other to make restitution."  *Lynch v.*

7   *Deaconess Med. Ctr.,* 113 Wn.2d 162, 165 (1989).  The law holds enrichment "unjust" and

8   restitution appropriate only if "money or property has been placed in a party's possession such that

9   in equity and good conscience the party should not retain it."  *Id*.  *See Power Tools & Supply, Inc.*

10  *v. Cooper Power Tools, Inc.*, 543 F. Supp. 2d 749, 764 (E.D. Mich. 2008) (same).

11     According to the Complaint, ¶ 80, Microsoft receives payment for the OS it licenses to

12  third parties.  In exchange for her payment to a third party, on the other hand, Cousineau received

13  a phone with the Windows Phone 7 OS that, as far as the Complaint shows, performs all functions

14  impeccably—but, until a software update (Comp. ¶7), simply required a user to disable location

15  services at the master switch to avoid transmitting location information while using the Camera.

16  Cousineau pleads ***no*** facts suggesting Microsoft's retention of payments for the OS is unjust.  Nor

17  does Cousineau allege facts suggesting it would be unjust for Microsoft to retain any record it

18  made of cell towers or WiFi sites obtained when she sent location information using the Camera—

19  which Microsoft received ***only*** because Cousineau left the location services switch "turned on."

20

21

22

23

24

25

26

27

MICROSOFT'S MOTION TO DISMISS
(No. 11-cv-01438-JCC) — 23

# IV.   CONCLUSION

Microsoft respectfully requests the Court to dismiss Cousineau's claims in their entirety.

DATED this 18th day of November, 2011.

DAVIS WRIGHT TREMAINE LLP
*Attorneys for Defendant Microsoft Corporation*

By  */s/ Stephen M. Rummage*
    Stephen M. Rummage, WSBA #11168
    Fred B. Burnside, WSBA #32491
    Randal L. Gainer, WSBA #11823
    Zana Bugaighis, WSBA #43614
    1201 Third Avenue, Suite 2200
    Seattle, Washington  98101-3045
    Telephone: (206) 622-3150, Fax: (206) 757-7700
    E-mail:  steverummage@dwt.com
    E-mail:  fredburnside@dwt.com
    E-mail:  randygainer@dwt.com
    E-mail:  zanabugaighis@dwt.com

MICROSOFT'S MOTION TO DISMISS
(No. 11-cv-01438-JCC) — 24

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

## CERTIFICATE OF SERVICE

I hereby certify that on November 18, 2011, the foregoing *Microsoft's Motion to Dismiss Amended Complaint* was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record who receive CM/ECF notification, and that the remaining parties (if any) shall be served in accordance with the Federal Rules of Civil Procedure.

DATED this 18th day of November, 2011.

DAVIS WRIGHT TREMAINE LLP
*Attorneys for Def. Microsoft Corporation*

By *s/ Stephen M. Rummage*
Stephen M. Rummage, WSBA #11168
1201 Third Avenue, Suite 2200
Seattle, Washington  98101-3045
Telephone:  (206) 757-8136
Fax:  (206) 757-7700
E-mail:  steverummage@dwt.com

MICROSOFT'S MOTION TO DISMISS
(No. 11-cv-01438-JCC) — 25