The Honorable John C. Coughenour

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| REBECCA COUSINEAU, individually on her own behalf and on behalf of all others similarly situated,<br><br>    *Plaintiff,*<br><br>    *v.*<br><br>MICROSOFT CORPORATION, a Delaware corporation,<br><br>    *Defendant.* | Case No. 2:11-cv-01438-JCC<br><br>**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**<br><br>**NOTE ON MOTION CALENDAR:**<br>August 23, 2013<br><br>**ORAL ARGUMENT REQUESTED** |

**(FILED PARTIALLY UNDER SEAL)**

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
No. 2:11-cv-01438-JCC

i

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL 206-682-5600 • FAX 206-682-2992

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................. 1

II.  FACTUAL BACKGROUND ............................................................................... 2

    A.   Microsoft Designed WM7 to Collect, Use, and Rely Upon ███████████
        ██████████. ............................................................................ 2

    B.   Microsoft Designed WM7's Camera to Access and Collect Users' Location
        Data Irrespective of User Consent. ............................................................ 5

    C.   Microsoft Violated the Stored Communications Act by Accessing Plaintiff's
        Location Information After She Denied It Permission To Do So. ............... 7

III.  ARGUMENT ......................................................................................................... 8

    A.   The Class Is Ascertainable Because It Is Defined by Reference to Entirely
        Objective Criteria. ..................................................................................... 9

    B.   The Class Satisfies Rule 23(a)'s Four Requirements. ............................... 10

        1.   The Class is sufficiently numerous because thousands of location-
            enabled Users—among the millions who used a WM7 Device—denied
            Camera access to location information. ........................................... 11

        2.   Classwide resolution will provide uniform answers to common
            questions of whether (1) the WM7 Device constitutes a "facility," (2)
            that holds location information in "electronic storage," (3) which
            Defendant accessed without permission. .......................................... 12

            a.   *Whether the WM7 device is a "facility through which an [ECS]*
               *is provided."* ...................................................................... 13

            b.   *Whether the WM7 device held location information in*
               *"electronic storage."* ........................................................ 15

            c.   *Whether Defendant accessed location information held in*
               *temporary storage without User consent.* .......................... 16

        3.   Cousineau's claims are typical because she has been injured by the
            same course of conduct as all Class members—Defendant's
            unauthorized access of location data ███████████. .............. 17

        4.   Cousineau and her counsel have no conflicts with and are committed to
            adequately representing the proposed Class. ................................... 18

    C.   The Class Satisfies the Requirements of Rule 23(b)(3). ........................... 19

        1.   Common issues regarding the design and functionality of the WM7
            device predominate over any individual questions. ........................... 20

        2.   A class action is a superior means of adjudicating this controversy. ....... 21

IV.  CONCLUSION .................................................................................................. 24

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL 206-682-5600 • FAX 206-682-2992

# TABLE OF AUTHORITIES

UNITED STATES SUPREME COURT CASES

*Amchem Prods. Inc. v. Windsor,*
    521 U.S. 591 (1997)............................................................23

*Bridge v. Phoenix Bond & Indem. Co.,*
    553 U.S. 639 (2008)............................................................27

*Eisen v. Carlisle & Jacquelin,*
    417 U.S. 156 (1974)............................................................27

*Erica P. John Fund, Inc. v. Halliburton Co.,*
    131 S. Ct. 2179 (2011)........................................................24

*Gen. Tele. Co. of Sw. v. Falcon,*
    457 U.S. 147 (1982)............................................................20

*Wal-Mart Stores, Inc. v. Dukes,*
    131 S. Ct. 2541 (2011)........................................................14

UNITED STATES COURT OF APPEALS CASES

*Adver. Specialty Nat'l Ass'n v. Fed. Trade Comm'n,*
    238 F.2d 108 (1st Cir. 1956)..................................................11

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir.1998)........................................12, 18, 19, 20

*Hanon v. Dataproducts Corp.,*
    976 F.2d 497 (9th Cir. 1992)..................................................18

*Harris v. Palm Springs Alpine Estates, Inc.,*
    329 F.2d 909 (9th Cir. 1964)..................................................11

*Klay v. Humana, Inc.,*
    382 F.3d 1241 (11th Cir. 2004)................................................23

*Mace v. Van Ru Credit Corp.,*
    109 F.3d 338 (7th Cir. 1997)..................................................20

*MDY Indus., LLC v. Blizzard Entm't, Inc.,*
    629 F.3d 928 (9th Cir. 2010)..................................................16

*Parra v. Bashas', Inc.,*
    536 F.3d 975 (9th Cir. 2008)..................................................13

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL 206-682-5600 • FAX 206-682-2992

*U.S. Steel, Paper, & Forestry, Rubber, Mfg. Energy Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. ConocoPhillips Co.,*
593 F.3d 802 (9th Cir. 2010) ............................................................................... 21

*United States v. Smith,*
155 F.3d 1051 (9th Cir. 1998) ............................................................................. 16

*Williams v. Mohawk Indus., Inc.,*
568 F.3d 1350 (11th Cir. 2009) ........................................................................... 24

*Wolin v. Jaguar Land Rover N. Am., LLC,*
617 F.3d 1168 (9th Cir. 2010) ........................................................................ 21, 22

*Zinser v. Accufix Research Inst., Inc.,*
253 F.3d 1180 (9th Cir. 2001) ....................................................................... 22, 23

UNITED STATES DISTRICT COURT CASES

*Agne v. Papa John's Int'l, Inc.,*
286 F.R.D. 559 (W.D. Wash. 2012) ............................................................... *passim*

*Bellows v. NCO Fin. Sys., Inc.,*
3:07-CV-01413-W-AJB, 2008 WL 4155361 (S.D. Cal. Sept. 5, 2008) ........................ 24

*Boundas v. Abercrombie & Fitch Stores, Inc.,*
280 F.R.D. 408 (N.D. Ill. 2012) .......................................................................... 10

*Buus v. WAMU Pension Plan,*
251 F.R.D. 578 (W.D. Wash. 2008) ...................................................................... 20

*CE Design v. Beaty Const., Inc.,*
07 C 3340, 2009 WL 192481 (N.D. Ill. Jan. 26, 2009) ............................................. 10

*Haley v. Medtronic, Inc.,*
169 F.R.D. 643 (C.D. Cal. 1996) .......................................................................... 24

*Harris v. comScore, Inc.,*
No. 11 C 5807, 2013 WL 1339262 (N.D. Ill. Apr. 2, 2013) ....................................... 15

*In re iPhone Application Litig.,*
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ................................................................. 17

*In re Live Concert Antitrust Litig.,*
247 F.R.D. 98 (C.D. Cal. 2007) ........................................................................... 25

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL 206-682-5600 • FAX 206-682-2992

*In re Phone/iPad Application Consumer Privacy Litig.,*
  MDL 2250, 2011 WL 3557452 (Aug. 8, 2011)................................................ 5

*Kanawi v. Bechtel Corp.,*
  254 F.R.D. 102 (N.D. Cal. 2008) ................................................................. 20

*Kavu, Inc. v. Omnipak Corp.,*
  246 F.R.D. 642 (W.D. Wash. 2007) ............................................................. 14

*Keegan v. Am. Honda Motor Co., Inc.,*
  284 F.R.D. 504 (C.D. Cal. 2012) ................................................................. 14

*Manno v. Healthcare Revenue Recovery Grp., LLC,*
  11-61357, 2013 WL 1283881 (S.D. Fla. Mar. 26, 2013) ............................ 13

*McCluskey v. Trs. of Red Dot Corp. Emp. Stock Ownership Plan & Trust,*
  268 F.R.D. 670 (W.D. Wash. 2010) ............................................................. 12

*Munoz v. Giumarra Vineyards Corp.,*
  1:09-CV-00703-AWI, 2012 WL 2617553 (E.D. Cal. July 5, 2012) ............ 12

*Murray v. Fin. Visions, Inc.,*
  CV-07-2578-PHX-FJM, 2008 WL 4850328 (D. Ariz. Nov. 7, 2008) ......... 21

*O'Connor v. Boeing N. Am., Inc.,*
  184 F.R.D. 311 (C.D. Cal. 1998) .................................................................. 9

*Parkinson v. Hyundai Motor Am.,*
  258 F.R.D. 580 (C.D. Cal. 2008) ................................................................ 10

*Petrakis v. Shefts,*
  10-CV-1104, 2011 WL 5930469  (C.D. Ill. Nov. 29, 2011) ....................... 18

*Pigford v. Glickman,*
  182 F.R.D. 341 (D.D.C. 1998) .................................................................... 10

*Santoro v. Aargon Agency, Inc.,*
  252 F.R.D. 675 (D. Nev. 2008) .................................................................. 24

*Schwartz v. Harp,*
  108 F.R.D. 279 (C.D. Cal.1985) ................................................................. 19

*Z.D. ex rel. J.D. v. Group Health Coop.,*
  C11-1119RSL, 2012 WL 1977962 (W.D. Wash. June 1, 2012).................. 12

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL 206-682-5600 • FAX 206-682-2992

STATUTES & FEDERAL RULES

18 U.S.C. § 2510 (2012) ................................................................................ 14, 15

18 U.S.C. §§ 2701, *et seq.* (2012) ................................................................ 1, 13, 16

Fed. R. Civ. P. 23 .............................................................................................. *passim*

OTHER AUTHORITIES

1 Joseph M. McLaughlin, McLaughlin on Class Actions (9th ed.) ....................... 23

Charles Alan Wright et al. Federal Practice and Procedure (2d ed.) ................... 20

Herbert B. Newberg, Newberg on Class Actions
    (William B. Rubenstein & Alba Conte, eds., 5th ed.) ........................... 9, 10, 11, 23

Kathryn Zickuhr & Aaron Smith, *28% of American Adults use mobile and social location-based*
    *services*, Pew Internet & American Life Project 4 (Sept. 6, 2011), *available*
    *at* http://www.pewinternet.org/~/media//Files/Reports/2011/PIP_Location-based-
    services.pdf ................................................................................................... 2

Lauren Drell, *How Does GPS Know Where You Are?* Mashable (Nov. 16, 2012), *available at*
    http://mashable.com/2012/11/16/gps/ ...................................................... 4

Letter from Rep. Fred Upton, Chairman of the Committee on Energy and Commerce, et al. to
    Steve Ballmer, Microsoft Corp. Chief Executive Officer (Apr. 25, 2011) ...................... 5

Microsoft, *Memory and Storage*,
    http://windows.microsoft.com/en-us/windows7/memory-and-storage .......................... 16

Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*,
    84 N.Y.U. L. Rev. 97 (2009) ............................................................................ 12

S. Rep. No. 99-541 (1986) ............................................................................... 16

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL 206-682-5600 • FAX 206-682-2992

## I.   INTRODUCTION

From 2010 to 2011, Defendant Microsoft Corp. ("Microsoft") produced and sold the Windows Mobile 7 smartphone operating system ("WM7"), which, like other smartphone operating systems, offered location functionality, allowing consumers to use their locations in connection with certain applications and software. Microsoft designed one application, the native (i.e., pre-installed) Camera Application ("Camera"), such that the first time it opened, it would ask users whether or not they wanted to "share" their location with Camera and Microsoft (i.e., grant Microsoft access to their location information). ████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████ The problem, however—and where Microsoft violated its users' privacy rights—is that Microsoft designed WM7 in such a way that regardless of a User's choice to grant Camera (and with it Microsoft) access to their location data, Camera would access it anyway each time a User launched the application.

One such User, Plaintiff Rebecca Cousineau, left her WM7 phone's Master Location Switch on and chose to use location functionality for some applications (such as mapping and social networking applications) while denying permission to others, including Camera. Nonetheless, each time Cousineau opened Camera, Microsoft would access her ████████ location data, even though she had specifically denied it permission to do so.

Cousineau is not alone, as every other WM7 user in the United States who left the Location Master Switch "on" but denied Camera access to his or her location data faced the same circumstances. As such, Cousineau now moves to certify a class of those individuals defined as:

> All WM7 Users who denied the Camera Application access to their location information, and then used the Camera Application with the Master Location Switch turned "on."

Cousineau's claims under the Stored Communications Act, 18 U.S.C. § 2701 ("SCA"), are

---

[1]   Throughout this brief, a "User" denotes a consumer that used a smartphone running the WM7 operating system.

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION   1
NO. 2:11-cv-01438-JCC

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL 206-682-5600 • FAX 206-682-2992

1  particularly well-suited to class-wide resolution, as WM7's uniform design and operation ensures

2  that for each individual who meets the simple and objective class definition, the right to relief

3  under the SCA will be identical. If Cousineau's theory—that WM7's and Microsoft's access to

4  her ▓▓▓▓▓▓▓▓ location data using Camera constitutes unlawful access to a stored

5  communication in violation of the SCA—holds, each and every Class member will have a right

6  to the same relief under the Act. If Cousineau's theory fails, none of the Class members will be

7  able to recover.

8      All of the proposed Class members have identical claims that will ultimately rise and fall

9  with Cousineau's ability to prove her own case. Class-wide treatment is therefore appropriate to

10  resolve this controversy and Plaintiff's claim is ripe for certification. Accordingly, Plaintiff

11  Cousineau respectfully requests that the Court grant this motion for certification, appoint her as

12  representative of the Class and her attorneys as Class Counsel, and award such other further

13  relief as it deems necessary and just.

14  **II.    FACTUAL BACKGROUND**

15      **A.    Microsoft Designed WM7 to Collect, Use, and Rely Upon** ▓▓▓▓▓▓▓

16  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

17      When Microsoft launched WM7 in 2010, it was commonplace for smartphones to have

18  the capacity to determine users' physical geo-locations.[2] Such location-awareness was (and is) a

19  major selling point for smartphones—with it, consumers can find directions, "geo-tag" photos

20  with location data, use apps to find nearby restaurants and movies, and do much more.[3] To

21  compete with the mobile operating systems offered by Apple and Google, Microsoft designed

22  WM7 with location functionality squarely in mind. (*See, e.g.*, Location Service Functional

23

24

---

[2]      By 2011, at least 55% of all American adult smartphone users, and 28% of American adults in total, used

25  "mobile or social location-based services of some kind." Kathryn Zickuhr & Aaron Smith, *28% of American Adults use mobile and social location-based services*, Pew Internet & American Life Project 4 (Sept. 6, 2011), *available at*

26  http://www.pewinternet.org/~/media//Files/Reports/2011/PIP_Location-based-services.pdf.

[3]      *See id.* at 2.

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206-682-5600 • FAX 206-682-2992

1    Specification, Ex. A at 507 – 08.)[4]

2           For WM7, location functionality relied predominantly on

3    ████████████████████████████████████████. (See id.; see also Wi-

4    Fi/Cell Location Resolution and Caching and Tiling and Design Document, Ex. B at 667;

5    Location W-Fi/Cell Functional Specification, Ex. G at 730; Expert Report of Craig Snead

6    ("Snead Rpt."), Ex. D at 4 –5.)

7

8                                                    (Ex. B at 667; Snead

9    Rpt. at 5.)

10                                  [5] (See Dep. Tr. of Sandeep Deo ("Deo Tr."), Ex.

11   E at 81:7 – 83:5; Snead Rpt.at 5 – 6.)

12

13

14

15

16           (See Dep. Tr. of Cristina Del Amo Casado ("Del Amo Casado Tr."), Ex. F at

17   181:22 – 183:5; Ex. G at 732.)

18

19           (See Del Amo Casado Tr. at 181:22 – 183:12; Ex. A at 523 – 524; Ex. G at 732.)

20           From the operating system provider's perspective,

21

22

---

23   [4]    All references to Exhibit Numbers (here, "Ex. A"), refer to exhibits described in and attached to the
     Declaration of Rafey S. Balabanian ("Balabanian Decl."), submitted concurrently herewith. References to specific
24   page numbers from Microsoft's document production refer to the unique Bates Number designations as marked by
     Microsoft (e.g., here, pages "507 – 08" reference the pages marked MS-COUS_00000507 – 508).

25   [5]    This concept is, perhaps, easiest to understand through a rough example:

26

27

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL 206-682-5600 • FAX 206-682-2992



1  [6] (Ex. A at 559; Location

2  Crowd Sourcing Functional Specification, Ex. C at 692 – 693.)

3  (Ex. A at 559 (recognizing that

4

5

6  ); Deo Tr. at 100:17 – 101:14.)

7

8

9  [7]

10  (Ex. C at 693; Snead Rpt. at 7 – 8.)

11

12  (Ex. C at 694;

13  Snead Rpt. at 7 – 8.)

14

15  (Ex. C at 692; *see also* Del Amo Casado Tr. at 47:3 –

16  50:14; Deo Dep. 85:19 – 87:25; Snead Rpt. at 8.)

17

18

19  (Deo Tr. at 99:22 – 100:16),                                    (Ex. A at

20  532 – 533; Del Amo Casado Tr. at 182:4 – 183:25.)

21

22

23  [6]    In contrast, while more resource-intensive, GPS positioning does not require ▮▮▮▮▮, as all

24  requests for positioning rely on direct satellite-to-phone communications. *See generally* Lauren Drell, *How Does GPS Know Where You Are?* Mashable (Nov. 16, 2012), *available at* http://mashable.com/2012/11/16/gps/; (*see also* Del Amo Casado Tr. 56:15 – 58:10.)

25  [7]    As a first, short-term response, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

26  ▮▮▮▮▮▮▮▮▮▮▮▮. (Del Amo Casado Tr.

27  60:21 – 61:24; Deo Tr. 102:1 – 103:3.)

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL 206-682-5600 • FAX 206-682-2992

1

2

3 . (Del Amo Casado

4 Tr. at 186:9 -- 188:10.)

5   For its part, even Microsoft recognized that

6   (Ex. C at 692.)

7

8

9 [8] (*See id.* at 692 – 694; Snead Rpt. at 8.)

10   **B.    Microsoft Designed WM7's Camera to Access and Collect Users' Location**
        **Data Irrespective of User Consent.**

11

12   WM7's pre-installed Camera, by design, was

13

14   [9] (Ex. A at 511 – 12; Snead Rpt. at 11 – 12.)

15

16

17

18   (Location UX Functional

19 Specification, Ex. H at 1301 – 1302; Dep. Tr. of Adam Lydick ("Lydick Tr."), Ex. I at. 91:15 –

20

21 [8]    For a period of time, Microsoft was . (Microsoft Email Thread, Ex. J at 632 – 636; Deo Tr. at 55:16 – 58:15; Del Amo

22 Casado Tr. at 165:17 – 20.) In May of 2011, however, Microsoft . (Deo Tr. at 49:11 – 50:9; Del Amo Casado Tr.

23 at 177:2 – 9.) That decision came after Microsoft received a letter from Congress inquiring into its location privacy
practices and referencing recent press coverage of location privacy issues afflicting Microsoft's competitors. (Letter

24 from Rep. Fred Upton, Chairman of the Committee on Energy and Commerce, et al. to Steve Ballmer, Microsoft
Corp. Chief Executive Officer (Apr. 25, 2011), Ex. K.) At the same time, numerous class action complaints were

25 already pending against Apple, which had received a similar letter of inquiry from Congress. These cases were later
consolidated into *In re Phone/iPad Application Consumer Privacy Litig.*, MDL 2250, 2011 WL 3557452 (Aug. 8,

26 2011), which is still pending.

27 [9]    The detailed technical interaction between Camera and is described in the Snead Rpt.

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL 206-682-5600 • FAX 206-682-2992

1   93:4; Snead Rpt. at 7 – 8, 12 – 14.) The Master Location Switch, in turn, could only be toggled

2   off through the WM7 setting menus, and remained "on" by default. (Ex. H at 1302; Del Amo

3   Casado Tr. at 152:22 – 153:8.)

4          As for Camera, ████████████████████████████████████████████████████████

5   ██████████████████████████████████████████████████. (Del Amo Casado Tr. at

6   100:13 – 17; Lydick Tr. at 48:5 – 48:18, 76:23 – 77:2, 91:15 – 94:11; Snead Rpt. 11 – 12.) That

7   resolution followed a uniform process, which was (in all ways relevant to this litigation)

8   unaffected by a User's decision to *not* allow Camera to access his or her location information.

9   (Lydick Tr. at 48:5 – 48:18, 76:23 – 77:2, 91:15 – 94:11.) As such, and beginning with the very

10  first time Camera was launched, Camera would ████████████████████████████████

11  ████████████████████████ (Lydick Tr. at 45:15 – 46:9; Snead Rpt. at 12 – 14.) Upon receipt

12  of that request, ████████████████████████████████████████████████████████████

13  █████████████████████. (Del Amo Casado Tr. at 100:3 – 17; Snead Rpt. at 13).

14  ████████████████████████████████████████████████████████████████████████████

15  ████████████████████████████████████████████████████████████████████████████

16  ████████████████████████████████ (Ex. B at 677; Del Amo Casado Tr. at 105:4 –

17  106:12; Snead Rpt. at 13), ████████████████████████████████████████████████

18  ████████ (Ex. B at 677; Del Amo Casado Tr. at 101:18 – 22; Snead Rpt. at 13 – 14), or ████

19  ████████████████████████████████. (Ex. B at 677; *see* Del

20  Amo Casado Tr. at 47:3 – 50:14, 52:16 – 53:24; Snead Rpt. at 14.)

21  ████████████████████████████████████████████████████████████. (Del

22  Amo Casado Tr. at 113:4 – 14; Lydick Tr. at 93:9 – 13; Snead Rpt. at 14.)

23          This same process occurred when the Camera was launched for the very first time, at

24  which time a consent prompt was displayed to the user, asking:

25

26

27

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL 206-682-5600 • FAX 206-682-2992

**Allow the camera to use your location?**

Sharing this information will add a location tag to your pictures so you can see where your pictures were taken. This information also helps us provide you with improved location services. We won't use the information to identify or contact you.

(3d Am. Compl. ¶ 4 (Dkt. 64); Microsoft Answer to 3d Am. Compl. ¶ 4 (Dkt. 65).)[10] In response, a User was given two choices: "allow" or "cancel." (*Id.*) If a User selected "cancel," then the Camera was designed to ███████████████████████████████ (Lydick Tr. at 87:11 – 23.) However, the User's selection had no bearing on ████████████████████████████████████████████████████████████████████████████. (Lydick Tr. at 48:5 – 18, 76:23 – 77:2, 91:15 – 94:11.) In summary, *every* time Camera was launched, it would *always* ██████████████████████, (*id.,*) ████████████████████████████████████,[11] (Del Amo Casado Tr. at 100:13 – 100:17.)

**C.     Microsoft Violated the Stored Communications Act by Accessing Plaintiff's Location Information After She Denied It Permission To Do So.**

Plaintiff Rebecca Cousineau obtained a new Samsung smartphone around June 2011, which came preinstalled with the WM7 operating system. When she started the phone for the first time, its Master Location Switch defaulted to the "on" position. (Ex. H at 1302.) While running WM7, Cousineau never changed the Master Location Switch setting, nor did she change any other setting through WM7's "settings" menu. (Dep. Tr. of Rebecca Cousineau ("Cousineau Dep."), Ex. M at 41:24 – 43:18, 44:13 –15, 45:17 – 47:15.) When Cousineau opened Camera for the first time, she was presented with the standard consent prompt discussed above. (*Id.* at 74:17 – 23.) Not wishing to have her location shared with Microsoft or otherwise accessed while using Camera, Cousineau selected "cancel." (*Id.*) As she continued to use WM7, Cousineau also used

---

[10]     While this text doesn't explain with whom a user is choosing to "share" location information, a pre-release version of the same text explained that ███████████████████ (Camera Experience Functional Specification, Ex. N at 204 (emphasis added).) That explanation—i.e., ██████████████████—describes the same functionality addressed by the final consent prompt, and makes clear that the user is being asked to share location information with Microsoft. (Dep. Tr. of Shamik Bandyopadhyay ("Bandyopadhyay Tr."), Ex. O at 49:9 – 50:23.)

[11]     The one exception being where a user set his or her "Master Location Switch" to "off." (Ex. H at 1302.)

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL 206-682-5600 • FAX 206-682-2992

1    Camera, often as part of her job and in conjunction with the inspection of rental properties or

2    evictions. (*See id.* at 34:24 – 36:7, 62:21 – 63:5, 71:15 – 71:20.) Despite her decision to select

3    "cancel," Camera continued █████████████████████████████████████████████████████

4    █████████████████████████████████████████████████████████████████████████

5           █████████ *See supra* Section II.B.

6           Through her Third Amended Complaint, Cousineau alleges a single claim under the SCA.

7    (Dkt. 64 at ¶¶ 41 – 48.) The putative Class—all WM7 Users in the United States who denied the

8    Camera Application access to their location information, and then used the Camera Application

9    with the Master Location Switch turned "on"—faces common factual and legal questions which

10   certification will answer for everyone. The key factual inquiries look to Microsoft's practice of

11   accessing, or attempting to access, ████████████ location information from Users' WM7

12   Devices, when Users expressly denied Microsoft access to that same information. Pursuant to

13   that common factual core, the common legal question asks whether such access (or attempted

14   access) constitutes unauthorized or otherwise unlawful access to stored electronic

15   communications in violation of the SCA.

16   **III.   ARGUMENT**

17          This Court should certify the proposed Class because it is ascertainable and satisfies the

18   requirements of Federal Rule of Civil Procedure 23. Certification is appropriate when the

19   proposed class meets Rule 23(a)'s four requirements—numerosity, commonality, typicality, and

20   adequacy of representation—and satisfies one of Rule 23(b)'s subparts. *See* Fed. R. Civ. P. 23(a),

21   (b). Plaintiff seeks certification under Rule 23(b)(3), which requires that (1) common questions

22   of law or fact predominate, and (2) classwide adjudication provides a superior method of

23   resolving the controversy. Fed. R. Civ. P. 23(b)(3).

24          As fully explained herein, the proposed Class satisfies Rule 23's requirements.

25   Consequently, the ascertainable Class proposed is well suited for certification. To protect the

26   rights of those who have no means of individually adjudicating their claims, this Court should

27   grant Plaintiff's motion for Class certification.

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL 206-682-5600 • FAX 206-682-2992

### A. The Class Is Ascertainable Because It Is Defined by Reference to Entirely Objective Criteria.

A party seeking class certification must demonstrate that "the class definition [is] 'definite enough so that it is administratively feasible for the court to ascertain whether an individual is a member.'" *Agne v. Papa John's Int'l, Inc.*, 286 F.R.D. 559, 566 (W.D. Wash. 2012) (quoting *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998)). Administrative feasibility does not turn on whether a ready list of putative class members exists, *O'Connor*, 184 F.R.D. at 319 (citation omitted), but rather asks whether "[t]he class definition provides sufficiently precise and objective criteria to determine class membership." *Agne*, 286 F.R.D. at 566; *see also* Herbert B. Newberg, Newberg on Class Actions § 3:1 (William B. Rubenstein & Alba Conte, eds., 5th ed.).

Stated otherwise, courts regularly find proposed classes are ascertainable where "a prospective plaintiff could easily identify himself or herself as having a right to recovery based on the description in the class definition."[12] Newberg, *supra*, § 3:3; *see, e.g., Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 593 – 94 (C.D. Cal. 2008) (holding class ascertainable where plaintiffs could determine whether they owned the particular make and model of vehicle at issue in the lawsuit); *Pigford v. Glickman*, 182 F.R.D. 341, 346 (D.D.C. 1998) ("The Court concludes that the parameters of the proposed class as defined by plaintiffs in this case are sufficiently clear to make the proposed class administratively manageable; by looking at the class definition, counsel and putative class members can easily ascertain whether they are members of the class.").

Here, the proposed Class definition is both objective and precise because liability will track Microsoft's common conduct—the design and function of WM7's Camera and

---

[12] And, to these points, in cases where a list of class members is unavailable at the time of certification, many courts have permitted putative class members to self-identify through sworn affidavits submitted in conjunction with claim forms. *See, e.g., CE Design v. Beaty Const., Inc.*, 07 C 3340, 2009 WL 192481, at *4 (N.D. Ill. Jan. 26, 2009) (requiring "potential plaintiffs that come forward . . . to represent to the Court—via affidavit and under the penalty of perjury—that they received the fax [from the defendant] on the dates in issue"; *see also Boundas v. Abercrombie & Fitch Stores, Inc.*, 280 F.R.D. 408, 417 (N.D. Ill. 2012) (permitting class members who threw away voided gift cards at issue to submit signed affidavits attesting to prior ownership).

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION       9
NO. 2:11-cv-01438-JCC

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL 206-682-5600 • FAX 206-682-2992

1   ██████. To that end, two objective criteria govern whether a given User is included in the

2   Class: (1) that User must have denied Camera permission to "use [his/her] location" and

3   thereafter (2) used Camera with the WM7 Master Location Switch in the default "on" position.

4   The precision of these questions—and, therefore, the Class definition itself—is buttressed by the

5   fact that Class membership does not vary with other extrinsic variables. It makes no difference

6   whether, for example, a User was (or was not) connected to Wi-Fi or cell networks when Camera

7   was opened; a User took (or did not take) a photograph using Camera; or a User used Camera

8   when recent location data was (or was not) ████████████████████████████████████

9   ██████████████████

10       Rather, the merit of every Class member's claim depends exclusively on the design and

11   functionality of WM7 itself. If a User launched Camera—at any time—the application

12   necessarily ████████████████████████████████████████████████. (Lydick

13   Tr. at 48:5 – 48:18, 76:23 – 77:2, 91:15 – 94:11; Snead Rpt. at 11 – 12.) So long as the Master

14   Location Switch was set to "on"—which it was by default (Ex. H at 1302)—████████████

15   ████████████████████████████████████████████████████████████████

16   ████████████████████████████████████. (Del Amo Casado Tr.

17   at 100:13 – 17; *see also* Lydick Tr. at 91:15 – 94:11; Snead Rpt. at 11 – 14.) Looking forward,

18   because both inquiries rely entirely on information within each prospective Class members'

19   knowledge (i.e., neither requires insight into the inner workings of WM7, or the ephemeral

20   circumstances attendant to those instances where Camera was accessed), all such individuals can

21   determine whether they have a right to recovery if Plaintiff prevails on her SCA claim. *See*

22   Newberg, *supra*, § 3:3.

23       In sum, these objective criteria—stemming from the design and function of WM7—

24   ensure that it is administratively feasible for the Court and WM7 Users alike to ascertain whether

25   an individual is a member of the proposed Class. Thus, the proposed definition is ascertainable.

26   **B.    The Class Satisfies Rule 23(a)'s Four Requirements.**

27       The Class meets Rule 23(a)'s four requirements because the proposed Class (1) is

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION          10
NO. 2:11-cv-01438-JCC

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL 206-682-5600 • FAX 206-682-2992

1  sufficiently numerous, (2) faces common questions of law and fact, (3) features a named Plaintiff

2  whose claims are typical of the Class, and (4) is adequately represented by the named Plaintiff

3  and counsel. Fed. R. Civ. P. 23(a); *Agne*, 286 F.R.D. at 565 – 70. As shown below, the Class

4  consists of at least 187,000 identically situated persons whose common experiences relating to

5  WM7 can be uniformly and collectively resolved through a single SCA claim. And because those

6  common issues directly track Cousineau's own facts and claims, Cousineau's certification

7  motion should be granted.

8          1.    <u>The Class is sufficiently numerous because thousands of location-enabled</u>
<u>Users—among the millions who used a WM7 Device—denied Camera</u>

9                    <u>access to location information.</u>

10       For a Class to be certified, it must satisfy Rule 23's requirement that "the class is so

11  numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1).

12  "'[I]mpracticability' does not mean 'impossibility,' but only the difficulty or inconvenience of

13  joining all members of the class." *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909,

14  913 – 14 (9th Cir. 1964) (quoting *Adver. Specialty Nat'l Ass'n v. Fed. Trade Comm'n*, 238 F.2d

15  108, 119 (1st Cir. 1956)). While no "magic number" is required for a class to be numerous,

16  *McCluskey v. Trs. of Red Dot Corp. Emp. Stock Ownership Plan & Trust*, 268 F.R.D. 670, 673

17  (W.D. Wash. 2010), "[i]n general, courts find the requirement satisfied when a class includes at

18  least 40 members." *Z.D. ex rel. J.D. v. Group Health Coop.*, C11-1119RSL, 2012 WL 1977962,

19  at *3 (W.D. Wash. June 1, 2012); *see also* Newberg, *supra*, § 3:12. Expert testimony is

20  frequently used to establish numerosity under Rule 23. *See, e.g.*, *Munoz v. Giumarra Vineyards*

21  *Corp.*, 1:09-CV-00703-AWI, 2012 WL 2617553, at *22, 29 (E.D. Cal. July 5, 2012); *Manno v.*

22  *Healthcare Revenue Recovery Grp., LLC*, 11-61357, 2013 WL 1283881, at *684 n.3 (S.D. Fla.

23  Mar. 26, 2013).

24       Here, while the precise number of Class members is presently unknown, the existing

25  evidence suggests that there are at least 187,000 putative Class members. (Good Rpt. at 2 – 4.)

26  Cousineau retained one of the nation's foremost experts relating to consumer privacy choices and

27  preferences, (*see id.* at 1 – 2), whose research shows that 96.5% of all smartphone users use their

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL 206-682-5600 • FAX 206-682-2992

1    phone's camera application, 18.5% of whom leave location services activated for some apps but

2    not for their camera. (*Id.* at 4 – 6.) Thus, 17.9% of smartphone users—like the putative Class

3    members—use their phone's camera application, but deny it !"#$$%&(#)%location while

4    leaving their phone's location functionality enabled. (*Id.*) Accordingly, based on publicly

5    available data showing that at least 1,080,000 people used WM7 devices during the Class period,

6    roughly 193,000 (and at least 187,000) of them fit the Class definition. (*Id.* at 4.) As such, and

7    with at least 187,000 potential Plaintiffs, joinder is impracticable and the numerosity requirement

8    is met.

9           2.      Classwide resolution will provide uniform answers to common questions
10                  of whether (1) the WM7 device constitutes a "facility," (2) that holds
                     location information in "electronic storage," (3) which Defendant accessed
11                  without permission.

12        The proposed Class meets the commonality requirement because Plaintiff seeks answers

13    to questions of law and fact that will commonly determine Defendant's liability to her and every

14    other Class member. Because these common questions turn on design and functionality inherent

15    to every WM7 device, those answers will be the same for all Class members, ensuring that all

16    Class members will have a uniform right to recovery.

17        Rule 23 requires that all putative Classes show that "there are questions of law or fact

18    common to the class." Fed. R. Civ. P. 23(a)(2); *Agne*, 286 F.R.D. at 567. Further, a class action

19    must also be capable of generating "common *answers* apt to drive the resolution of the

20    litigation." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (quoting Richard A.

21    Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)).

22    Stated otherwise, commonality arises when plaintiffs suffer the same injury. *Wal-Mart*, 131 S. Ct.

23    at 2551. The commonality requirement is "construed permissively." *Keegan v. Am. Honda Motor*

24    *Co., Inc.*, 284 F.R.D. 504, 522 (C.D. Cal. 2012) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d

25    1011, 1019 (9th Cir.1998)) *leave to appeal denied*, No. 12-80138, 2012 WL 7152289 (9th Cir.

26    Nov. 9, 2012); *see also Kavu, Inc. v. Omnipak Corp.*, 246 F.R.D. 642, 647 (W.D. Wash. 2007)

27    (citing *Hanlon*, 150 F.3d at 1011) ("Courts have described the showing required to meet the

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION      12        **TOUSLEY BRAIN STEPHENS PLLC**
NO. 2:11-cv-01438-JCC                                        1700 Seventh Avenue, Suite 2200
                                                          Seattle, Washington 98101
                                        TEL 206-682-5600 • FAX 206-682-2992

1    commonality requirement as 'minimal' and 'not high.'"). As such, a degree of factual variation

2    does not defeat commonality, which exists as long as the circumstances of each particular class

3    member "retain a common core of factual or legal issues." *Parra v. Bashas', Inc.*, 536 F.3d 975,

4    978 – 79 (9th Cir. 2008).

5        Here, Plaintiff's SCA claim stems from a factual and legal core common to each and

6    every putative Class member by virtue of the WM7's uniform design and functionality. To

7    establish Microsoft's liability under the SCA, all Class members seek answers to the same three

8    questions: (1) whether a WM7 Device is a facility through which an electronic communication

9    service ("ECS") is provided, (2) whether location information stored on the device is a

10    communication housed in electronic storage, and (3) whether Microsoft accessed this

11    information without User consent. *See* 18 U.S.C. § 2701(a). Indeed, in seeking an interlocutory

12    appeal, Microsoft recognized the first two issues as "controlling questions of law." (Microsoft's

13    Mot. for Cert. Pursuant to 28 U.S.C. § 1292(b) and to Stay (Dkt. 39) at 1:10 – 1:12.) Plaintiff

14    now seeks classwide resolution of these same legal questions, along with the factual question of

15    whether Microsoft had authorization to access her and other Class members' location data.

16    Ultimately, because the answers sought all depend on WM7's inherent design and functionality,

17    common answers are guaranteed.

18               *a.*      *Whether the WM7 device is a "facility through which an [ECS] is*

19                     *provided."*

20        To pursue her claim under the SCA, Plaintiff first asks whether the WM7 device

21    constitutes a "facility through which an [ECS] is provided." Whether a particular device, such as

22    a smartphone, constitutes a facility is a common issue ripe for classwide resolution. *See, e.g.*,

23    *Harris v. comScore, Inc.*, No. 11 C 5807, 2013 WL 1339262, at *9 n.6 (N.D. Ill. Apr. 2, 2013)

24    ("The issue of whether personal computers are 'facilities' under the SCA, which the court need

25    not resolve at this time, is . . . common to the entire class.") And, here, this Court already

26    expressed its "satisf[action] that a mobile device can be a facility for purposes of the SCA."

27    (Order Granting in Part and Denying in Part Def.'s Mot. to Dismiss (Dkt. 38) at 10 – 11; *see also*

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION      13      **TOUSLEY BRAIN STEPHENS PLLC**
NO. 2:11-cv-01438-JCC                        1700 Seventh Avenue, Suite 2200
                                               Seattle, Washington 98101
                             TEL. 206-682-5600 • FAX 206-682-2992

1   Order Denying Def.'s Mot. for § 1292(b) Cert. and to Stay (Dkt. 47) at 3 (additionally noting that

2   whether a *given* mobile phone is a "facility" under the SCA may turn on factual matters relevant

3   to the manner in which a device "store[s] location data").) In any event, the common design of

4   WM7 will answer this question uniformly for each and every Class member.

5        As for the latter half of the question—whether the WM7 device is a facility *through*

6   *which ECS are provided*—the identical design of WM7 and Microsoft's overall suite of location

7   services will, again, provide a common answer for the Class. The SCA defines an ECS as a

8   service that enables users "to send or receive wire or electronic communications." 18 U.S.C.

9   § 2510(15) (2012). While this Court has already found that Microsoft "is an ECS provider for the

10  purposes of the SCA"—inasmuch as it provides certain location services through its servers,

11  including through Orion—discovery has also shown that Class members' WM7 devices are,

12  themselves, "facilit[ies] through which ECS [are] provided." (Dkt. 38 at 11 – 12 (finding that, at

13  the pleading stage, "it is plausible that a device on which [WM7] operates is a facility through

14  which ECS is provided.") As described above, Class members' WM7 Devices store

15  location information ▮▮▮▮▮ and,

16  ▮▮▮▮▮▮▮▮▮▮▮. (Del Amo Casado Tr. at 100:13 –

17  101:13; Snead Rpt. at 12 – 13). That initial access does not involve ▮▮▮▮

18  ▮▮▮▮▮▮▮▮▮▮▮▮

19  ▮▮▮▮▮▮▮▮▮▮▮▮

20  ▮▮▮▮▮▮. (Ex. B at 677; Del Amo Casado Tr. at 84:17 – 25,

21  100:3-101:13; 105:20 – 106:2.) ▮▮▮▮.

22  (Ex. B at 677; Del Amo Casado Tr. at 100:3 – 101:13; Snead Rpt. at 13.)

23  ▮▮▮▮▮▮▮▮▮▮▮▮

24  ▮▮ (Ex. B at 677; Del Amo Casado Tr. at 105:4 – 106:12; Snead Rpt. at 13)

25  ▮▮▮▮▮ (Ex. B at 677; Del Amo Casado Tr. at 101:18

26  – 22; Snead Rpt. at 13 – 14), ▮▮▮. (Ex. B at 677; Del Amo Casado Tr. at 47:3

27  – 50:14; Snead Rpt. at 14.) For the purposes of this motion, these facts more than confirm this

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL 206-682-5600 • FAX 206-682-2992

1   Court's observation that Microsoft might provide "geolocation services . . . both . . . in its

2   installation of [WM7] on a phone *and* [in its] support[] [of those services] by its servers." (Dkt.

3   38 at 12:2 – 12:4.) Furnishing these services—remotely via server *and* locally through the

4   Device—constitutes the remote and local provision of an ECS.

5        In any event, and regardless of the outcome as to the merits of Cousineau's SCA claim,

6   the common design and function of the WM7 operating system guarantees that the answer to the

7   "facility" question will be common to each and every Class member.

8           *b.*    *Whether the WM7 device held location information in "electronic*

9                   *storage."*

10        The second common question ripe for class-wide resolution is whether Plaintiff's

11   location data, ████████████████████████████, was a communication held in

12   "electronic storage." The SCA defines "electronic storage" as "(a) any temporary, intermediate

13   storage of a wire or electronic communication incidental to the electronic transmission thereof;

14   and (b) any storage of such communication by an electronic communication service for purposes

15   of backup protection of such communication." 18 U.S.C § 2510(17). Again, the common design

16   of WM7 guarantees a common answer to this question—and, once again, discovery strongly

17   suggests that it will be answered in the affirmative.

18        As explained above, ████████████████████████████████

19   ████████████████████████████████████████████. (Del Amo

20   Casado Tr. at 100:13 – 101:9; Snead Rpt. at 13.) That ████ information consists of

21   a User's ████████ location data—i.e., ████████████████████████

22   ████████████████████ (Ex. B at 673 – 675; Del Amo Casado Tr. at 100:3 –

23   17; Snead Rpt. at 5 – 7.) As a User moves about in the world, ████████████

24   ████████████████████ (Del Amo Casado Tr. at 46:6 – 47:2.)

25   █████████████████████████████████████████████████████

26   ████████████████ (Ex. B at 668; Del Amo Casado Tr. at 40:2 – 9; Snead Rpt.

27   at 5 – 7.)

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL 206-682-5600 • FAX 206-682-2992

1    Even Microsoft acknowledges that RAM, by nature, is temporary. Microsoft, *Memory*

2    *and Storage*, http://windows.microsoft.com/en-us/windows7/memory-and-storage (last visited

3    July 26, 2013) (defining RAM as "temporary storage space"); *see also MDY Indus., LLC v.*

4    *Blizzard Entm't, Inc.*, 629 F.3d 928, 938 (9th Cir. 2010), *amended on denial of reh'g* 09-15932,

5    2011 WL 538748 (9th Cir. Feb. 17, 2011); *see also In re iPhone Application Litig.*, 844 F. Supp.

6    2d 1040, 1059 (N.D. Cal. 2012) (holding that location information stored on device's hard drive

7    for up to one year was not "temporary"). Congress intended the SCA's definition of "electronic

8    storage" to encompass RAM. S. Rep. No. 99-541, at 16 (1986), *reprinted in* 1986 U.S.C.C.A.N.

9    3555, 3570 ("The term 'electronic storage' . . . covers storage within the random access memory

10   of a computer.").

11   Regardless of the Court's ultimate determination on the merits, each putative Class

12   member's claims would involve the same type of data (personal location information) stored in

13   an identical manner (██████████████). (*See Del Amo Casado Tr.* at 40:2 – 9, 100:3 – 17;

14   *Snead Rpt.* at 5 – 7.) Accordingly, whether the WM7 device held location information in

15   temporary storage is a question common to all Users, and can be resolved on a class-wide basis.

16          c.      *Whether Defendant accessed location information held in*
               *temporary storage without User consent.*
17

18   Finally, this litigation will commonly determine whether Microsoft accessed Users'

19   location information without their consent. A party violates the SCA when it accesses "a facility

20   through which an [ECS] is provided" without authorization. 18 U.S.C. § 2701. Unauthorized

21   "access" under the SCA does not require the actual examination of the contents of a particular

22   electronic communication—rather, it "merely involves *being in position* to acquire the contents

23   of a communication." *United States v. Smith*, 155 F.3d 1051, 1058 (9th Cir. 1998) (emphasis

24   added); *see also Petrakis v. Shefts*, 10-CV-1104, 2011 WL 5930469, at *5 (C.D. Ill. Nov. 29,

25   2011) (noting that defendant need not read contents of emails in order to "access" them).

26   As with the other questions key to this litigation, the question of "authorization" and

27   "access" turns entirely on the uniform design and functionality of every WM7 device. Regarding

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL 206-682-5600 • FAX 206-682-2992

1   authorization, Microsoft uniformly *required* that Users either grant or refuse consent to "[a]llow

2   the camera to use your location"—by requiring input to the consent prompt that was launched

3   when Camera was opened for the first time. (Lydick Tr. at 76:10 – 77:14, 107:21 – 108:7;

4   Bandyopadhyay Tr. at 57:24 – 58:23; Snead Rpt. at 9 – 11.) Regarding access, and irrespective

5   of a User's choice made through the consent prompt,[13] Microsoft designed WM7

6

7   ████████████. (Del Amo Casado Tr. at 100:13 –

8   101:9; Lydick Tr. at 29:5 – 30:13, 89:14 – 90:7, 92:13 – 94:11; Snead Rpt. at 11 – 14.) And as

9   discussed above, that resolution could also involve a number of different functions *after*

10

11   (Ex. B at 677; Del Amo Casado Tr. at 101:18 – 22; Snead Rpt. at 13 – 14),

12   , (Ex. B at 677; Del Amo Casado Tr. at 105:4 – 106:12; Snead Rpt. at 13),

13   . (Ex. B at 677; Del Amo Casado Tr. at 47:3 – 50:14; Snead Rpt. at 14.) In any event, for

14   Users who did not consent (i.e., for Class members), Microsoft's act of

15   ████████████ constitutes unauthorized access, even if the ████ location

16   information was only a null value.

17      At this juncture, and regardless of the ultimate merits outcome, it only matters that each

18   of the above common questions will necessarily generate common answers for each and every

19   Class member. That commonality flows from the common design of WM7 and, for each

20   individual within the Class definition, exists regardless of any individualized circumstances.

21      3.   <u>Cousineau's claims are typical because she has been injured by the same course of conduct as all Class members—Defendant's unauthorized access of location data</u> ████████.

23      Cousineau's claims are typical of the Class. Rule 23(a)(3) provides that a representative

24   party's claims or defenses must be "typical of the claims or defenses of the class." Fed. R. Civ. P.

25   23(a)(3); *Agne*, 286 F.R.D. at 568. Under the Rule's permissive standards, the representative

---

26   [13]   As explained above, Microsoft only honored Users' choices relating to whether or not photos were

27   "geotagged"—but not relating to whether location information was shared.

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL 206-682-5600 • FAX 206-682-2992

1   claims need only be "reasonably co-extensive" with those of the class—not "substantially

2   identical." *Hanlon*, 150 F.3d at 1020. The test of typicality "is whether other members have the

3   same or similar injury, whether the action is based on conduct which is not unique to the named

4   plaintiff[], and whether other class members have been injured by the same course of conduct."

5   *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citing *Schwartz v. Harp*, 108

6   F.R.D. 279, 282 (C.D. Cal.1985)). Typicality tends to merge with commonality. *Gen. Tele. Co. of*

7   *Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).

8          No unique factual circumstances distinguish Cousineau from other Class members, and

9   her claims are typical for at least three reasons. First, like everyone included in the Class

10  definition, Cousineau's Master Location Switch was "on" by default—a setting that she never

11  changed while her phone ran WM7. (Cousineau Tr. at 42:4 – 43:18.) To the extent additional

12  corroboration is helpful, her documented past usage of location services for other purposes (e.g.,

13  to obtain directions and local restaurant and hotel recommendations, and to "check in" through

14  her Facebook application) shows that it was enabled at the time she used Camera. (*See id.* 47:22

15  – 49:4; Cousineau Decl., Ex. P at ¶¶ 3 – 7.) Second, like all Class members, Cousineau selected

16  "cancel" when prompted to let Camera access her location and never reversed that choice by

17  changing any internal settings. (Cousineau Tr. at 42:4 – 43:18.) Finally, like all Class members,

18  Cousineau was injured when Defendant accessed her location information ███████████

19  without her consent. (*Id.* at 13:11 – 16:1.) That access occurred as a result of Microsoft's uniform

20  design of (1) Camera, (2) ███████████████, and (3) the programmed interaction

21  between the two components.

22         In sum, because Cousineau has suffered the same injury as all Class members, as a result

23  of Microsoft's identical conduct, her claim is typical of the proposed Class. Indeed, Cousineau's

24  claim will rise and fall with those of the Class.

25         4.      Cousineau and her counsel have no conflicts with and are committed to
                   adequately representing the proposed Class.

26         Finally, Rule 23(a)(4) requires that the representative parties "fairly and adequately

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL 206-682-5600 • FAX 206-682-2992

protect the interests of the class." Fed. R. Civ. P. 23(a)(4); *see also Agne*, 286 F.R.D. at 569. The

adequacy requirement is met when (1) the named plaintiff has no conflicts of interest with other

class members, and (2) the named plaintiff and his or her counsel "prosecute the action

vigorously on behalf of the class." *Hanlon*, 150 F.3d at 1020 (citation omitted). In a complex

case, a named plaintiff's ability to summarize the subject matter of the lawsuit is indicative of

adequacy. *Buus v. WAMU Pension Plan*, 251 F.R.D. 578, 587 (W.D. Wash. 2008). Counsel's

experience litigating similar cases also weighs in favor of adequacy. *See Kanawi v. Bechtel

Corp.*, 254 F.R.D. 102, 111 (N.D. Cal. 2008).

Cousineau's interests are aligned with those of the Class, and she is committed to

prosecuting her claims on a representative basis. (Balabanian Decl. at ¶¶ 3 – 4.) Cousineau has

been an active participant throughout this case, having reviewed filings (including each

pleading), participated in answering Microsoft's discovery requests, and traveled to Chicago to

testify at length in a deposition about her experience with her WM7 device. (*Id.*) Through her

testimony, Cousineau has demonstrated a firm grasp of the subject matter of this lawsuit. (*See,

e.g.*, Cousineau Tr. at 13:11 – 16:1.) She has also voiced strong personal and professional

concerns about her privacy, (*id.* at 34:24 – 36:7, 110:4 – 113:8), confirming that she will continue

to prosecute the action vigorously on behalf of the Class. As she put it, her motivation is to act as

a "voice" for others, not to enrich herself. (*Id.* at 65:5 – 65:12.)

Finally, Plaintiff's counsel are well-respected members of the legal community, have

regularly engaged in major complex litigation, and have had extensive experience in consumer

class actions involving similar issues of similar size, scope and complexity as this case. (*See*

Firm Resume of Edelson LLC, Ex. U; *see also* Declaration of Kim D. Stephens, filed

concurrently herewith). Proposed Class Counsel have committed (and will continue to commit)

significant resources to the successful prosecution of this case. (Balabanian Decl. at ¶ 7.) As

such, the attorneys representing Plaintiff are more than qualified to serve as Class Counsel.

### C.   The Class Satisfies the Requirements of Rule 23(b)(3).

In addition to meeting the criteria of Rule 23(a), the Class satisfies Rule 23(b)(3)'s two

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION        19
NO. 2:11-cv-01438-JCC

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL 206-682-5600 • FAX 206-682-2992

1   requirements: that common questions of law or fact predominate, and that classwide adjudication

2   is the superior method of resolution. Fed. R. Civ. P. 23(b)(3); *see Agne*, 286 F.R.D. at 570 – 72.

3   Certification under Rule 23(b)(3) is appropriate and encouraged "whenever the actual interests of

4   the parties can be served best by settling their differences in a single action." *Hanlon*, 150 F.3d at

5   1022 (quoting 7A Charles Alan Wright et al. *Federal Practice and Procedure* § 1777 (2d ed.)).

6        Where a proposed class meets Rule 23(b)(3)'s requirements, the class action mechanism

7   has a "practical utility . . . achiev[ing] economies of time, effort, and expense." *Murray v. Fin.*

8   *Visions, Inc.*, No. CV-07-2578-PHX-FJM, 2008 WL 4850328, at *4 (D. Ariz. Nov. 7, 2008); *see*

9   *also* Fed. R. Civ. P. 23(b)(3) advisory committee's note. A case such as this—where individual

10  recoveries for Class members would be small and almost certainly not be pursued but for

11  classwide litigation—exemplifies the class action's practical utility. *See Amchem Prods. Inc. v.*

12  *Windsor*, 521 U.S. 591, 617 (1997) (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344

13  (7th Cir. 1997)) ("The policy at the very core of the class action mechanism is to overcome the

14  problem that small recoveries do not provide the incentive for any individual to bring a solo

15  action prosecuting his or her rights."). This Court should therefore find the requirements of Rule

16  23(b)(3) satisfied.

17            1.   <u>Common issues regarding the design and functionality of the WM7 device</u>
       <u>predominate over any individual questions.</u>

18

19       The predominance requirement is satisfied because *every* key question at issue in this

20  case stems from WM7's uniform design and functionality, ensuring that no uniquely individual

21  concerns are at stake. Although it is a more demanding standard than commonality, the

22  predominance requirement is satisfied when a proposed class is "sufficiently cohesive to warrant

23  adjudication by representation." *Amchem*, 521 U.S. at 623. "[W]hen common questions present a

24  significant aspect of the case and they can be resolved for all members of the class in a single

25  adjudication, there is clear justification for handling the dispute on a representative rather than an

26  individual basis." *Hanlon*, 150 F.3d at 1022 (quoting Wright, *supra*, § 1778). The predominance

27  test "begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund,*

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION     20
NO. 2:11-cv-01438-JCC

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL 206-682-5600 • FAX 206-682-2992

1  *Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2184 (2011). When a plaintiff advances a theory of

2  liability in its certification motion, the court should determine whether common issues

3  predominate without evaluating the theory itself. *U.S. Steel, Paper, & Forestry, Rubber, Mfg.*

4  *Energy Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. ConocoPhillips Co.*, 593

5  F.3d 802, 808 (9th Cir. 2010).

6      Plaintiff has presented a cognizable and unified theory of liability. As described in

7  Section III.B.2, *supra*, each Class member's claim arises under the same federal statute and

8  hinges on WM7's uniform design and functionality. That uniformity generates three driving

9  questions—(1) whether the WM7 device is a "facility through which an [ECS] is provided;" (2)

10  whether ███ location data stored ███████████ constitutes communications in

11  "electronic storage;" and (3) whether Defendant accessed (or attempted to access) that location

12  data without authorization. If the answer to those questions is "yes," then the Class will have a

13  uniform right to recovery under the Act. Likewise, if the answer to any of them is "no," the Class

14  will uniformly have no right to recovery.

15      Under Plaintiff's theory, Defendant intentionally designed WM7 to not only disregard

16  Users' choices to allow or prohibit Microsoft's access to temporarily stored location data, but

17  also, when possible, to use that access to both "improve [its] location services" and gain ground

18  against its marketplace competitors. *See supra* §§ II.A – B. Critically, individualized facts and

19  circumstances—such as whether Users took pictures with Camera, had stable network

20  connections when using Camera, or even had recent location information ███████████

21  ████████████████████████████████████████

22  ████████—have no bearing on Cousineau's central theory. Where, as here, no individual

23  matters trump the common issues that predominate this case, the first requirement of Rule

24  23(b)(3) is satisfied.

25      2.    A class action is a superior means of adjudicating this controversy.

26      The proposed Class also meets Rule 23(b)'s second requirement—that class resolution be

27  "superior to other methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P.

1  23(b)(3); *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). In

2  assessing superiority, courts examine a non-exclusive list of factors including (1) whether any

3  related litigation has already commenced, (2) the desirability of the chosen forum, (3) the class

4  members' interests in pursuing individual litigation, and (4) the likely difficulties in managing a

5  class action. Fed. R. Civ. P. 23(b)(3)(A) – (D); *Wolin*, 617 F.3d at 1175. As to the first and second

6  factors, Plaintiff is unaware of any related litigation among class members or any difficulties as

7  to the forum where Defendant resides. The third and fourth factors also weigh in favor of

8  certification, as Users pursuing small statutory claims share a strong interest in combining

9  litigation into a single action and manageability concerns are not so great as to outweigh the

10  advantages of a class action.

11      As to the third factor, class members' interests favor the pursuit of class, rather than

12  individual, resolution of their claims. "Where recovery on an individual basis would be dwarfed

13  by the cost of litigating on an individual basis, this factor weighs in favor of class certification."

14  *Wolin*, 617 F.3d at 1175 – 76 (holding class action was superior where "filing hundreds of

15  individual lawsuits . . . could involve duplicating discovery and costs that exceed the extent of

16  proposed class members' individual injuries"); *see also Zinser v. Accufix Research Inst., Inc.*, 253

17  F.3d 1180, 1190 (9th Cir. 2001) *opinion amended on denial of reh'g*, 273 F.3d 1266 (9th Cir.

18  2001) ("Where damages suffered by each putative class member are not large, this factor weighs

19  in favor of certifying a class action."). Pursuit of small statutory penalties is "costly and

20  duplicative." *Bellows v. NCO Fin. Sys., Inc.*, No. 3:07-CV-01413-W-AJB, 2008 WL 4155361, at

21  *8 (S.D. Cal. Sept. 5, 2008). Conversely, class members have a greater interest in pursuing

22  individual litigation when individual damages are high. *See Zinser*, 253 F.3d at 1190 – 91

23  (holding individual litigation preferable where minimum claim was $50,000 for each class

24  member).

25      This case is well suited for class treatment because the claims of the Plaintiff and

26  proposed Class involve identical violations of the SCA. Plaintiffs principally seek recovery of

27  $1,000 per person in statutory damages under 18 U.S.C. § 2707(c) (2012). (Dkt. 64 at 12:2 – 3.)

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION                22
NO. 2:11-cv-01438-JCC

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206-682-5600 • FAX 206-682-2992

1   Absent a class action, litigation of individual claims for such a small recovery is cost prohibitive.

2   *See Zisner*, 253 F.3d at 1190. An award of $1,000, even with the availability of attorneys' fees, is

3   simply insufficient to justify the risk and cost of litigation against a corporation such as

4   Microsoft and, indeed, class members would struggle to find attorneys willing to bring individual

5   actions to remedy Microsoft's conduct. Class members are therefore best served in this case by

6   pooling their resources into a single proceeding, making a class action the superior method of

7   resolving the controversy.

8        As to the fourth factor, no actual or perceived manageability concerns outweigh the

9   superiority of a class action. Manageability refers to "the whole range of practical problems that

10  may render the class action format inappropriate for a particular suit," such as the calculation of

11  individual damages, distribution of damages, and notice. *Eisen v. Carlisle & Jacquelin*, 417 U.S.

12  156, 164 (1974). Cases that involve numerous and substantial individual issues, or varying state

13  law causes of action, may pose management difficulties. *See Zinser*, 253 F.3d at 1192; *Haley v.*

14  *Medtronic, Inc.*, 169 F.R.D. 643, 654 (C.D. Cal. 1996).

15       Significantly, manageability is only a factor if it outweighs the overall superiority of a

16  class action. *See Santoro v. Aargon Agency, Inc.*, 252 F.R.D. 675, 686 – 87 (D. Nev. 2008); *see*

17  *also* 1 Joseph M. McLaughlin, McLaughlin on Class Actions § 5:68 (9th ed.); Newberg, *supra*,

18  § 4:72. Courts do not assess manageability in the abstract, but instead examine "how the

19  problems that might occur in managing a class suit compare to the problems that would occur in

20  managing litigation without a class suit." Newberg, *supra*, § 4:72; *see also Klay v. Humana, Inc.*,

21  382 F.3d 1241, 1273 (11th Cir. 2004) *abrogated in part on other grounds by Bridge v. Phoenix*

22  *Bond & Indem. Co.*, 553 U.S. 639, 128 (2008) ("[W]e are not assessing whether this class action

23  will create significant management problems, but instead determining *whether it will create*

24  *relatively more management problems than any of the alternatives*.") (emphasis added). Courts

25  are unlikely to deny certification based on potential management difficulties alone. *In re Live*

26  *Concert Antitrust Litig.*, 247 F.R.D. 98, 148 (C.D. Cal. 2007).

27       Here, no manageability issues warrant denial of certification. The single claim at issue in

1    this lawsuit arises under one federal statute. As described in Section III.B.2, *supra*, the questions

2    that must be answered to determine Defendant's liability are not individual to class members, but

3    common to the Class by virtue of WM7's common design and functionality. Further still, nothing

4    about certification will create manageability issues relative to individual litigation, *Williams v.*

5    *Mohawk Indus., Inc.*, 568 F.3d 1350, 1358 (11th Cir. 2009), as Class and individual litigation

6    alike would involve intense inquiry regarding WM7's functionality and additionally look to

7    WM7 user representations that (1) they denied Camera permission to log their location, and (2)

8    used Camera while the Master Location Switch was enabled. *See supra* Section III.A. The main

9    difference, however, that ultimately reveals why the class action mechanism is far superior to

10   individual adjudication of these issues, is that when it comes to individual litigation, such an

11   inquiry would need to be conducted thousands of times.

12        In the end, because Class members have no other realistic means of pursuing $1,000

13   statutory claims against Microsoft manageability concerns do not outweigh the superiority of a

14   class action. Plaintiffs should be permitted to combine their SCA claims together in a single

15   class-wide proceeding, the superior method of resolving this controversy.

16   **IV.    CONCLUSION**

17        For the reasons stated above, the proposed Class satisfies Rule 23's requirements. In

18   clicking cancel, Plaintiff and the Class made a conscious choice to protect their privacy,

19   believing that Defendant would respect their decisions. By designing WM7 to access location

20   information ███████████████████████████, Defendant disregarded their choice.

21   The SCA claim at issue in this lawsuit hinges on common questions to which the Class seeks

22   uniform answers. Accordingly, Plaintiff respectfully requests that this Court grant certification

23   under Rule 23 and permit this case to move forward as a class action.

24

25

26

27

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION          24
NO. 2:11-cv-01438-JCC

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL 206-682-5600 • FAX 206-682-2992

1    Dated: July 29, 2013                              Respectfully submitted,

2                                                       REBECCA COUSINEAU,
                                                        individually on her own behalf and on
3                                                       behalf of all others similarly situated,

4
                                                        /s/ Rafey S. Balabanian
5                                                       One of Plaintiff's Attorneys

6    Jay Edelson*
7    Rafey S. Balabanian*
     Ari J. Scharg*
8    Chandler R. Givens*
     J. Dominick Larry*
9    EDELSON LLC
     350 North LaSalle, Suite 1300
10   Chicago, Illinois 60654
     Telephone: (312) 589-6370
11   Facsimile: (312) 589-6378
12   jedelson@edelson.com
     rbalabanian@edelson.com
13   ascharg@edelson.com
     cgivens@edelson.com
14   nlarry@edelson.com

15   *Admitted pro hac vice

16
                                                        By: /s/ Kim D. Stephens
17                                                      One of Plaintiff's Attorneys

18
19   Kim D. Stephens, WSBA #11984
     Janissa A. Strabuk, WSBA # 21827
20   TOUSLEY BRAIN STEPHENS PLLC
     1700 Seventh Avenue, Suite 2200
21   Seattle, Washington 98101
     Telephone: (206) 682-5600
22   Facsimile: (206) 682-2992
23   kstephens@tousley.com
     jstrabuk@tousley.com
24
     Counsel for Plaintiff Rebecca Cousineau and the Putative Class
25

26

27

1

## CERTIFICATE OF SERVICE

2   I, J. Dominick Larry, an attorney, hereby certify that on July 29, 2013, I served the above
and foregoing Plaintiff's Motion for Class Certification by causing true and accurate copies of

3   such paper to be filed and transmitted to all counsel of record via the Court's CM/ECF electronic
filing system.

4   /s/ J. Dominick Larry                    ___

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL 206-682-5600 • FAX 206-682-2992