1
2
3
4
5
6

The Honorable John C. Coughenour

7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9
10
11
12
13
14
15

REBECCA COUSINEAU, individually on her
own behalf and on behalf of all others similarly
situated,

      Plaintiff,

  v.

MICROSOFT CORPORATION, a Delaware
corporation,

      Defendant.

No. 11-cv-01438-JCC

MICROSOFT'S OPPOSITION TO
MOTION FOR CLASS
CERTIFICATION

***Note on Motion Calendar:***
November 8, 2013

**Oral Argument Requested**

16
17
18
19
20
21
22
23
24
25
26
27

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

# TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................ 1

II.   FACTUAL BACKGROUND ........................................................................... 3

   A.   Ms. Cousineau's Allegations ............................................................... 3

   B.   Windows Phone 7 Location Services ................................................... 5

   C.   Microsoft's Resolution of the Camera Behavior ................................. 7

   D.   Ms. Cousineau's Conflicting Testimony ............................................. 7

   E.   Ms. Cousineau's Class Certification Motion ..................................... 10

III.  ARGUMENT ................................................................................................ 10

   A.   Ms. Cousineau Cannot Establish Commonality, Predominance, or Superiority .......... 11

      1.   Individual Issues Predominate on Ms. Cousineau's Pleaded SCA Claim Because She Cannot Prove on a Class Basis Whether Microsoft Collected Any Windows Phone 7 User's Location Information. ..................................................... 12

      2.   The Court Should Deny Certification of Ms. Cousineau's Unpleaded SCA Theory because (a) She Failed to Plead It and (b) Pursuit of That Claim on a Class Basis Would Be Futile. ....... 14

   B.   Ms. Cousineau Has Not Provided Any Manageable Way to Ascertain Class Membership, and She Has Not Carried Her Burden of Proving Numerosity. ............. 17

      1.   Ms. Cousineau Has Not Shown a Manageable Way to Ascertain Who Belongs within the Proposed Class. ...................... 17

      2.   Ms. Cousineau Has Not Carried Her Burden to Establish Numerosity. ................. 21

   C.   Ms. Cousineau Is Unable to Show Typicality. ................................... 23

IV.  CONCLUSION ............................................................................................. 24

MICROSOFT'S OPPOSITION TO MOTION
FOR CLASS CERTIFICATION (No. 11-cv-01438-JCC) — i
DWT 22486473v6 0025936-001471

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Agne v. Papa John's Intern., Inc.*,
  286 F.R.D. 559 (W.D. Wash. 2012) ..................................................................17

*American Express Co. v. Italian Colors Restaurant*,
  133 S. Ct. 2304 (2013) ..................................................................................11

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ......................................................................................16

*Boucher v. First Am. Title Ins. Co.*,
  2011 WL 1655598 (W.D. Wash. 2011) ..........................................................21

*Boucher v. First Am. Title Ins. Co.*,
  2012 WL 3023316 (W.D. Wash. 2012) ............................................12, 13, 23

*Brooks v. S. Bell Tel. & Tel. Co.*,
  133 F.R.D. 54 (S.D. Fla. 1990) ......................................................................23

*Carrera v. Bayer Corp.*,
  2013 U.S. App. LEXIS 17479 (3d Cir. 2013) ................................................20

*Castano v. Am. Tobacco Co.*,
  84 F.3d 734 (5th Cir. 1996) ............................................................................11

*CE Design v. Beaty Const. Inc.*,
  2009 WL 192481 (N.D. Ill. 2009) ..................................................................21

*Celano v. Marriott Int'l, Inc.*,
  242 F.R.D. 544 (N.D. Cal. 2007) ....................................................................22

*Comcast Corp. v. Behrend*,
  133 S. Ct. 1426 (2013) ............................................................................11, 12

*Cottle-Banks v. Cox Commc'ns, Inc.*,
  2013 WL 2244333 (S.D. Cal. 2013) ................................................................17

*Deitz v. Comcast Corp.*,
  2007 WL 2015440 (N.D. Cal. 2007) ..............................................................18

*Edwards v. First Am. Corp.*,
  2012 WL 6963359 (C.D. Cal. 2012) ..........................................................16, 17

MICROSOFT'S OPPOSITION TO MOTION
FOR CLASS CERTIFICATION (No. 11-cv-01438-JCC) — ii
DWT 22486473v6 0025936-001471

Davis Wright Tremaine LLP
L AW  O FFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

*Erica P. John Fund, Inc. v. Halliburton Co.*,
   131 S. Ct. 2179 (2011) ...................................................................................12

*Evans v. IAC/Interactive Corp.*,
   244 F.R.D. 568 (C.D. Cal. 2007)..................................................................15

*Felts v. Genworth Life Ins. Co.*,
   250 F.R.D. 512 (W.D. Wash. 2008).............................................................24

*Fosmire v. Progressive Max Ins. Co.*,
   277 F.R.D. 625 (W.D. Wash. 2011)..............................................................11

*Garcia v. City of Laredo*,
   702 F.3d 788 (5th Cir. 2012), *cert. denied*, 133 S. Ct. 2859 (2013) ...............16, 17

*General Telephone Co. of the Southwest v. Falcon*,
   457 U.S. 147 (1982) ......................................................................................11

*Golden v. City of Columbus*,
   404 F.3d 950 (6th Cir. 2005)........................................................................21

*Hanon v. Dataprods. Corp.*,
   976 F.2d 497 (9th Cir. 1992)..........................................................11, 23, 24

*Hardy v. City Optical Inc.*,
   39 F.3d 765 (7th Cir. 1994)...........................................................................20

*Hayes v. Wal-Mart Stores, Inc.*,
   725 F.3d 349 (3d Cir. 2013) .........................................................................17

*In re Intel Laptop Battery Litig.*,
   2011 WL 7290487 (N.D. Cal. 2011).............................................................21

*In re Phenylpropanolamine (PPA) Products Liability Litigation*,
   214 F.R.D. 614 (W.D. Wash. 2003)..................................................19, 20, 21

*LaCasse v. Wash. Mut., Inc.*,
   198 F. Supp. 2d 1255 (W.D. Wash. 2002) ...................................................11

*Lazette v. Kulmatycki*,
   2013 WL 2455937 (N.D. Ohio 2013) ...........................................................17

*Marcus v. BMW of N. Am., LLC*,
   687 F.3d 583 (3d Cir. 2012) ....................................................................17, 21

*O'Connor v. Boeing N. Am., Inc.*,
   197 F.R.D. 404 (C.D. Cal. 2000)..................................................................23

MICROSOFT'S OPPOSITION TO MOTION
FOR CLASS CERTIFICATION (No. 11-cv-01438-JCC) — iii
DWT 22486473v6 0025936-001471

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

*Parkinson v. Hyundai Motor Am.*,
 258 F.R.D. 580 (C.D. Cal. 2008)..................................................................21

*Pigford v. Glickman*,
 182 F.R.D. 341 (D.D.C. 1998)......................................................................21

*Roadlink Workforce Solutions LLC v. Malpass*,
 2013 U.S. Dist. LEXIS 133786 (W.D. Wash. 2013)....................................17

*Robinson v. Hornell Brewing Co.*,
 2012 WL 1232188 (D.N.J. 2012)..................................................................21

*Simington v. Lease Fin. Group, LLC*,
 2012 WL 6681735 (S.D.N.Y. 2012) .............................................................15

*U.S. Steel, Paper, & Forestry, Rubber, Mfg. Energy Allied Indus. & Serv. Workers Int'l Union
  v. ConocoPhillips Co.*,
 593 F.3d 802 (9th Cir. 2010) ........................................................................16

*Valentino v. Carter-Wallace, Inc.*,
 97 F.3d 1227 (9th Cir. 1996) ........................................................................12

*Waine-Golston v. Time Warner Entertainment-Advance/New House P'ship*,
 2012 WL 6591610 (S.D. Cal. 2012)..............................................................15

*Wal-Mart Stores, Inc. v. Dukes*,
 131 S. Ct. 2541 (2011) ............................................................................11, 12

*Wang v. Chinese Daily News, Inc.*,
 -- F.3d --, 2013 WL 4712728 (9th Cir. Sept. 3, 2013) .................................12

*Williams v. Oberon Media, Inc.*,
 2012 WL 562726 (9th Cir. 2012)..................................................................17

*Z.D. ex rel. J.D. v. Group Health Co-op*,
 2012 WL 1977962 (W.D. Wash. 2012)..........................................................18

*Zinser v. Accufix Research Inst., Inc.*,
 253 F.3d 1180 (9th Cir. 2001) ................................................................11, 12

**Federal Statutes**

18 U.S.C. § 2510(17)(A) ...................................................................................17

18 U.S.C. § 2701 ................................................................................................13

18 U.S.C. § 2701(a) ...........................................................................................13

18 U.S.C. §§ 2701(a), 2707(a) ..........................................................................16

MICROSOFT'S OPPOSITION TO MOTION
FOR CLASS CERTIFICATION (No. 11-cv-01438-JCC) — iv
DWT 22486473v6 0025936-001471

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

18 U.S.C. § 2707(a) ...................................................................................................13

**Rules**

Fed. R. Civ. P. 12(b)(6) ...........................................................................................16

Fed. R. Civ. P. 23 ..................................................................................................2, 11

Fed. R. Civ. P. 23(a) ..........................................................................................11, 12

Fed. R. Civ. P. 23(a) ................................................................................................11

Fed. R. Civ. P. 23(a)(1) .......................................................................................21, 23

Fed. R. Civ. P. 23(a)(2) .......................................................................................11, 12

Fed. R. Civ. P. 23(a)(3) .......................................................................................2, 23

Fed. R. Civ. P. 23(b) ...............................................................................................11

Fed. R. Civ. P. 23(b)(3) .......................................................................................11, 12

Fed. R. Civ. P. 23(f) ................................................................................................21

**Other Authorities**

1 Joseph M. McLaughlin, MCLAUGHLIN ON CLASS ACTIONS (9th ed. 2012) .............................23

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

# I.    INTRODUCTION

Rebecca Cousineau offers no evidence to suggest her Windows Phone 7 device actually transmitted any location data to Microsoft without her consent—and no way to determine whether any other person's phone did either.  The Court should deny her Motion for Class Certification.

Ms. Cousineau filed this action a day after hearing about unexpected behavior in the Windows Phone 7 Camera application.  Her Complaint focused on allegations Microsoft collected location information through the Windows Phone 7 Camera application and used that information to "track" users without their consent.  The Court denied Microsoft's Motion to Dismiss Ms. Cousineau's Stored Communications Act ("SCA") claim to allow her the opportunity to explore that "tracking" concern in discovery.  Order [Dkt. 38] at 12; Order [Dkt. 47] at 3-4.

Discovery debunked her claim.  Even in the unusual cases where a Windows Phone 7 device did transmit location data without express user consent, Microsoft *never* used the data to track any Windows Phone 7 user.  In fact, Ms. Cousineau's Motion admits Microsoft discarded all identifying data *before* its servers collected location information, making the data anonymous and precluding even the possibility of tracking.  Discovery also showed the unexpected transmission of location information could occur only if the user opened the Camera application under a combination of user-specific circumstances.  As a result, it is impossible to tell which, if any, Windows Phone 7 users unwittingly transmitted location data.  Further, Microsoft corrected the Camera's behavior in a free software update made available four weeks after Ms. Cousineau sued.

Faced with these undisputed facts, Ms. Cousineau no longer seeks to certify a class to pursue an SCA claim premised on Microsoft's alleged collection of location data.  Instead, she asks the Court to certify a class to pursue a different claim, asserting Microsoft violated the SCA because one component of the Windows Phone 7 software on her phone (the Camera application) might unexpectedly request a location fix from another component of the software on her phone (the location framework)—even though the location framework could resolve the request using data already on the phone without transmitting *any* information off the device to Microsoft or anyone else.  Ms. Cousineau thus asks the Court to certify a class to pursue an unpleaded claim

MICROSOFT'S OPPOSITION TO MOTION
FOR CLASS CERTIFICATION (No. 11-cv-01438-JCC) — 1
DWT 22486473v6 0025936-001471

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

having nothing to do with Microsoft's alleged collection of location data, nothing to do with "tracking," and nothing to do with alleged privacy invasions.

Ms. Cousineau cannot satisfy the Rule 23 requirements for class certification.

*First*, Ms. Cousineau cannot show common questions predominate or a class action would be superior. She tacitly concedes the SCA claim she pleaded raises unresolvable individual issues as to whether any given Windows Phone 7 user had location data unexpectedly transmitted to Microsoft—and the law forbids her tactic of sidestepping that problem by seeking certification of a class to pursue a different SCA claim, which she never pleaded in any of her four complaints. In any event, Ms. Cousineau's new and unpleaded SCA theory has no support in the law, and certifying a class to pursue it would be an exercise in futility.

*Second*, Ms. Cousineau fails to meet her obligation to prove she has a manageable way to ascertain who belongs within her proposed class. She points to no objective source from which the Court might determine class membership. Instead, she proposes to ascertain class membership by asking hundreds of thousands of people to recall not just whether they bought a Windows Phone 7, but specific facts about which smartphone software version they used in 2010 and 2011, and exactly how they used their phone's Camera and location services in that time frame. But even Ms. Cousineau's survey expert admits this process would be unreliable. In fact, neither Ms. Cousineau nor her source code expert could recall whether they used their Windows Phones so as to meet the class criteria. Ms. Cousineau also fails to show a numerous class: her survey expert admits he has no information from which one could infer how many Windows Phone 7 users meet the proposed criteria for class membership based on their behavior in 2010 and 2011.

*Third*, Ms. Cousineau fails to satisfy the typicality requirement. Ms. Cousineau sued to prosecute a claim focused on alleged location tracking in violation of her privacy; the purely technical claim for which her lawyers now seek certification, however, has nothing to do with her core concerns of tracking and privacy violations. Further, Ms. Cousineau's testimony subjects her to individual defenses, which might cause her to lose on grounds not applicable to the proposed class as a whole. Under settled law, she cannot satisfy Rule 23(a)(3)'s typicality requirement.

MICROSOFT'S OPPOSITION TO MOTION
FOR CLASS CERTIFICATION (No. 11-cv-01438-JCC) — 2
DWT 22486473v6 0025936-001471

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

## II.     FACTUAL BACKGROUND

This case revolves around location services, which Microsoft makes available to users of

its Windows Phone 7 operating system.  As one Microsoft witness explains:

> Most modern smartphones offer users the opportunity to take advantage of location services, which use the device's location to deliver improved services and experiences to users.  For example, location data makes it possible to provide mapping and navigation services, to facilitate delivery of more relevant search results, to provide information such as local movie options and directions to the nearest restaurant or coffee shop, and to allow a user to find nearby friends.

Del Amo Casado Decl. ¶ 3.  Windows Phone 7 generally accesses location services *only* if the

user leaves a master location switch "on" within the Settings menu.  *Id*. ¶ 4; Lemson Decl. [Dkt.

23] ¶ 3, 4 & Exs. A, B, C (depicting master location services switch in Windows Phone 7

Settings).  If the user turns location services "off," applications on the phone (other than the Find

My Phone application) cannot access the user's current location.  Del Amo Casado Decl. ¶ 4.  And

even if the user leaves the master switch "on" within the software's Settings, the user still can

block the use of location services by a particular application, such as Maps or Camera.  *See id.*;

TAC, Ex. A [Dkt. 64-1] at 4-5.

### A.     Ms. Cousineau's Allegations

Ms. Cousineau's Third Amended Complaint ("TAC") [Dkt. 64], like the three pleadings

before it, revolves around unexpected behavior concerning requests for location services by the

Camera application (and *only* the Camera application) in the Windows Phone 7 operating system.

If a user left the master location services switch "on" in Windows Phone 7's Settings, a dialogue

box containing the following text appeared the first time the user opened the Camera application:

> **Allow the camera to use your location?**
>
> Sharing this information will add a location tag to your pictures so you can see where your pictures were taken. This information also helps us provide you with improved location services. We won't use the information to identify or contact you.
>
> Privacy Statement.

TAC [Dkt. 64] ¶ 4.  The dialogue box gave the user the option to "allow" or "cancel."  *Id.*  But

because obtaining location data can take up to 45 seconds (longer than many Camera users will

wait before taking a picture), the Camera application requested location data through the Windows

Phone 7 software as soon as the user opened the application, without awaiting the user's response,

MICROSOFT'S OPPOSITION TO MOTION
FOR CLASS CERTIFICATION (No. 11-cv-01438-JCC) — 3
DWT 22486473v6 0025936-001471

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1  to maximize the chance location data would be available *if* the user chose to "add a location tag"

2  to photos.  Lydick Decl. ¶ 2; Lydick Dep. 117:7-11 (Rummage Decl. Ex. 4).  But the Camera

3  application would use location by adding a tag to photos only if the user chose "allow."  *Id.*

4       Ms. Cousineau's TAC alleges she hit "cancel" when asked whether to "Allow the camera

5  to use your location?"  TAC [Dkt. 64] ¶ 32.  She alleges the Camera application's subsequent calls

6  for location resulted in the device transmitting her location data to Microsoft's servers against her

7  wishes, where Microsoft "recorded, on a frequent basis, the approximate latitude and longitude

8  coordinates of her device," among other data.  *Id.* ¶ 33.  She claims "Microsoft consciously

9  designed its OS to siphon geographic location information from the device revealing the user's

10 specific whereabouts and transmit this data to Microsoft's servers."  *Id.* ¶ 1.  And she avers

11 "Microsoft designed its camera application to regularly transmit its users' geolocation information

12 to Microsoft's servers."  *Id.* ¶ 6.  *See id.* ¶¶ 16, 24, 26, 30 (all referring to transmission to servers).

13 She alleges Microsoft therefore violated the SCA by "collecting location data from the stored file

14 on [her] mobile device[] through the camera application, despite the fact that [she] expressly

15 denied Microsoft access to that information."  *Id.* ¶¶ 46, 47.[1]

16      The TAC identifies a proposed class to pursue this theory of unlawful transmittal and

17 collection of location data, defined to consist of users "who, prior to August 31, 2011, denied their

18 Windows Phone 7 camera application access to their location information, and unwittingly had

19 their geolocation data transmitted to Microsoft's servers."  TAC [Dkt. 64] ¶ 34.  *See also* Compl.

20 [Dkt. 1] ¶ 28 (class of users who "unwittingly had their geolocation data transmitted to

21 Microsoft's servers"); Am. Compl. [Dkt. 19] ¶ 34 (same); SAC [Dkt. 49] ¶ 38 ("Tracking Class"

22 of users who "had their geolocation data transmitted to Microsoft's servers").  Ms. Cousineau's

23 SCA claim thus focuses on the unwitting transmission of location data to Microsoft's servers.

24

25 ─────────────────────

26 [1] Ms. Cousineau's Complaint and Amended Complaint also alleged violations of the Wiretap Act, the Washington Privacy Act, and the Washington Consumer Protection Act ("CPA"), and asserted unjust enrichment.  *See* Compl. [Dkt. 1]; Am. Compl. [Dkt. 19].  After the Court dismissed these claims, Dkt. 38, Ms. Cousineau filed a Second Amended Complaint, in which Sam Dua, who bought the phone for her, asserted a CPA claim, along with claims for unjust enrichment and trespass to chattels.  *See* SAC [Dkt. 49] ¶¶ 53-95.  After her initial discovery showed Mr. Dua's claims to be groundless, Ms. Cousineau filed the TAC [Dkt. 64], which dropped Mr. Dua and his claims.

27

MICROSOFT'S OPPOSITION TO MOTION
FOR CLASS CERTIFICATION (No. 11-cv-01438-JCC) — 4
DWT 22486473v6 0025936-001471

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

B.     **Windows Phone 7 Location Services**

In fact, a Windows Phone 7 Camera application's request for location ***may or may not*** result in transmitting data to Microsoft—and no one can tell whether the device transmitted location data to Microsoft in any given instance.

Ms. Cousineau's Motion admits this dispositive point.  The Windows Phone 7 software resolves location requests from all applications, including the Camera, through a software component known as location framework.  Mot. 5:12-14.  Ms. Cousineau admits location framework resolves those location requests, if possible, by ***first*** accessing information already on the user's device, without transmitting ***any*** information to Microsoft's servers.  Thus, if an application requests location data from the location framework (such as, for example, to assist in resolving a request for directions in the Maps application), the framework "would always look first to the device's RAM," i.e., random access memory stored on the phone, to resolve the request.  Mot. 6:12-13 (citing del Amo Casado Tr. 100:3-17; Snead Rpt. 13[2]).  Microsoft designed Windows Phone 7 so location framework can "resolve a User's location (including when responding to location requests from Camera) ***without any external communications*** or network connectivity."  Mot. 14:17-20 (citing del Amo Casado Tr. 84:17-25, 100:3-101:13, 105:20-106:2) (emphasis added).  The location framework in Windows Phone 7 sends a location request to Microsoft's servers (and transmits location data along with that request) ***only*** "[i]f the stored data [on the phone] was insufficient to resolve the User's location."  Mot. 6:14 (citing del Amo Casado Tr. 105:4-106:12; Snead Rpt. at 13).  As a result, even if the Camera application contacts the location framework (on the phone) and requests a location fix, ***no one can tell*** whether the phone sends the request to Microsoft's servers, along with the data necessary to resolve the request—or whether it resolves location by accessing data already stored in the phone's RAM.  Snead Dep. 43:2-13 (Rummage Decl. Ex. 11) ("I don't think there is a difference to the end user.").[3]

---

[2] Microsoft is generally not re-filing material previously filed by Ms. Cousineau with her Motion, most of which is attached to the Balabanian Declaration [Dkt. 72].  For the Court's convenience, however, Microsoft will include in the Court's working binder factual material cited in this Opposition but filed by Ms. Cousineau.  Factual materials ***not*** previously filed—including excerpts from the depositions of Ms. Cousineau, her employer (Mr. Dua), and her experts—are attached to the Rummage Declaration, filed along with this Opposition.

[3] Location data can be stored on the device in several scenarios.  For example, if a user enables Find My Phone—an application that allows a user to locate her phone if she misplaces it—the device downloads and stores location data

MICROSOFT'S OPPOSITION TO MOTION
FOR CLASS CERTIFICATION (No. 11-cv-01438-JCC) — 5
DWT 22486473v6 0025936-001471

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1      A Windows Phone 7 device also may transmit location data to Microsoft's servers when

2  crowd sourcing location data, a process through which Microsoft improves its location database

3  by adding location data for WiFi access points and cell towers.  Crowd sourcing may occur when

4  Windows Phone 7 obtains a GPS ("global positioning service") fix associated with WiFi access

5  points or cell towers.  The phone collects the GPS data (latitude, longitude, and altitude) and stores

6  it in the phone's RAM along with the "'observations' … of 'visible cellular /Wi-Fi beacons in a

7  given geographical area at a given time.'"  Mot. 4:11-12 (quoting Snead Rpt. 7-8).  At opportune

8  times—such as when the device has a WiFi connection or is transmitting another location request

9  to Microsoft's servers—the device may upload the observations to Microsoft's location services

10  database, "adding new data points and improving Microsoft's location services."  Mot. 4:14-15

11  (citing del Amo Casado Tr. 47:3-50:14; Deo Dep. 85:19-87:25; Snead Rpt. 8).  But if the phone

12  never obtains a GPS fix (because, for example, the device is indoors or in an "urban canyon"

13  surrounded by tall buildings), it cannot collect observations.  Del Amo Casado Decl. ¶ 17.

14  Further, even if the phone obtains GPS location data for crowd sourcing, it may never transmit the

15  data to Microsoft's servers.  If the user turns off the phone, runs down its battery, has a service

16  interruption, or fills RAM with new data before uploading the crowd sourced data to Microsoft's

17  servers, the phone never transmits the stored observations.  *Id.* ¶ 18.  As a result, ***no one can tell*** if

18  a particular request for location results in crowd sourced location observations being sent to

19  Microsoft's servers.  *Id.  See also* Snead Dep. 77:15-20 (Rummage Decl. Ex. 11).

20      Finally, even when a device transmits information to Microsoft's servers, it never "tracks"

21  any user's location.[4]  For a few months after the release of Windows Phone 7 (but before Ms.

22  Cousineau received her phone), Microsoft collected unique device identifiers along with location

23

24  on the device every few hours.  Del Amo Casado Decl. ¶ 13.  Similarly, if a user gets directions through the Maps
   application, the device downloads and stores location information throughout the user's trip.  *Id.* ¶ 11.  In either case,
25  the stored location information becomes available to resolve later location requests by other applications, including
   the Camera—without transmitting data to Microsoft servers.  Snead Rep. [Dkt. 76] 6:23-7:4 & Exs. D-B-3, D-B-4.

26  [4] Ms. Cousineau's Opposition to Microsoft's Motion to Dismiss repeatedly (and unjustly) accused Microsoft of
   "tracking" her location and concluded with the request that the Court deny the Motion to "allow for discovery into
   Microsoft's clandestine tracking operations."  Opp. to MTD [Dkt. 25] 23:1-2.  Ms. Cousineau's Motion for Class
27  Certification, on the other hand, does not use the word "tracking" even once to describe Microsoft's location services.
   The omission is not accidental:  the so-called "tracking" never happened.

requests, which it stored in its server logs for a brief period of time.  But it never associated any *user* with a location.  Further, as a result of an internal privacy review, Deo Dep. 58:8-22, by May 2011 (again, before Ms. Cousineau received her Windows Phone) Microsoft no longer collected any device identifiers at all.  When location data comes to Microsoft's servers, the location service will "parse the request to remove … unique device identifiers and then send the remainder of the request to" the servers, making the location data purely anonymous.  Deo Dep. 64:15-19 (Rummage Decl. Ex. 6).  Microsoft discards identifying "information … right when we receive[] it on the service side." *Id.* 49:25-50:2.  At the same time in May 2011 Microsoft purged all device identifiers from its server logs, Mot. 5:21-25 n.8, so no one could connect any phone to a location.

### C.    Microsoft's Resolution of the Camera Behavior

Four weeks after Ms. Cousineau sued, Microsoft posted an **IMPORTANT NOTICE** at the top of the privacy policy on the Windows Phone website.  Rummage Decl. ¶ 2.  (Every Windows Phone 7 links to this policy.  Lemson Decl. [Dkt. 23] ¶ 5.)  In this notice, Microsoft told users it "identified an unintended behavior in the Windows Phone 7 software that results in information about nearby Wi-Fi access points and cell towers being periodically sent to Microsoft when using the Camera application."  Rummage Decl. Exs. 1, 2.  It reminded users they could "always disable all access to location information by applications and collection of location information by the Windows Phone location service at any time by going to **Settings>Location** and toggling the location switch to **OFF**." *Id.*  The **IMPORTANT NOTICE** told users "[t]he Windows Phone 7.5 update eliminates this unintended behavior by the Camera application." *Id.*

On September 27, 2011, the same day it posted the **IMPORTANT NOTICE**, Microsoft released the free Windows Phone 7.5 update eliminating the unexpected behavior.  Lee Decl. ¶ 3.  After a user installed this free software update, the Camera called for location *only* if the user chose "allow" when presented with the dialogue box.  Lydick Decl. ¶ 3.

### D.    Ms. Cousineau's Conflicting Testimony

On August 30, 2011, Ms. Cousineau learned of the unexpected behavior in the Windows Phone 7 Camera application from her employer, Sam Dua, after he heard about it from a lawyer at

MICROSOFT'S OPPOSITION TO MOTION
FOR CLASS CERTIFICATION (No. 11-cv-01438-JCC) — 7
DWT 22486473v6 0025936-001471

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

Edelson LLC.  Dua Dep. (3/13) 20:23-21:14 (Rummage Decl. Ex. 7).  He called Ms. Cousineau and "first asked her if she was aware that somebody could be following her location simply based on pictures that she was taking."  Dua Dep. (8/1) 7:21-23 (Rummage Decl. Ex. 8).  Mr. Dua told her "there was a possibility that there was a problem with the camera phone, and it was tracking."  Cousineau Dep. (8/1) 7:13-14 (Rummage Decl. Ex. 10).  To Ms. Cousineau, that meant Microsoft knew "precisely where I was at, at exactly precisely the time and place."  *Id.*  9:7-12.  She wanted to prevent that:  "I don't want everybody to know where I'm at."  Cousineau Dep. (3/13) 14:24-15:3 (Rummage Decl. Ex. 9).  She signed an engagement letter with her lawyers that day, *id.* 10:16-11:6, and the next day, she sued.[5]  (Ms. Cousineau did not talk with her lawyers until about 18 months later.  *Id.* 29:5-13.)  Despite her professed concern over privacy, Ms. Cousineau took no steps to avoid transmission of her location data:  she "took pictures," despite believing "taking pictures would continue to transmit tracking information or location information."  *Id.* 51:14-18.

Ms. Cousineau has no evidence she was subjected to the Camera behavior described above.  She was unable even to say she hit "cancel" when asked "Allow the Camera to use your location?"  Instead, Ms. Cousineau said she became "frustrated" because the request for consent "repeatedly" appeared when she opened the Camera, and she became "tired of seeing it keep popping up on my phone."  Cousineau Dep. (3/13) 52:16-20, 53:14-16, 54:6-7.  *See also* Dua Dep. (8/1) 9:4-7.  "[I]t just seemed like every time I used the phone it kept throwing that [i.e., the consent dialogue] up at me and I just kept having to hit no."  Cousineau Dep. (8/1) 9:23-25.  But if Ms. Cousineau *actually* hit "cancel" (or "no") in an effort to deny the Camera application access to her location, Windows Phone 7 would have saved her selection, and the consent question never would have reappeared.  Lydick Decl. ¶ 4; Snead Report [Dkt. 76] 11:16 ("the user's choice, allow or cancel, is saved on the mobile device").  The *only* explanation for the reappearance of the question is that ***Ms. Cousineau did not hit "cancel" at all***; instead, she dismissed the question by

---

[5] In an effort to suggest Ms. Cousineau engaged in deliberation before suing, the Complaint alleges "[t]hrough her attorneys, Plaintiff has retained an independent security expert to investigate whether Microsoft collects location information from Windows Phone users without consent."  Compl. [Dkt. 1] ¶ 22.  But the attached report of the "independent security expert" reflects testing on June 28, 2011—two months before Ms. Cousineau even knew about the issue.  *See* Compl. Ex. B [Dkt. 1-2].  Mr. Dua confirmed the expert was already hired before Ms. Cousineau had any communication with the lawyers.  Dua Dep. (8/1) 10:1-6, 11:9-10.  Mr. Dua had sourced plaintiffs for the Edelson firm before, including in one case in which he sought $15,000 in fees.  Dua Dep. (3/13) 6:2-10:23, 12:21-18:6.

MICROSOFT'S OPPOSITION TO MOTION
FOR CLASS CERTIFICATION (No. 11-cv-01438-JCC) — 8
DWT 22486473v6 0025936-001471

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1    pressing the back ("←") button—without choosing "cancel," contrary to what her Motion (and

2    TAC) asserts.  *See* Lydick Decl. ¶ 4; Lydick Dep. 76:18-22; 77:7-14.  And when asked

3    specifically whether she "hit the word cancel or … hit the little back arrow button at the bottom of

4    the phone," Ms. Cousineau testified, "I don't recall."  Cousineau Dep. (8/1) 10:2-5.

5         Further, Ms. Cousineau gave conflicting testimony as to the master location switch on her

6    phone.  In deposition, Ms. Cousineau turned on her phone, navigated to the Settings, and testified

7    the master switch was "off."  Cousineau Dep. (3/13) 42:4-17.  At first, she said she turned off the

8    switch herself, *id*. 42:18-19; later, she testified she "never messed with the settings" and was ***not***

9    responsible for turning "off" the location switch.  *Id*. 43:14-15.  (Her lawyers also denied altering

10   the phone's location settings and confirmed they instructed their experts at Sylint—misspelled as

11   "silent"—not to do so.  *Id.* 59:19-60:12.)  Ms. Cousineau had no knowledge of when the master

12   location switch had been turned off.  *Id*. 61:10-61:18.  In written discovery, she even said it would

13   be "unduly burdensome" to require her "to recall from memory" when "Location services was

14   switched 'Off' on the Settings menu on the device" and when it was "On"; she could not say when

15   applications had the capacity to request location.  Rummage Decl. Ex. 3 (Resp. to Int. 6).

16        Finally, Ms. Cousineau updated her phone to Windows Phone 7.5, which eliminated the

17   unexpected Camera behavior.  *See* Lydick Decl. ¶ 3.  Ms. Cousineau kept no record of when she

18   updated to Windows Phone 7.5, but she did so before responding to discovery in December 2012.

19   Rummage Decl. Ex. 3 (Resp. to Int. 5) (phone running "operating system version 7.10.7720.68");

20   Lee Decl. ¶ 4 (confirming version 7.10.7720.68 is Windows Phone 7.5).  Her phone was running

21   Windows Phone 7.5 at her deposition in March 2013.  Cousineau Dep. (3/13) 39:19-41:6.  She

22   even testified Windows Phone 7.5 was on the phone when Mr. Dua bought it, *id*., but that is

23   impossible:  Microsoft released Windows Phone 7.5 ***after*** Ms. Cousineau sued.  Lee Decl. ¶ 3.  In

24   any event, she was "unable to identify all prior operating systems that were run on the device or

25   the dates each was installed and replaced."  Rummage Decl. Ex. 3 (Resp. to Int. 5).

26        Based on this testimony, no one can tell when (if ever) Ms. Cousineau, while using

27   Windows Phone 7, denied the Camera permission to use location by hitting "cancel" and then

MICROSOFT'S OPPOSITION TO MOTION
FOR CLASS CERTIFICATION (No. 11-cv-01438-JCC) — 9
DWT 22486473v6 0025936-001471

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1   used the Camera while the master location switch was in the "on" position.[6]

2       **E.**    **Ms. Cousineau's Class Certification Motion**

3       Ms. Cousineau's Motion asks the Court to certify the following class:

4         All WM7 [i.e., Windows Phone 7] Users who denied the Camera Application access
   to their location information, and then used the Camera Application with the Master
5         Location Switch turned "on."

6   Mot. 1:23-24.  In plain words, Ms. Cousineau seeks to represent Windows Phone users (a) whose

7   phones were running Windows Phone 7; (b) hit "cancel" when presented with the Camera location

8   consent dialogue; and (c) used the Camera with the master location switch turned "on"—even

9   though Ms. Cousineau was unable to testify she satisfied those requirements.

10       This definition differs sharply from the class definition in Ms. Cousineau's pleadings.  In

11   her TAC, Ms. Cousineau proposed the following class:

12         All persons in the United States who, prior to August 31, 2011, denied their
   Windows Phone 7 camera application access to their location information, and
13         ***unwittingly had their geolocation data transmitted to Microsoft's servers***.

14   TAC [Dkt. 64] ¶ 34 (emphasis added).  The new definition abandons the requirement that

15   "geolocation data [be] transmitted to Microsoft's servers," thus including Windows Phone 7 users

16   who had ***no*** location data transmitted to Microsoft.  It abandons the requirement that users

17   transmit data to Microsoft "unwittingly," thus including users who knew they were transmitting

18   location data to Microsoft.  And finally, it abandons any temporal limitation, sweeping into the

19   proposed class those who used the Camera application after reading Microsoft's **IMPORTANT**

20   **NOTICE**, which cautioned users about the Camera behavior and reminded them how to switch

21   location services "off" to avoid transmitting location data.  Rummage Decl. ¶ 2 & Exs. 1, 2.

22       **III.**    **ARGUMENT**

23       "The class action is an exception to the usual rule that litigation is conducted by and on

24   behalf of the individual named parties only.  To come within the exception, a party seeking to

---

[6] Hoping to neutralize this crippling testimony, Ms. Cousineau's Declaration attaches documents suggesting her
25   location master switch ***must*** have been "on" at some point—because she used location services twice in August 2011,
   and once each in October 2011 and August 2012, the latter two after the release of Windows Phone 7.5.  Cousineau
26   Decl. [Dkt. 72-26] ¶¶ 3-6; Balabanian Decl. Exs. Q-T [Dkts. 72-27–72-30].  But location services were turned "off" at
   the ***only*** time anyone could observe the settings on Ms. Cousineau's phone, i.e., during her deposition.  The
27   Declaration therefore contradicts her testimony she never changed her settings and raises an ***individual*** fact issue as to
   whether, when, and how often she did so.  Further, nothing in her Declaration addresses her inability to say whether
   she hit "cancel" when the Camera consent dialogue appeared—or clarifies when she updated to Windows Phone 7.5.

MICROSOFT'S OPPOSITION TO MOTION
FOR CLASS CERTIFICATION (No. 11-cv-01438-JCC) — 10
DWT 22486473v6 0025936-001471

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

maintain a class action must affirmatively demonstrate his compliance with Rule 23." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013) (quotations and marks omitted). "Rule 23 does not set forth a mere pleading standard. A party seeking class certification … must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). The Rule does not "establish an entitlement to class proceedings for the vindication of statutory rights" but "imposes stringent requirements for certification that in practice exclude most claims." *Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2309-10 (2013). Further, the Court must conduct a "rigorous analysis" of the Rule 23 prerequisites before deciding whether to certify a class. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982). "Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped." *Dukes*, 131 S. Ct. at 2551; *see also Hanon v. Dataprods. Corp.*, 976 F.2d 497, 509 (9th Cir. 1992) (same). Thus, the Court must look beyond the pleadings to "understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the class certification issues." *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 744 (5th Cir. 1996); *LaCasse v. Wash. Mut., Inc.*, 198 F. Supp. 2d 1255, 1260-61 (W.D. Wash. 2002).

Ms. Cousineau "bears the burden of demonstrating that she has met each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b)." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001) (citation omitted). "If a court is not fully satisfied that the requirements of Rules 23(a) and (b) have been met, certification should be refused." *Fosmire v. Progressive Max Ins. Co.*, 277 F.R.D. 625, 632 (W.D. Wash. 2011).

## A.    Ms. Cousineau Cannot Establish Commonality, Predominance, or Superiority.

Rule 23(a)(2) requires Ms. Cousineau to show "questions of law or fact common to the class." Further, Ms. Cousineau seeks certification under Rule 23(b)(3), which requires her to prove these common issues "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Microsoft analyzes commonality, predominance, and superiority together.

MICROSOFT'S OPPOSITION TO MOTION
FOR CLASS CERTIFICATION (No. 11-cv-01438-JCC) — 11
DWT 22486473v6 0025936-001471

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

To establish commonality under Rule 23(a)(2), a plaintiff must prove a class proceeding has "the capacity … to generate common answers apt to drive the resolution of the litigation." *Dukes*, 131 S. Ct. at 2551 (internal marks, citation omitted).  A plaintiff cannot show commonality by reciting common questions, "even in droves"; instead, a court must focus on whether the answers to those common questions will "drive the resolution of the litigation."  *Id.  See also Wang v. Chinese Daily News, Inc.*, -- F.3d --, 2013 WL 4712728, *3 (9th Cir. Sept. 3, 2013) (quoting *Dukes*).  Further, "Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)."  *Comcast*, 133 S. Ct. at 1432.  "The predominance analysis under Rule 23(b)(3) focuses on the relationship between the common and individual issues in the case and tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Wang*, 2013 WL 4712728, at *5 (internal marks, citation omitted).  A plaintiff satisfies Rule 23(b)(3)'s superiority requirement only if "classwide litigation of common issues will reduce litigation costs and promote greater efficiency" and "no realistic alternative exists" to class resolution.  *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234-35 (9th Cir. 1996).

A plaintiff does not carry her burden on predominance and superiority by merely showing a defendant's conduct involves a "common nucleus of facts"; rather, "[i]f each class member has to litigate numerous and substantial separate issues to establish his or her right to recover individually, a class action is not 'superior.'"  *Zinser*, 253 F.3d at 1192 (affirming denial of class certification).  Thus, common issues do not predominate, and a class action is not superior, if "the success or failure of every class member's claim depends on individualized proof."  *Boucher v. First Am. Title Ins. Co.*, 2012 WL 3023316, *4 (W.D. Wash. 2012).

### 1.   Individual Issues Predominate on Ms. Cousineau's Pleaded SCA Claim Because She Cannot Prove on a Class Basis Whether Microsoft Collected Any Windows Phone 7 User's Location Information.

The analysis of commonality and predominance "begins, of course, with the elements of the underlying cause of action."  *Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2184 (2011).  Ms. Cousineau pleads a single claim for an alleged violation of Section 2701 of the SCA, which makes it an offense for someone to (1) access "without authorization a facility

MICROSOFT'S OPPOSITION TO MOTION
FOR CLASS CERTIFICATION (No. 11-cv-01438-JCC) — 12
DWT 22486473v6 0025936-001471

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200  ·  1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150  ·  Fax: (206) 757-7700

through which an electronic communication service is provided" or (2) exceed "an authorization to access that facility," thereby obtaining "access to a wire or electronic communication while it is in electronic storage in such system."  18 U.S.C. § 2701(a).  Under Section 2707 of the SCA, "the person or entity" who violates Section 2701 may be liable in a civil action.  18 U.S.C. § 2707(a).

As the basis for her SCA claim, Ms. Cousineau's TAC repeatedly alleges "Microsoft consciously designed its OS to siphon geographic location information from the device revealing the user's specific whereabouts and transmit this data to Microsoft's servers."  TAC [Dkt. 64] ¶ 1 at 2:7-8.  *See also id.* 3:20-21; 5:6-8; 6:10-11, 6:21-22, 7:14-15 (all alleging transmittal of location information to servers); Opp. to MTD [Dkt. 25] 11:19-20 (arguing Microsoft "accessed and transmitted [her] location data while she used the camera application in defiance of her request not to be tracked").  She alleges Microsoft violated the SCA by "*collecting location data* from the stored file on [her] mobile device[] through the camera application, despite the fact that [she] expressly denied Microsoft access to that information."  TAC ¶¶ 46, 47 (emphasis added).

But "the success or failure of every class member's claim [under this theory] depends on individualized proof," *Boucher*, 2012 WL 3023316, *4, making class certification improper.  Ms. Cousineau cannot establish through class-wide proof whether Microsoft collected location information from *any* class member, much less *every* class member.  As her expert concedes, the Windows Phone 7 operating system first seeks to resolve location requests by searching RAM *on the device*, without transmitting *any* information to Microsoft's servers.  Snead Dep. 96:16-97:5.  *See also id.* 39:3-12; 49:16-24; 53:2-9; 54:7-13; 61:19-62:7; 69:19-24; 104:2-16; 105:2-17.  As a result, one can tell whether a particular location request caused a device to transmit location data to Microsoft (thus allowing Microsoft to collect the data, as the TAC alleges, ¶¶ 46, 47) *only* by knowing whether that device's RAM at that moment contained the data necessary to resolve the request without transmitting data—a question one could answer, if at all, only through detailed individual factual analysis.[7]  *See* del Amo Casado Decl. ¶¶ 10-12.  And even if RAM lacked the

---

[7] At trial, complex individual issues would predominate, as the finder of fact seeks to determine whether each user's Windows Phone 7 device transmitted location data to Microsoft as a result of the Camera behavior.  The other common issues Ms. Cousineau identifies (i.e., whether a phone is a "facility" and whether location data resides in "electronic storage" under the SCA) present issues of law sure to be decided well before trial.

MICROSOFT'S OPPOSITION TO MOTION
FOR CLASS CERTIFICATION (No. 11-cv-01438-JCC) — 13
DWT 22486473v6 0025936-001471

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

information necessary to resolve location, the Windows Phone 7 device would not transmit a request to Microsoft's servers if it failed to "see" any cell towers or WiFi routers—as would be the case, for example, if the user were camping in a remote location. *Id*. ¶ 15. Different individual variables also affect whether, in a given instance, Windows Phone 7 crowd sources location data back to Microsoft to improve its location database. *Id.* ¶ 18. *See* Snead Dep. 97:6-97:20; 120:1-5.

In short, "[i]n many common circumstances, a location request will not result in any communication to Microsoft's Orion location service, either to resolve the location request or to crowd source data that might be obtained as a result of the location request." Del Amo Casado Decl. ¶ 20. Determining whether any individual Windows Phone 7 device transmitted location data to Microsoft in response to the Camera application's request—the predicate for the SCA claim in Ms. Cousineau's complaints—thus requires individual proof of the exact circumstances in which the Camera application requested location. *Id.* ¶¶ 11-18 (describing variables).

Ms. Cousineau's Motion *concedes these facts*, and they make it impossible to certify a class to pursue her pleaded claim Microsoft violated the SCA by causing Windows Phone 7 users unwittingly to transmit location information to Microsoft. No one could prove whether any user "had their geolocation data transmitted to Microsoft's servers," TAC [Dkt. 64] ¶ 34, without user-specific testimony about the circumstances surrounding each time the user opened the Camera application to determine whether, on that occasion, a transmission to Microsoft occurred.

For that reason, Ms. Cousineau's Motion makes no effort to certify a class to pursue the SCA claim pleaded in her TAC, i.e., a claim predicated on the transmission of location data to Microsoft. That should resolve the Motion; the Court should deny class certification on that basis.

2.      **The Court Should Deny Certification of Ms. Cousineau's Unpleaded SCA Theory because (a) She Failed to Plead It and (b) Pursuit of That Claim on a Class Basis Would Be Futile.**

Unable to argue for a class to pursue the SCA claim she pleaded in her four complaints, Ms. Cousineau's Motion advocates a new (and preposterous) SCA claim. Her new theory rests on the premise Microsoft violated the SCA because "the code that Microsoft wrote," *not* Microsoft itself, "is accessing RAM *on the device*. Snead Dep. 36:15-16 (Rummage Decl. Ex. 11). In

MICROSOFT'S OPPOSITION TO MOTION
FOR CLASS CERTIFICATION (No. 11-cv-01438-JCC) — 14
DWT 22486473v6 0025936-001471

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

other words, Ms. Cousineau now argues Microsoft violated the SCA merely because "Location Framework, a piece of software[,] accesses the RAM," and "Microsoft wrote th[at] software"— even though Microsoft itself does not access the contents of any files in RAM on the user's device.  Snead Dep. 38:11-22.  *See id*. 111:20-23.  The new theory "doesn't necessarily mean that information is transmitted to Microsoft or anywhere else off the device," *id*. 113:7-14; instead, it depends on processes occurring on the phone itself, without transmitting to Microsoft (or giving it access to) location data.  Ms. Cousineau claims this theory raises common issues because a request for location "*always* looked to the recent location information stored in RAM."  Mot. 17:6-7.

Ms. Cousineau did not plead anything close to this.  Rather, the TAC alleges a single SCA claim based on unwitting ***transmission*** (and ***collection*** by Microsoft's servers) of allegedly private location information—without once claiming Microsoft violated the SCA merely because a software component on Ms. Cousineau's phone accessed RAM, also on the device.  *See* TAC [Dkt. 64] ¶¶ 1, 3, 6, 7, 17, 24, 26, 29, 34.  The operative SCA allegations claim Microsoft violated the statute "by collecting location data from the stored file on Plaintiff's and the Class's mobile devices through the camera application, despite the fact that the users expressly denied Microsoft access to that information."  TAC [Dkt. 64] ¶¶ 46, 47.  Nothing in the TAC suggests Microsoft violated the SCA by programming its software to resolve location requests efficiently on the phone itself ***without*** transmitting (or giving access to) data to Microsoft.

Ms. Cousineau "may not certify a class based on claims not asserted in the complaint."[8] *Waine-Golston v. Time Warner Entertainment-Advance/New House P'ship,* 2012 WL 6591610, *3 (S.D. Cal. 2012) (citing *Anderson v. U.S. Dep't of Hous. & Urban Dev.,* 554 F.3d 525, 528-29 (5th Cir. 2008); *Trinidad v. Victaulic Co. of Am.,* 1986 WL 276, *3 (E.D. Pa. 1986)).  *See also Simington v. Lease Fin. Group, LLC,* 2012 WL 6681735, *8 (S.D.N.Y. 2012) ("This Court cannot certify a class to litigate a claim not pled.") (citations omitted); *Evans v. IAC/Interactive Corp*., 244 F.R.D. 568, 571 (C.D. Cal. 2007) (refusing to consider unpleaded theories first advanced in

---

[8] Shortly before her Motion, Ms. Cousineau's counsel notified Microsoft she intended to seek certification of the class defined in her Motion rather than as defined in the TAC.  Rummage Decl. Ex. 13.  But what her counsel called a "slight mismatch" between the TAC's class definition and the Motion's, *id.*, did not suggest Ms. Cousineau would seek certification of a new SCA claim—and Microsoft did not consent to the assertion of such a new claim.

MICROSOFT'S OPPOSITION TO MOTION
FOR CLASS CERTIFICATION (No. 11-cv-01438-JCC) — 15
DWT 22486473v6 0025936-001471

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200  ·  1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

class certification motion).  The reason is simple:  Microsoft had the right to test Ms. Cousineau's

legal theory on the SCA through a motion to dismiss *before* addressing class certification.  By

asking the Court to certify a class to pursue an unpleaded claim, Ms. Cousineau seeks to execute

an end run around her obligation to first plead a plausible claim under *Bell Atlantic Corporation v.*

*Twombly*, 550 U.S. 544, 559 (2007), and to deprive Microsoft of its right to move against that

unpleaded claim under Rule 12(b)(6).

Further, the Court should decline to allow Ms. Cousineau to amend her pleading sub rosa

to set forth this new theory, which has no basis in the SCA, the case law, or common sense.

Congress passed the SCA "to protect [against] potential intrusions on individual privacy."  *Garcia*

*v. City of Laredo*, 702 F.3d 788, 791 (5th Cir. 2012), *cert. denied*, 133 S. Ct. 2859 (2013).  It

makes a "person or entity" liable only for obtaining "access to a wire or electronic communication

while it is in electronic storage."  18 U.S.C. §§ 2701(a), 2707(a).  Nothing in the statute or the

cases supports reading the SCA to make a software developer liable for statutory damages for

writing code allowing *a software component* on a user's device access to data, without sending

that data "anywhere … off the device," Snead Dep. 113:7-14, without making the data accessible

to anyone other than the user, and without jeopardizing the privacy interests the SCA protects.

Hoping to avoid scrutiny of the obvious deficiencies in her new claim (and ignoring the

requirement for rigorous scrutiny of class certification motions), Ms. Cousineau urges the Court to

consider the predominance of common issues on her new theory "without evaluating the theory

itself."  Mot. 21:2-3 (citing *U.S. Steel, Paper, & Forestry, Rubber, Mfg. Energy Allied Indus. &*

*Serv. Workers Int'l Union v. ConocoPhillips Co.*, 593 F.3d 802, 808 (9th Cir. 2010)).  But

*ConocoPhillips* does *not* require the Court "to accept Plaintiff's theory of liability for the purpose

of class certification, no matter how erroneous it may be."  *Edwards v. First Am. Corp.*, 2012 WL

6963359, *5 (C.D. Cal. 2012).  Instead, *ConocoPhillips* cautions courts against requiring

"assurances" a plaintiff will prevail as a prerequisite to certification.  A court may, on the other

hand, decline to certify a class on a theory that "would … be an exercise in futility and a waste of

both the Court and the parties' resources."  *Id.* (denying certification on theory "contravened by

MICROSOFT'S OPPOSITION TO MOTION
FOR CLASS CERTIFICATION (No. 11-cv-01438-JCC) — 16
DWT 22486473v6 0025936-001471

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1    the language of RESPA, its implementing regulations, and Ninth Circuit precedent").

2    Certifying a class under Ms. Cousineau's unpleaded SCA theory would be an exercise in

3    futility and a waste of resources.  The Court should decline to indulge the fiction that Ms.

4    Cousineau's Motion seeks certification of a viable SCA claim based on a software component's

5    access to data on a user's mobile device—without transmission to or collection by Microsoft.[9]

6    **B.    Ms. Cousineau Has Not Provided Any Manageable Way to Ascertain Class Membership, and She Has Not Carried Her Burden of Proving Numerosity.**

7    Even if the Court were to allow Ms. Cousineau to seek certification of a class to pursue a

8    claim she never pleaded, she must show she has defined a class whose members (a) can be

9    identified in a manageable way through objective criteria and (b) are so numerous that joinder is

10   infeasible.  Even under her new theory, Ms. Cousineau cannot carry her burden on either point.

11   **1.    Ms. Cousineau Has Not Shown a Manageable Way to Ascertain Who Belongs within the Proposed Class.**

12   A putative class representative must propose an ascertainable class as "an essential

13   prerequisite" to class certification.  *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 592 (3d Cir.

14   2012).  To establish an ascertainable class, Ms. Cousineau must show class members can be

15   identified using "precise, objective" criteria.  *Williams v. Oberon Media, Inc.*, 2012 WL 562726,

16   *1 (9th Cir. 2012) (affirming denial of certification based in part on ascertainability); *Cottle-Banks

17   v. Cox Commc'ns, Inc.*, 2013 WL 2244333, *9 (S.D. Cal. 2013).  Further, Ms. Cousineau must

18   provide "a reliable and administratively feasible mechanism for determining whether putative

19   class members fall within the class definition." *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 355

20   (3d Cir. 2013) (citation omitted).  *See also Agne v. Papa John's Intern., Inc.*, 286 F.R.D. 559, 566

21   (W.D. Wash. 2012) (Coughenour, J.) (class definition must make it "administratively feasible" to

22

23   [9] At an appropriate time, Microsoft expects to seek summary judgment.  In addition to discussing Ms. Cousineau's new SCA theory, the motion will explain why Ms. Cousineau's phone fails to qualify as "a facility through which an electronic communication service is provided" and address her inability to show Microsoft, through the Camera

24   behavior, gained access to any electronic communication while in "intermediate" storage "incidental to [an] electronic transmission."  18 U.S.C. § 2510(17)(A).  The Court previously found these issues would benefit from a more "developed factual record."  Order [Dkt. 47] 4:2.  Because Ms. Cousineau's lawyers have reviewed source code and

25   taken depositions, these issues are ripe for resolution.  SCA case law has continued to evolve since the Court's orders last year:  courts have, with increasing frequency, held devices similar to the Windows Phone 7 device fail to satisfy the statutory definition of a "facility."  *See, e.g., Garcia*, 702 F.3d at 793 (mobile devices not facilities "just because

26   the device *enables* use of electronic communications services"); *Lazette v. Kulmatycki*, 2013 WL 2455937, *5 (N.D. Ohio 2013) ("the better, more sensible, and harmonious reading of the SCA is that … a blackberry or cell phone, is

27   not a 'facility' within §2701(a)(1)").  *See also Roadlink Workforce Solutions LLC v. Malpass*, 2013 U.S. Dist. LEXIS 133786, *10 (W.D. Wash. 2013) (personal computer not a "facility").

MICROSOFT'S OPPOSITION TO MOTION
FOR CLASS CERTIFICATION (No. 11-cv-01438-JCC) — 17
DWT 22486473v6 0025936-001471

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

ascertain class members) (quotation omitted); *Z.D. ex rel. J.D. v. Group Health Co-op*, 2012 WL 1977962, *13 (W.D. Wash. 2012) (denying certification in part given "difficulty in ascertaining" class); *Deitz v. Comcast Corp.*, 2007 WL 2015440, *8 (N.D. Cal. 2007).

Ms. Cousineau admits she must show "a prospective plaintiff could easily identify himself or herself as having a right to recovery based on the description in the class definition." Mot. 9:11-13 (citations omitted).   Here, she argues "two objective criteria govern whether a given WM7 User is included in the Class: (1) that User must have denied Camera permission to 'use [his/her] location' and thereafter (2) used Camera with the WM7 Master Location Switch in the default 'on' position." Mot. 10:1-3.[10]  She claims the Court (and any member of the putative class) can "easily" ascertain class membership "because both inquiries rely entirely on information within each prospective Class members' knowledge, … [and] all such individuals can determine whether they have a right to recovery if Plaintiff prevails on her SCA claim." *Id.* 10:18-22.

But the record flatly contradicts these glib assurances, showing class members are unlikely to know whether they fit within Ms. Cousineau's proposed class.  Testimony from her survey expert, Nathan Good, proves the point, emphasizing the difficulty potential class members have in recalling what operating system their phones ran, where they positioned their master location switch, and what they did when asked whether to allow the Camera to use location information. Dr. Good surveyed 1,057 smartphone users, asking about behaviors relating to location.  *See* Good Rep. [Dkt 72-22] 3:6-7 & Ex. 3.  Of the participants, only four might have been Windows Phone 7 users—and ***none*** of the four could answer the questions necessary to establish class membership: one said she was "unsure" which Windows Phone operating system she had but thought it was "Windows phone 7," Good Dep. 37:11-14 (Rummage Decl. Ex. 12); another said she selected "no location" on her Windows Phone 7, meaning she turned the master location switch "off," disqualifying her from class membership, *id.* 39:11-24; a third said he "sometimes" turned on the master location switch, making class membership uncertain absent individual testimony as to

_____

[10] In addition to the two criteria listed in the text, a user must remember she was running Windows Phone 7—not Windows Phone 7.5—when she accessed the Camera.  Mot. 1:23-24 (defining class to include only "WM7 users"). Because Microsoft in September 2011 released the Windows Phone 7.5 update resolving the Camera location issue, someone who used the Camera only *after* updating to Windows Phone 7.5 is not within the proposed class.

MICROSOFT'S OPPOSITION TO MOTION
FOR CLASS CERTIFICATION (No. 11-cv-01438-JCC) — 18
DWT 22486473v6 0025936-001471

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

where the switch was positioned when using the Camera, *id*. 41:2-42:2; and the fourth answered "don't know" when asked whether she allows her phone to use location at all, *id*. 42:12-21.

Dr. Good conceded this uncertainty would be consistent across the proposed class:

> Windows Mobile Phone 7 stopped being widely deployed back in 2011, so ***it would be difficult to have people recall what they were doing back***—memory studies generally aren't very good; they're ***not very reliable***.

Good Dep. 51:22-52:1 (emphasis added). Individual testimony corroborates Dr. Good's opinion. Ms. Cousineau could not say (a) when she had Windows Phone 7, as the class definition requires, and when she updated to Windows Phone 7.5, Cousineau Dep. (3/13) 39:19-41:6; Rummage Decl. Ex. 3 (Resp. to Int. 5); (b) when her master location switch was turned "off" and when it was "on," Cousineau Dep. (3/13) 61:10-61:18; Rummage Decl. Ex. 3 (Resp. to Int. 6); and (c) whether she ***ever*** hit "cancel" on the location consent dialogue, rather than dismissing it by pressing the "back" ("←") button, Cousineau Dep. (8/1) 10:2-5. Further, Ms. Cousineau's source code expert likewise owned a Windows Phone but could not recall whether he (a) had Windows Phone 7 or Windows Phone 7.5, Snead Dep. 30:15-17, or (b) touched "allow" or "cancel" when asked whether to allow the Camera to use his location. *Id*. 32:6-15. In short, contrary to the unsupported assertions in the Motion, the ***evidence*** shows the absence of a reliable means of identifying class members.

This situation parallels *In re Phenylpropanolamine (PPA) Products Liability Litigation*, 214 F.R.D. 614 (W.D. Wash. 2003). In *PPA*, plaintiffs sought to certify a class of all consumers "who purchased and still possessed unused portions of non-expired PPA products as of November 6, 2000." *Id*. at 615. Plaintiffs proposed to establish class membership using "a proof of claim process in which class members supply either physical proof of purchase and possession, such as the actual product, product packaging, or a receipt, or submit a certified oath or verification attesting to purchase and possession." *Id*. at 617. Judge Rothstein rejected plaintiffs' proposal.

> [T]he court finds itself … concerned with the vagaries of memory. … [U]sing the named plaintiffs as a marker, only a quarter of the class, at most, would likely possess any physical proof of purchase. A determination as to the remainder of the class would rely on the memories of those individuals as to the types, amounts, and expiration dates of medication they possessed over two years ago.

*Id*. at 617. Judge Rothstein noted the class representatives testified they "could not recall" some

MICROSOFT'S OPPOSITION TO MOTION
FOR CLASS CERTIFICATION (No. 11-cv-01438-JCC) — 19
DWT 22486473v6 0025936-001471

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

facts essential to class membership and "admitted confusion" as to others.  *Id.* at 618-19.  She

found it "unrealistic to suppose that defendants will accept sworn oaths or affidavits under these

circumstances"—and the Court likewise declined to do so.  *Id*. at 619.  Instead, the Court found

"the individualized inquiries surrounding class identification would be prodigious and would defy

the court's ability to effectively and efficiently manage the litigation."  *Id*. at 619-20.  *See Hardy v.*

*City Optical Inc.*, 39 F.3d 765, 771 (7th Cir. 1994) (class denied where fact finding required to

determine who requested contact lens specifications).

The Third Circuit recently followed Judge Rothstein in reversing class certification based

on the failure to propose a class ascertainable through a manageable process.  In *Carrera v. Bayer*

*Corp.*, 2013 U.S. App. LEXIS 17479 (3d Cir. 2013), plaintiff alleged Bayer falsely advertised a

multivitamin as having weight-loss properties.  But plaintiff offered "no evidence that a single

purchaser of [the vitamins] could be identified using records of customer membership cards or

records of online sales," making it impossible to determine class membership through records.  *Id*.

at *16.  Like Ms. Cousineau, plaintiff suggested he could "use affidavits of class members" to

prove class membership.  Citing *PPA*, the Third Circuit held the proposal "does not address a core

concern of ascertainability:  that a defendant must be able to challenge class membership,"

especially "where the named plaintiff's deposition testimony suggested that individuals will have

difficulty accurately recalling their purchases of [the product]."  *Id*. at *17 (citing *PPA*).

"Ascertainability provides due process by requiring that a defendant be able to test the reliability

of the evidence submitted to prove class membership."  *Id*. at *13.

The facts here make class membership even more difficult to prove—or to test.  Although

a material portion of the proposed class in *PPA* likely had "physical proof" of class membership,

***no*** potential class member here will have physical proof of the prerequisites to membership—

because it cannot exist.  To establish class membership, a user will need to ***remember*** (a) if she

bought a Windows Phone 7 device, whether and when she upgraded to Windows Phone 7.5; (b)

whether she used the Camera application before upgrading to Windows Phone 7.5; (c) whether she

left the master location services switch "on" when using the Camera while running Windows

MICROSOFT'S OPPOSITION TO MOTION
FOR CLASS CERTIFICATION (No. 11-cv-01438-JCC) — 20
DWT 22486473v6 0025936-001471

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200  ·  1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150  ·  Fax: (206) 757-7700

1   Phone 7; and (d) whether she hit "cancel" when asked "Allow the Camera to use your location?"

2   As explained above, Ms. Cousineau could not recall if she met these criteria; Mr. Snead, her

3   technical expert, could not recall; and Dr. Good called this approach "not very reliable" and said

4   "it would be difficult to have people recall what they were doing back" in 2010 and 2011.[11]

5       This Court should reach the same conclusion as Judge Rothstein in *PPA*. "[T]he

6   individualized inquiries surrounding class identification would be prodigious and would defy the

7   court's ability to effectively and efficiently manage the litigation." *PPA*, 214 F.R.D. at 619-20.[12]

8       **2.      Ms. Cousineau Has Not Carried Her Burden to Establish Numerosity.**

9       Under Rule 23(a)(1), Ms. Cousineau also must show her proposed class "is so numerous

10   that joinder of all members is impracticable."   Numerosity "must be positively shown, and cannot

11   be speculative." *Golden v. City of Columbus*, 404 F.3d 950, 965-66 (6th Cir. 2005) (quotation

12   omitted).   A proposed class representative cannot satisfy this requirement by asserting the class

13   ***must*** be numerous because the defendant is a large business.   The problem with "this numerosity-

14   by-assumption approach is that it makes any corporation with a large number of customers

15   vulnerable to a class action" without evidence the challenged conduct affected a large number of

16   people. *Boucher v. First Am. Title Ins. Co.*, 2011 WL 1655598, *7 (W.D. Wash. 2011); *Marcus*,

17   687 F.3d at 597; *Celano v. Marriott Int'l, Inc.*, 242 F.R.D. 544, 550 (N.D. Cal. 2007).

18       Here, Ms. Cousineau retained Dr. Good to buttress her numerosity argument.   He surveyed

---

19   [11] The two cases on which Ms. Cousineau primarily relies—*Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 593

20   (C.D. Cal. 2008), and *Pigford v. Glickman* 182 F.R.D. 341, 346 (D.D.C. 1998)—did not involve expert testimony
establishing a lack of reliability or a class representative unable to attest to facts establishing class membership.   She

21   also cites *CE Design v. Beaty Const. Inc.* 2009 WL 192481 (N.D. Ill. 2009), but in that case, after the Seventh Circuit
granted Rule 23(f) review based on ascertainability issues, the plaintiff ***stipulated to decertification***, settled for a total
of $5,000.00, and dismissed its case before the Seventh Circuit could rule.   Rummage Dec. Ex. 14.

22   [12] A fact finder would need to resolve additional individual issues for any person who used the Windows Phone 7
Camera application after Ms. Cousineau sued and publicized the Camera behavior.   The individual issues become

23   more prominent after September 2011, when Microsoft posted an **IMPORTANT NOTICE** describing the Camera
behavior and telling users how to avoid it.   *See* Rummage Decl. ¶ 2 & Exs. 1, 2.   If users left the master location

24   switch "on" while using the Camera after becoming aware of the behavior, they accepted that behavior.   *In re Intel
Laptop Battery Litig.*, 2011 WL 7290487, *2 (N.D. Cal. 2011) (awareness of defendant's practices and how to avoid
them "precludes [plaintiff] from showing a likelihood of being injured in the future by those practices"); *Robinson v.*

25   *Hornell Brewing Co.*, 2012 WL 1232188, *6 (D.N.J. 2012) ("[T]he Court affords the Plaintiff the dignity of assuming
he will act rationally in light of the information he possesses.").   Any claim arising from use of the Camera after the

26   lawsuit therefore requires individual testimony to determine what the user knew—as Ms. Cousineau recognized in the
proposed class alleged in her complaints. *See, e.g.*, TAC [Dkt. 64] ¶34 (defining class to include only users "who,
***prior to August 31, 2011***, denied their Windows Phone 7 camera application access to their location information, and

27   ***unwittingly*** had their geolocation data transmitted to Microsoft's servers") (emphasis added).   Even if the Court were
to certify a class, it should retain the temporal limitation from the TAC to avoid those individual issues.

MICROSOFT'S OPPOSITION TO MOTION
FOR CLASS CERTIFICATION (No. 11-cv-01438-JCC) — 21
DWT 22486473v6 0025936-001471

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1,057 **current** smart phone users to discern their "location sharing preferences for their smartphones." Good Rep. [Dkt. 72-22] 3:6-7. Over 93% of the participants used the Google Android (574 participants) or Apple iOS (406 participants) operating system on their phones—**not** Windows Phone. *Id.* [Dkt. 72-22] Ex. 3. Only 38 survey participants (about 3.6%) reported they had a Windows Phone operating system—and only **three** reported they had Windows Phone 7, while a fourth reported he was "unsure" but identified Windows Phone 7. Good Dep. 37:11-42:24. Dr. Good asked participants about their **current** practices as to location controls—not their practices between late 2010, when Windows Phone 7 was released, and September 2011, when the Windows Phone 7.5 update resolved the Camera issue. Good Dep. 20:8-21:19. Ms. Cousineau argues Dr. Good concluded "17.9% of smartphone users—like the putative Class members—use their phone's camera application, but deny it access to their location **while leaving their phone's location functionality enabled**." Mot. 12:2-4 (emphasis added).

But in fact, Dr. Good did not reach any such conclusion—and the conclusion he did reach has no bearing on numerosity of **this** proposed class. According to Dr. Good:

> I will be prepared to testify primarily that approximately 17.9% of users from the survey [i.e., consisting almost entirely of current Google and Apple smartphone users] stated that they (1) use their smartphone's camera application to take pictures, (2) use location services on their smartphone, (3) discriminate between applications they permit to access location services on their smartphone, and (4) disallow their smartphone's camera application access to location services.

Good Rep. 3:10-15. But Ms. Cousineau's class definition requires more than a user who distinguishes among applications and "disallow[s]" the Camera's access to location services, as Dr. Good puts it; rather, to satisfy Ms. Cousineau's class definition, the user must keep the master location switch "on" while **simultaneously** denying the Camera access to location. *See* Mot. 1:23-24. Dr. Good failed to ask whether **any** user in 2010-2011 did what the class definition requires.

In fact, Dr. Good had no idea a Windows Phone 7 user could keep the master location switch "on" and still deny access to location at the application level. Good Dep. 48:13-50:17. (Nothing in his Report explains whether Google and Apple phones allow the master location switch to remain "on" while denying an application access to location.) He designed his survey on the (incorrect) assumption users chose whether to use location when changing applications by

MICROSOFT'S OPPOSITION TO MOTION
FOR CLASS CERTIFICATION (No. 11-cv-01438-JCC) — 22
DWT 22486473v6 0025936-001471

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

toggling location services "off" and "on" in the phone's settings. *Id.* 50:13-17. And when he

opined as to numerosity, Dr. Good had in mind a class different from the one now proposed:

> The number of users who take photos with their smartphones, ***sometimes turn off***
> ***Location Services for individual applications*** and do not allow their camera to use
> the Location Services.

Good Dep. 45:18-21 (emphasis added). Unlike Ms. Cousineau's definition, Dr. Good's says

nothing about "the master location switch [being] turned 'on'" ***at the time*** the user takes a picture.

As a result, even ignoring the most obvious flaws in the survey (e.g., it considers the behavior of

users of the wrong operating systems—which may not have the same functionality, *see id.* 50:21-

22—in the wrong year), the survey shows ***nothing*** about how many Windows Phone 7 users fall

within the proposed class as Ms. Cousineau now defines it. Ms. Cousineau has not met her burden

to prove (rather than just assume) compliance with Rule 23(a)(1)'s numerosity requirement.

### C.   Ms. Cousineau Is Unable to Show Typicality.

Rule 23(a)(3)'s typicality requirement ensures capable representatives protect the interests

of absent class members. *Hanon*, 976 F.2d at 508. "'The premise of the typicality requirement is

simply stated: as goes the claim of the named plaintiff, so go the claims of the class.' Where the

premise does not hold true, class treatment is inappropriate." *O'Connor v. Boeing N. Am., Inc.*,

197 F.R.D. 404, 412 (C.D. Cal. 2000) (quoting *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399

(6th Cir. 1998) (en banc)). "If proof of the representatives' claims would not necessarily prove all

the proposed class members' claims, the representatives' claims are not typical of the proposed

members' claims." *Brooks v. S. Bell Tel. & Tel. Co.*, 133 F.R.D. 54, 58 (S.D. Fla. 1990). Ms.

Cousineau fails to satisfy this requirement, in two ways:

***First***, typicality requires "a class representative whose core concerns on the subject of the

suit align with those of absent class members." 1 Joseph M. McLaughlin, MCLAUGHLIN ON

CLASS ACTIONS (9th ed. 2012) § 4.18 at 715. Ms. Cousineau's "core concerns" have nothing to do

with an arcane SCA claim alleging one component of the software on her phone accessed location

data stored on her phone ***without*** transmitting "that information … to Microsoft or anywhere else

off the device[.]" Snead Dep. 113:7-14. Instead, her concerns revolve around so-called "tracking

MICROSOFT'S OPPOSITION TO MOTION
FOR CLASS CERTIFICATION (No. 11-cv-01438-JCC) — 23
DWT 22486473v6 0025936-001471

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

devices," Cousineau Dep. (3/13) 13:11-20, because she's "a very private person," *id*. 14:20, and does not "want everybody to know where I'm at." *Id*. 15:2-3.  She allowed the use of her name in the complaint because her employer told her Microsoft was "tracking" her and "knows exactly where [she's] at." *Id*. 23:10-24:7.  Even after filing this Motion, Ms. Cousineau reiterated her concerns as focusing not on software functions, internal to the device, but on her erroneous belief Microsoft knew "precisely where I was at, at exactly precisely the time and place."  Cousineau Dep. (8/1) 9:1-12; *id*. 7:13-14 ("there was a problem with the camera phone, and it was tracking"). Ms. Cousineau's concerns thus revolve around the core allegation in her four complaints, i.e., she "unwittingly had [her] geolocation data transmitted to Microsoft's servers."  TAC [Dkt. 64] ¶ 34. Because Ms. Cousineau's "core concerns" revolve around tracking, which her Motion admits never happened, she is not typical of a class pursuing a claim to address a ***different*** concern.

   ***Second***, a proposed representative subject to unique defenses fails to satisfy the typicality requirement because she may lose for reasons that would not apply to the class as a whole.  *E.g.*, *Felts v. Genworth Life Ins. Co.*, 250 F.R.D. 512, 523 (W.D. Wash. 2008); *see Hanon*, 976 F.2d at 508.  Here, Ms. Cousineau's claims may fail because she cannot establish she satisfies the criteria for membership in her proposed class, which depends on a user hitting "cancel" when asked "Allow the Camera to use your location?"  Indeed, when asked whether she hit "cancel," as the class definition requires (and as she alleged), Ms. Cousineau testified, "I don't recall."  Cousineau Dep. (8/1) 10:2-5.  Further, membership in the proposed class requires use of the Camera with the master location switch "on"—and the ***only*** available observation of Ms. Cousineau's phone shows that switch in the "off" position.  Cousineau Dep. (3/13) 42:4-17; *id.* 61:10-18.

## IV.   CONCLUSION

   Microsoft asks the Court to deny Ms. Cousineau's Motion for Class Certification.

   DATED this 7th day of October, 2013.

DAVIS WRIGHT TREMAINE LLP
*Attorneys for Defendant Microsoft Corporation*

By  */s/ Stephen M. Rummage*
   Stephen M. Rummage, WSBA #11168
   Fred B. Burnside, WSBA #32491
   Zana Bugaighis, WSBA #43614

MICROSOFT'S OPPOSITION TO MOTION
FOR CLASS CERTIFICATION (No. 11-cv-01438-JCC) — 24
DWT 22486473v6 0025936-001471

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1

1201 Third Avenue, Suite 2200
Seattle, Washington  98101-3045
Telephone: (206) 622-3150, Fax: (206) 757-7700
E-mail:  steverummage@dwt.com
E-mail:  fredburnside@dwt.com
E-mail:  zanabugaighis@dwt.com

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

MICROSOFT'S OPPOSITION TO MOTION
FOR CLASS CERTIFICATION (No. 11-cv-01438-JCC) — 25
DWT 22486473v6 0025936-001471

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 7, 2013, the foregoing *Microsoft's Opposition to Motion for Class Certification* was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record who receive CM/ECF notification, and that the remaining parties (if any) shall be served in accordance with the Federal Rules of Civil Procedure.

DATED this 7th day of October, 2013.

DAVIS WRIGHT TREMAINE LLP
*Attorneys for Microsoft Corporation*

By s/ Stephen M. Rummage
Stephen M. Rummage, WSBA #11168
1201 Third Avenue, Suite 2200
Seattle, Washington  98101-3045
Telephone:  (206) 757-8136
Fax:  (206) 757-7700
E-mail:  steverummage@dwt.com

MICROSOFT'S OPPOSITION TO MOTION
FOR CLASS CERTIFICATION (No. 11-cv-01438-JCC) — 26
DWT 22486473v6 0025936-001471

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700